**ATTENTION PLEASE!**

**ENCLOSED IS DEFENDANT EXHIBITS ("DX") 2 TO 76 FOR THE MOTION TO SET ASIDE THE VERDICT.**

**DX16 CONTAINS CONFIDENTIAL INFORMATION. PLEASE DO NOT SHOW IT TO THE PUBLIC.**

E2JKLIN6                    You - cross

1    A.  Correct.

2    Q.  Did you come to learn, sir, that in fact they had

3    cooperating witnesses working for them who were taping you

4    while you were conducting this business?

5    A.  Recorded my conversation?

6    Q.  Yes.

7    A.  I don't recall.

8    Q.  Have you since learned about conversations you had with

9    cooperating witnesses or witness while you were engaged in

10   these activities?

11   A.  I don't think that was mentioned.

12   Q.  Well, let me ask you, sir:  Before you pleaded guilty, did

13   the government turn over what's referred to as discovery

14   material concerning your charges and the case against you?

15   A.  No.

16   Q.  So your attorney, who's in the courtroom today -- that was

17   never provided to you at any time?

18   A.  As far as I know, I have not seen them.

19   Q.  Have you since your cooperation had an opportunity at any

20   time to review or to listen to recordings that were made by

21   cooperating witnesses who were recording you engaged in these

22   activities?

23   A.  No.

24   Q.  I'm going to show you what's previously identified as

25   3503-45.  I'm going to show you the date and I am going to show

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Tape 167 Telephone conversation recorded between Meng Fei and Wenting Zheng on December 20, 2012.

15:00

Yu: Anyway you just listen to your lawyer. Your case is a minor case. You are all gun powders, you and Feng Li are all gun powders. Even if I am also included, I am also gun powder.

WT: Yes, we are all gun powders. We are all small shrimp.

Yu: Therefore, you should listen to your lawyer. Don't worry. This thing is just time consuming. Is Guan Yu coming back on the 23rd?

Zheng: Yes, he will be back on Sunday. Anyway, this thing is not a big deal. If you are implicated one day, you should tell them that I want to cooperate and I want to testify. That will be it. Anyway, what they want is to find someone to testify against Fengling Liu.

MF: Yes, they want to get the big ones, not us at all.

Zheng: Yes, we are nobody and we don't have anything. Moreover, I told them I only do part time, from Sunday to Thursday, I only work four days.

Yu: Yes, when you are given the opportunity to cooperate, you must grab it.

DX4: Tape 167 Recorded telephone conversation between Meng Fei and Feng Li on December 20, 2012

0:55
Meng Fei: She [Wenting Zheng] is very smart. She knew in this matter we are all gun powders. Then her lawyer told her that after you cooperate, ask them for an offer and basically there will be no jail time. Therefore, she is not very worried. I think she is in a stable mood. She was locked for two days and she was a little shocked when she was first locked up. Then, now after thinking carefully and smoothing out things, she felt it is no big deal.

1:25
Meng Fei: She is very optimistic. She keeps saying that she should no longer have any communication with the Liu family. If they need her to do anything, she will definitely do it, and things like to protect herself. I saw her in a very normal mood. Then she said you'd better not call her. Actually I should also be included. My lawyer also told me that we'd better not talk too much about the case, especially between you codefendants. Don't call each other any more and don't talk about anything. Otherwise in the future it will be a problem when you testify at trial.

Tape 167 Recorded telephone conversation between Meng Fei and Winnie on December 20, 2012

1:40

Meng Fei: Additionally let me tell you, if attorney Liu contacts you, you don't say too many things.
Winnie: Okay, Okay.
Meng Fei: That is, if someone approaches you, or FBI approaches you to ask you questions, you should protect yourself. Don't be anxious to cover for others. Anyone who call you and wants to reach an agreement with you or to do something else, you must refuse. If they call you and you hear that they want to talk to you in detail you should immediately stop talking to them. You must remember this point.
Winnie: Oh, Okay, Okay.

| SPEAKER | | English Translation | Original Language |
|---------|--|--------------------|--------------------|
| | | | |
| *LIU:* | | Hello | 喂。 |
| | | | |
| *YU:* | | Hello!  Attorney Liu!  Sorry to bother you. | 喂！刘律师！不好意思。 |
| | | | |
| *LIU:* | | Hi, Mengfei, how come you are still busy this time of the day? | 喂，梦飞。你怎么这会还这么忙？ |
| | | | |
| *YU:* | | I went to the kitchen, and the signal in my house was not very good. I was scurrying about, and then [I] hit disconnect when I picked up the phone. Sorry about that. Really sorry about that. | 我刚才去厨房了，然后那个我家信号不好，然后我手忙脚乱的，一接，然后就给按挂了，不好意思，实在不好意思。 |
| | | [VOICES OVERLAP] | 【语音重叠】 |
| *LIU:* | | I was going to say, I was in the rest room when you called me, so I didn't pick up.  And then I couldn't get through when I called again. Uh, [CHUCKLES] | 我说呢，你给我打电话我也在卫生间呢，所以没接上，再也打不过去了。啊，【呵呵笑】 |
| | | | |
| *YU:* | | I didn't have much of a signal in my house. | 我家里没什么信号了。 |
| | | [VOICES OVERLAP] | 【语音重叠】 |
| *LIU:* | | Ah, well, how have you been recent, recently? | 啊，那个，你最近，你最近怎么样？ |
| | | | |
| *YU:* | | I have been staying at home. Anyway, the job hunt has not been going smoothly.  And then [U/I]. | 我就在家呆着呢，反正找工作找的也不是很顺利。然后就[U/I]。 |
| | | [VOICES OVERLAP] | 【语音重叠】 |
| *LIU:* | | Ah.  When you came over two weeks ago I was not here. I've been hanging around here all summer long, so I did not go to the office.  Ann told me about what you wanted. I said, uh, that there were enough people right now, so I needed time to make arrangements. | 啊。上次，那个，前两个星期你过来我也不在这。我一个夏天都在这混着，所以都没有去过办公室，那个Ann她们跟我讲了你那个意思，我说，uh，现有的人数是够的，得去慢慢做安排。 |

1

| SPEAKER | | English Translation | | Original Language |
|---|---|---|---|---|
| | | | | |
| *AUTOMATED MESSAGE:* | | Call has been forwarded to an automatic voice messaging system, 9175963756 is not available, at the tone please record your message, when you finish recording you may hang up, or press one for more options [BEEPS, TELEPHONE VOICEMAIL REMINDER] | | Call has been forwarded to an automatic voice messaging system, 9175963756 is not available, at the tone please record your message, when you finish recording you may hang up, or press one for more options [Beeps，电话语音留言提示] |
| YU: | | Hi, Attorney Liu. Sorry to bother you. This is Mengfei. I couldn't hear you when you called. Call me again, again, again when you get a chance. Or, I'll give you a call back later. All right.  Bye bye. Thank you. | | 喂，刘律师，不好意思，我是梦飞。刚才你打电话的时候我没有听见，你有时间了再 再再打过来吧，或者晚一点我再给你打过去。好，拜拜，谢谢。 |
| | | | | |

1

| **SPEAKER** | | **English Translation** | | **Original Language** |
|---|---|---|---|---|
| | | | | |
| *Automated Message* | | Call has been forwarded to an automatic voice messaging system, 9175963756 is not available, at the tone please record your message, when you finish recording you may hang up, or press 1 for more options [BEEPS, TELEPHONE VOICEMAIL REMINDER] | | Call has been forwarded to an automatic voice messaging system, 9175963756 is not available, at the tone please record your message, when you finish recording you may hang up, or press one for more options [Beeps 电话语音留言提示] |
| | | | | |
| *YU:* | | Hi, Attorney Liu. This is Mengfei. Sorry to bother you. I left my cell phone at a friend's place. She/He just sent it over to me a little while ago. During that time you happened to have called me. If you get a chance, give me a call again. Or I'll give you a call back later. I'm really sorry for the trouble, sorry. | | 喂，刘律师我是梦飞，不好意思，那个我的手机昨天落在朋友那儿了，刚刚她才给我送过来，刚刚好你给我打电话来着。那个你有时间再给我打过来，或者我一会再给你打过去，实在不好意思，抱歉。 |

1

| SPEAKER | | English Translation | Original Language |
|---|---|---|---|
| *LIU:* | | Hello | Hello. |
| | | | |
| *YU:* | | Hi, Attorney Liu. This is Mengfei. [U/I] | 喂，刘律师啊。我是梦飞。[U/I]。 |
| | | [VOICES OVERLAP] | 【语音重叠】 |
| *LIU:* | | Oh, mm, mm, how are you? | 啊。嗯嗯，你好。 |
| | | | |
| *YU:* | | Sorry to bother you. I left my cell phone at my friend's place when I went out yesterday. She/He just sent it back to me. I took a look and saw that you had called. Sorry I missed you. | 不好意思，我昨天出去玩的时候把手机落我朋友那了。她刚刚给我送过来，我一看你刚刚打了电话，实在是不好意思啊。 |
| | | | |
| *LIU:* | | I thought that you might be tired since you just got back. You didn't call me yesterday, and I thought you probably just got back. But I still didn't hear from you today, so I thought I'd give you a call and ask. | 我想着你可能刚回来会比较累。昨天你没给我打，我想你可能刚回来，怎么今天还没消息啊，打个电话问问你。 |
| | | | |
| *YU:* | | I left the cell phone in her/his car. I just got it back. I was going to call you yesterday, but then when I came back I found that I did not have my cell phone. | 我昨天那个手机就那个玩晕了，落在她车里了，刚刚拿到。我本来昨天就要给你打电话的，结果回来的时候就发现手机没了。 |
| | | | |
| *LIU:* | | Oh.  How was your trip? | 啊，出去玩得怎么样？ |
| | | | |
| *YU:* | | Pretty good.  Chicago was so pretty… | 挺好的，芝加哥特别漂亮… |
| | | | |
| *LIU:* | | Yeah? | 是吧？ |
| | | | |
| *YU:* | | And [U/I] was clean, and there were fewer people. | 而且[U/I]也干净，而且人也很少。 |
| | | | |
| *LIU:* | | Mm, mm, mm. | 嗯嗯嗯。 |
| | | | |
| *YU:* | | It left me with a very good | 给我的印象特别的好。 |

1

| SPEAKER | English Translation | Original Language |
|---------|--------------------|--------------------|
| *LIU:* | Hello, Mengfei. | 喂，梦飞。 |
| *YU:* | Hello, Attorney Liu. I don't know what just happened. | 喂，刘律师，刚刚不知道怎么回事. |
| *LIU:* | Hello? | 喂？ |
| *YU:* | We got disconnected all of a sudden. Can you hear me? | 突然挂了，能听见吗？ |
| *LIU:* | Hello, hello, hello, hello. | 喂？ |
| *YU:* | Hell? Can you hear me? Hello, hello? | 喂？能听见吗？喂喂？ |
| *LIU:* | Mm, mm, mm, I can hear you. I can hear you. | 嗯嗯嗯，能听见，能听见。 |
| *YU:* | [U/I]. | [U/I]. |
| | [VOICES OVERLAP] | 【语音重叠】 |
| *LIU:* | Mm, mm, mm. Did you say that you wouldn't want to go to court? | 嗯嗯嗯。你就是说不想去出庭是吗？ |
| *YU:* | Yeah.  I feel that, actually going to court is actually a pretty proceduralized process. If the client has been properly prepped, it makes no difference who takes them to court. I feel that we can train those from the office, such as Andy or Lillian. If we can train them to go to court, I think that I can get that done well. | 是，我觉得如果，因为出庭这个事情其实挺程序化的，如果要是能把客人复习好了，就是谁带去上都一样。我觉得我可以在，在办公室里面给其他一些，那个像Andy呀，Lillian他们，再给他们培训培训出庭的这些培训什么呀之类的，我觉得我能把这个做得挺好的。 |
| *LIU:* | Mm, mm, mm, mm, okay. [CLEARS THROAT] That, [U/I] Mm, keep going. | 嗯嗯嗯嗯，okay。【清嗓子】那个，[U/I] 嗯，你说。 |
| | [VOICES OVERLAP] | 【语音重叠】 |
| *YU:* | Primarily, I am under quite a | 我主要是，就是心里压力比较 |

1

| | | | |
|---|---|---|---|
| *YU:* | | Heck! Anyway, nothing goes by the rules here.  There is no contractual restrictions and what-not. Besides, the pay is not great. For them Americans they must feel somewhat turned off. If you treat me this way, I do not have to respect you in any particularly cordial way then. | 真是！不过这边反正什么都不正规。又没有什么合同约束啊这些的，而且待遇又不怎么高，对他们美国人来说他们肯定觉得挺不爽的。你都这样子对待我了，那我也不用什么特别客气的方式来尊重你。 |
| *JIANG:* | | Yeah. | 对。 |
| *YU:* | | Even I understand this. Yeah. | 连我都知道这个道理。是啊。 |
| *JIANG:* | | <mark>Maybe then Attorney Liu might ask you to come back and work here. Our [U/I] attorneys here will be far inferior, if she leaves.</mark> | 那可能到时候刘律师可能会请你回来上班吧。我们[U/I]律师不是差得太多了，她如果走掉的话。 |
| *YU:* | | Then [U/I]. | 那[U/I]. |
| | | [VOICES OVERLAP] | 【语音重叠】 |
| *JIANG:* | | But then Attorney Liu is really terrible, you know? | 不过刘律师也太恐怖了，你知道不？ |
| *YU:* | | What happened? | 怎么了？ |
| *JIANG:* | | Didn't you come over and get the fees [reimbursed] from last time? | 上一次你不是过来拿那个费用嘛，不是吗？ |
| | | | |

| JIANG: | And she chatted with me in the car. She said that she had made up her mind about leaving. | 然后她在车上嘛，她跟我聊，聊，聊，然后她说，她，她，她下定决心要走了。 |
|---|---|---|
| | | |
| YU: | Oh. | 哦。 |
| | | |
| JIANG: | Actually she had told me two weeks ago that she was not going to stay for the long term. She said that she was expecting to leave in two weeks. At the time I thought she was joking about it. I did not pay attention to it. | 她其实提前两个礼拜就跟我说过，她说她做不长的，她说她估计两个礼拜后就走，我以为是她当时开玩笑，我也没在意啊。 |
| | | |
| YU: | Mm, mm, mm, mm, mm, mm. | 嗯嗯嗯，嗯嗯嗯。 |
| | | |
| JIANG: | And then she told me again today. She said she might tell Attorney Liu tomorrow. | 然后她今天就又跟我说，她说她明天可能跟刘律师说。 |
| | | |
| YU: | All right.  That is fine then. | 好，那行了。 |
| | | |
| JIANG: | Hence she is definitely leaving. | 所以说她走那是肯定的了。 |
| | | |
| YU: | If she is definitely leaving this Friday, she might give me a call if she could not find anyone. But I am not in this week.  We'll play it by ear. | 那如果她要是这个礼拜五走的话那说不定，如果她要是真找不着人的话，那她也许会给我打电话。但是我这个礼拜不在，那到时候再说。 |
| | | |

| | | |
|---|---|---|
| | the briefs are mainly written by Natalie. The federal briefs and BIA briefs. | brief主要是Natalie在写，联邦的brief、还有BIA的brief。 |
| YU: | Mm-hm. | Mm-hm. |
| LIU: | Now if you come back, you will still need to write more briefs, and [you will be] writing more. At this point we lose fewer cases. Approximately two to three briefs a month. In a week, usually in a week it would average at the most one brief, that's about it, uh… | 那现在呢你回来的话呢可能还要brief写的，写的多一点。现在就是我们输的案子也少。大概一个月两三个brief，一个星期，通常一个星期平均下来最多有一个brief，大概就是这个样子，呃… |
| | [VOICES OVERLAP] | 【语音重叠】 |
| YU: | Our [U/I] is probably the same as before. No big change there, is there? | 咱们的 [U/I] 还就是跟原来差不多吧，没什么特别大的变化吧？ |
| LIU: | No, no, no. There is a lot less business than it used to be. | No，no，no。现在生意比以前少多了。 |
| YU: | Oh. | 哦。 |
| LIU: | Our master, we have very few individual cases. Back then usually 13 to 14 were normal. But now there are many weeks where there are no more than uh, 10 cases. There are a lot fewer cases than before. | 我们的master，我们的individual现在都很少。那时候一个星期13，14个都是正常，现在很多周不超过，呃，平时不超过10个 吧。就是还是比以前少了很多。 |
| YU: | <mark>What I was saying was that the new cases carry about the same contents as those in the past?  I have not done it in a long time.</mark> | 我是说咱们做新案子的那个就是跟原来内容什么都差不多吧？我这么长时间没做了。 |
| LIU: | <mark>Oh. About what you said, there are significant changes to the law. Same set of things.</mark> | 哦，你说那个，那个法律没有明显变化，还是这套东西。 |
| YU: | All right.  All right. | 行，行。 |

|  | What grows? | 么？ |
|---|---|---|
| *LIU:* | I said that there was a significant level of dependence… | 我说依赖性很强… |
| *YU:* | Oh. | 哦。 |
| *LIU:* | They do not want to think. You tell them one less thing and that's where they leave it. That is it.  That is that. | 她自己不动脑筋，你少说一句话他就给你扔在那。就是，就是这样。 |
| *YU:* | That used to be the case as well, [CHUCKLES] the level of dependence used to be significant, too. | 原来也是，【呵呵笑】原来依赖性也挺强。 |
| *LIU:* | That's what I'm saying. So, it is relatively more painful when you work on it. Mm. | 我就是说啊，所以就做起来比较痛苦，嗯。 |
| *YU:* | What I worry the most is that, things are okay in terms of the discussion at the office, but they immediately forget what they prepared s soon as they arrive in court. | 我最担心的就是在，在办公室里面说的都很okay了，但是一到法庭上之后他们就立刻开始完全都不记得之前准备了些什么。 |
| *LIU:* | Yeah.  So you need to repeatedly emphasize with her, and that everyone needs to be taught these things when they come in. These, whatever you say in front of me today, that's what you say even if there is a knife on your neck when you go to court. If they pressure you, about what time on that day, what was the weather like that day, and so on, and you have no idea. You cannot simply spit it out if they ask you three times. Some people make it up carelessly. After you make up the first | 是啊，所以你就要反复反复的跟她强调，每个人上来都得上这些课。这些，就是我今天你当着我面这么讲，上法庭刀放在脖子里，你也得这么讲。你要是给我人家一逼你，那那一天到底是几点钟、那天到底天气怎么样，你根本就不知道。人家问你三遍你就说了。你不可以这样子。有一些人乱编，你编了第一句你下一句就编不上来，然后一会儿你就露馅。所以我觉得就是你每份都要跟她反复强调，加上助 |

| | | |
|---|---|---|
| | <mark>sentence, you won't be able to make up the next sentence, and then you will be exposed in a short amount of time. So, I think that you need to emphasize repeatedly for each case, and then the assistant needs to make it very clear when making preparations not to think that you are smart and you can deceive other people. Mm.</mark> | 理给她准备的时候就要跟她说清楚，不要自作聪明，你以为你能骗过别人。嗯。 |
| | | |
| *YU:* | Mm, mm, all right. | 嗯，嗯，好。 |
| | | |
| *LIU:* | There is just one more person in the office, Rob. Rob is a good guy, very -- he is very easy to get along with. There is nothing you have to worry about at work.  As for the others, you might still interact with Winnie the most, because things like going to court, cases, and after going to court, Winnie is involved in lots of the ebb and flow of things. Uh, Tom is still around. Basically there is no – uh, William is here. Basically there are no new people, because our business is trending down. There are only people leaving, no, no one coming in. Basically, that is, that is the situation. Um, anyway, the workload will be lighter than it was in the past, because we do not have as many cases. There have been fewer cases recently, and fewer and fewer from the cases that had been worked on before. Therefore, it won't be as intense. Once in a while there will be a week -- I see that there are 19 master | 办公室人手就是多一个Rob。Mm，Rob 人挺好的，非常 -- 好相处，工作上没有，你不用担心什么。然后其他的，你可能打交道最多的还是Winnie。因为上庭啊，案子啊，什么上完庭啊好多事情都是和Winnie 交接，包括上庭啊，上庭的安排啊什么这些。呃，Tom也还在，基本上没有人 – uh, William 在，基本上没有什么新人，因为我们生意往下走，只有走人，没有，没有人来。基本上就是，就是这个状况。Um，反正work load会比以前轻一些，因为我们没有那么多案子。近期来的案子少，那以前的案子总是会越做越少。所以呢，会，不会那么紧张。偶尔有一周，我看后边有一周排了19个大庭，那是相当多，其它时候就是10来个，就这个样子。 |

2.      As I mentioned a few minutes ago, there is no application fee imposed on individuals filing for asylum but that does not mean that administering the process is without cost. In fact, as one would imagine, there are significant costs associated with administering the nation's immigration laws. In the asylum context, three agencies are involved in administering the asylum process including USCIS, Immigration and Customs Enforcement and the Executive Office for Immigration Review. By encouraging and assisting individuals to fraudulently file for asylum, Mr. Wang's fraud scheme contributed to a surge in asylum applications and, as a result, each agency expended considerable time, money, and resources addressing this additional workload. Although I cannot speak for the other two agencies, I would like to briefly outline the various hurdles that my office experienced as a result of his criminal acts. To put the scope of this problem into some context, the number of applications filed by Chinese nationals with the New York Asylum Office increased from 1,189 in 2006 to 7,008 in 2012. During this time, the grant rate for these cases ranged from 23% in 2006 to 14% in 2012. When the investigation began, 48% of the asylum filings with our office were from Chinese nationals. In 2012, cases from Chinese nationals comprised of 63% of the total number of cases filed with the New York Asylum Office. In fact, asylum applications filed by Chinese nationals with the New York Asylum Office generally accounts for more than the next ten nationalities combined. From 2010 to 2012, Mr. Wang filed 1,322 asylum cases. His cases came to the attention of our Fraud Detection and National Security Officers with the assistance of our Asylum Officers who noted that many of his clients' applications contained boilerplate language and documents. This, when combined with the fact that approximately 84% of these cases were found not credible by the interviewing officer, raised serious concerns. Many of these cases included claims that the applicant had been persecuted by the Chinese government due to their religion or their opposition to that government's family planning policy.

As the number of asylum applications increased, so do the costs associated with adjudicating these cases as more personnel must be hired to handle this additional workload. In my office, we have had to increase the number of Asylum Officers from 19 to 56. In addition, the support staff also grew in proportion to the number of officers. However, even with this increase, we do not have enough staff to keep up with incoming receipts and address the 5,500 case backlog that developed as a result of this prolonged period of understaffing. Moreover, our current office space does not have enough room to accommodate this additional staff. As a result, our agency and GSA have had to go through the pain-staking process to move our office. We are still in that process now and the project is not expected to be complete for at least another 1-2 years which means we will still not be up to full staffing until that period of time. It is my understanding that ICE and EOIR have also had to hire additional personnel to handle this surge in cases but I do not have personal knowledge of those particulars. It should be noted that, unlike our Agency which is funded by application fees, EOIR and ICE are funded by taxpayer dollars which means that you and I, along with many other hard-working Americans, were footing the bill for fraud schemes like Mr. Wang's. Although our agency does not receive congressional appropriations that does not mean there were no innocent bystanders in so far as the additional cost to our Agency. USCIS is fee-based. This means that the people who use our services pay for the agency's operating costs in form of application fees. As it is understood that people fleeing persecution may be unable to pay such fees, individuals applying for asylum do not have to pay a fee. Therefore, the costs to administer the affirmative asylum program are factored into the fees charged for the other immigration applications. In other words, our program operates with funds from other immigrants. Currently, it costs approximately $680 to apply for naturalization and approximately $1070 to apply for legal permanent residence (green card).

Through his actions, Mr. Wang knowingly forced hard-working, law-abiding immigrants to foot the bill for his fraud scheme. Some of these individuals had to save for years working multiple jobs in order to pay the application fee, as well as any other associated fees legal or otherwise. As an immigration attorney, Mr. Wang

| | |
|---|---|
| | daughter as well. |
| *Meng Fei Yu* | Yes, yes. |
| | [Silence] |
| *Meng Fei Yu* | I also heard some crazy stories about John Wong [PH] |
| *Vanessa Bandrich* | About John Wong [PH] what? |
| *Meng Fei Yu* | [UI] the paralegal who worked in their office before, she said that they had many medical records [UI] from China that just [UI] filled out… too crazy. |
| *Vanessa Bandrich* | That was too crazy.  I know but their office is totally corrupt. They are really bad. |
| *Meng Fei Yu* | So Ms. Liu never goes to your office, [UI]? |
| *Vanessa Bandrich* | She just got one in [UI] I mean this year, that's it.  She doesn't want to pay Harry, and David doesn't want to pay Harry, they have battles over [UI].  It's a problem between them.  And of course, if she ever has to get somebody cover to her office, she only wants me to do it.  She doesn't want to get any other attorneys.  But it is amazing. She doesn't want to pay Harry; David doesn't want to pay Harry. |
| *Meng Fei Yu* | You only need to go to court. Do you need to review [UI]?  Do you need to review the story? |
| *Vanessa Bandrich* | Yes, you review translation. |
| | [Silence] |
| *Vanessa Bandrich* | I had a denial or Home. [UI] |
| *Meng Fei Yu* | So everything is the same. |
| *Vanessa Bandrich* | The same. |
| *Meng Fei Yu* | Repeat everyday [UI]. Even the story is the same. |
| *Vanessa Bandrich* | My story is the same, save yourself in court [PH]. |



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

February 1, 2013

BY EMAIL
Paul Schectman, Esq.
Michael Schachter, Esq.
Sean Maher, Esq.
John Rodriguez, Esq.
Stewart Rubin, Esq.
Joshua Dratel, Esq.
David Touger, Esq.
Stanislao German, Esq.
Paul McCallister, Esq.
Joel Stein, Esq.
Daniel Parker, Esq.
Jonathan Marks, Esq.
David Gordon, Esq.
Daniel Millman, Esq.
Alice Fontier, Esq.
Irving Cohen, Esq.
Glenn Garber, Esq.
Hugh Mo, Esq.
Jeffrey Pittel, Esq.
Ronald Garnett, Esq.
Ken Paul, Esq.
Cesar De Castro, Esq.
Charles Hochbaum, Esq.
Stephen Preziozi, Esq.

Re:    United States v. Feng Ling Liu, et al., 12 Cr 934 (RA)
       United States v. Freddy Jacobs, et al, 12 Cr. 933 (RPP)
       United States v. Ken Giles, et al, 12 Cr. 935 (VM)
       United States v. Liying Lin, 12 Cr. 936 (WHP)
       United States v. Xiao Feng Xu, 12 Cr. 937 (SHS)
       United States v. Xia Ping Wen, 12 Cr. 938 (SHS)
       United States v. Yong Zhang, et al, 12 Cr. 939 (JGK)
       United States v. Xu Lu, et al., 12 Cr. 940 (RPP)
       United States v. John Wang, et al., 12 Cr. 941 (RPP)

Dear Counsel:

This letter provides discovery pursuant to Rule 16(a) of the Federal Rules of Criminal

Procedure ("Fed. R. Crim. P."), and seeks reciprocal discovery. Attached please find a chart summarizing the discovery being disclosed by the Government. The chart is organized by indictment. Please know that to the transcripts and summaries of recorded conversations are drafts and are not necessarily final and as discussed at the pre-trial conferences shall not be used at trial. All discovery materials are available for copying through Dupe Coop (contact: John Palermo, 973-895-1359 or e mail dupecoop@mac.com.).

The Government recognizes its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. To date, the Government is unaware of any *Brady* material regarding your client, but will provide timely disclosure if any such material comes to light. The Government will provide material under *Giglio v. United States*, 405 U.S. 150, 154 (1972), and its progeny, in a timely manner.

## Disclosure By the Defendant

In light of your request for the foregoing discovery, the Government hereby requests reciprocal discovery under Fed. R. Crim. P. 16(b). Specifically, we request that you allow inspection and copying of: (1) any books, or copies or portions thereof, which are in the defendant's possession, custody or control, and which the defendant intends to introduce as evidence or otherwise rely on at trial; and (2) any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, or copies thereof, which are in the defendant's possession or control, and which the defendant intends to introduce as evidence or otherwise rely on at trial or which were prepared by a witness whom the defendant intends to call at trial.

The Government also requests that the defendant disclose prior statements of witnesses he will call to testify. *See* Fed. R. Crim. P. 26.2; *United States v. Nobles*, 422 U.S. 225 (1975). We request that such material be provided on the same basis upon which we agree to supply the defendant with 3500 material relating to Government witnesses.

We wish to remind you that Fed. R. Crim. P. 12.2 requires you to provide the Government with written notice if the defendant intends to rely on the defense of insanity at the time of the alleged crime or intends to introduce expert testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offenses charged.

We also wish to remind you that Fed. R. Crim. P. 12.3(a) requires you to provide the Government with written notice if the defendant intends to claim a defense of actual or believed exercise of public authority on behalf of a law enforcement or Federal intelligence agency at the time of the alleged crime.

The Government requests a response to our Rule 12 demands within the time period allowed by the Court for the filing of motions.

3

Sentence Reduction for Acceptance of Responsibility

        In the event that your client has an offense level of 16 or greater, this Office will oppose the additional one-point reduction under the Sentencing Guidelines available for defendants who plead prior to the Government's initiation of trial preparations pursuant to U.S.S.G. § 3E1.1(b), in the event your client has not entered a plea of guilty two weeks prior to trial (or in the case of 12 cr. 934, given the anticipated length and complexity of that case, four weeks prior to trial. We will follow this policy whether or not suppression or other pretrial motions remain outstanding after this date.

        Please contact me at your earliest convenience concerning the possible disposition of this matter or any further discovery which you may request. Please be advised, however, that pursuant to the policy of the Office concerning plea offers, no plea offer is effective unless and until made in writing and signed by authorized representatives of the Office. In particular, discussions regarding the pretrial disposition of a matter that are not reduced to writing and signed by authorized representatives of the Office cannot and do not constitute a "formal offer" or a "plea offer," as those terms are used in *Lafler* v. *Cooper*, 566 U.S. —, 2012 WL 932019 (Mar. 21, 2012), and *Missouri* v. *Frye*, 566 U.S. —, 2012 WL 932020 (Mar. 21, 2012).


                        Very truly yours,

                        PREET BHARARA
                        United States Attorney

            by: _____
                        Harris Fischman
                        Robert Boone
                        Assistant United States Attorney
                        (212) 637-2305




                                4

| Indictment # | Eligible Defendants | Contents |
|---|---|---|
| 934 | V ss h<br>Ha<br>Rac a g<br>K. a<br>Fe g. g.<br>Da a<br>L'lia a<br>V e a<br>Fe g. gz e g | **Disks** (Yes)<br>1 Disk, 934.1-934.292,<br>934.293-934.364, 934.365-934.396, 934.397-394.406<br><br>**Documents** (Yes)<br>4/14/2012 Photos<br>1 of 3 Bandrich and Association Asylum Applications<br>2 of 3 Bandrich and Association Asylum Applications<br>3 of 3 Bandrich and Association Asylum Applications<br>1 of 9 Moslemi and Associates Asylum Applications<br>2 of 9 Moslemi and Associates Asylum Applications<br>3 of 9 Moslemi and Associates Asylum Applications<br>4 of 9 Moslemi and Associates Asylum Applications<br>5 of 9 Moslemi and Associates Asylum Applications<br>6 of 9 Moslemi and Associates Asylum Applications<br>7 of 9 Moslemi and Associates Asylum Applications<br>8 of 9 Moslemi and Associates Asylum Applications<br>9 of 9 Moslemi and Associates Asylum Applications<br>Grand Jury Subpoena Records for 212-226-3960<br>Notice of Appearance for Ou Wen Xiu; Feng Li 3/9/2010<br>Decision Regarding Application<br>Record of Applicant and Interpreter<br>Learner Permit Lianna Chen<br>Waiver of Presence of Representative<br>Application for Asylum<br>Affidavit Wen Xiu Ou<br>Notice of Appearance for Ou Wen Xiu; Feng Li 3/9/2010<br>List of Documents<br>Resident ID Card Wen Xiu Ou<br>Household Register (English and Chinese)<br>Dongsheng Christian Family Church Certificate<br>Resident ID Card Ying Ying Jiang<br>Letter from Father<br>Resident ID Card Fa Qiu Ou<br>Shipping Waybill<br>Affidavit Yun Zhu Liu<br>Employment Authorization Card<br>Passport Yun Zhu Liu<br>Photos |

Yes

| Item |
| --- |
| Certificate of Marriage Registration Yong Lin and WenXiu Ou |
| Letter from Tian Fu UMC 5/22/2010 |
| Certification of Work at Market |
| Birth Certificate Alvin Lin |
| SS Card |
| Surgical Pathology Report |
| Operative Report Maimonides Hospital |
| Lutheran Medical Center Bill |
| Anesthesiology Associates of Boro Park |
| Pre Admission Testing Unit |
| Rehabilitation Medicine Discharge Instructions |
| Referral |
| Evidence and or Witness List |
| Notice of Proposed Evidence: Letter from Doctor |
| Letter from Doctor |
| Proof of Service |
| Employment Authorization Card Ou Shu Ming |
| Affidavit Shui Ming Ou |
| Letter from Tian Fu UMC 1/30/2012 |
| Notice of Proposed Evidence: Church certificate and witness |
| Notice of Appearance for Wu Hual Guo: Vanessa Bandrich |
| 5/16/2012 |
| Application for Asylum |
| Asylum Interview Transcript |
| Statement re: Christianity |
| Affidavit Hual Guo Wu |
| Resident ID Card Wu Chen |
| Resident ID Card Wu, Hui Guo |
| Resident ID Card Liu, Yong Xing |
| Household Register |
| Birth Certificate |
| Graduation Diploma |
| Resident ID Card Wang, Jin Mei |
| Statement Wu Chen |
| Statement Yong Xing Liu re: Hual Guo Wu being Christian |

| 941 | | | |
|---|---|---|---|
| John Wang<br>Dejin Huang<br>Jian En Wang<br>Lianna Chen | Disks | *Yes* | Shipping Waybill<br>ID Cards Huaiguo Wu<br>Certificate of Eligibility for Nonimmigrant Student<br>ID Cards<br>Household Register<br>List of Supporting Documents For Wu, Huai Guo<br>Background Information<br>Passport Wu, Huai Guo<br>Highland Fellowship Church Letter re: Huai Guo Wu<br>Tian Fu UMC re: Huai Guo Wu<br>SW Inventory 11 East Broadway 4D<br>SW Inventory Moslemi and Associates<br>Receipt for Property<br>Notes from FLL to Paralegals w/ Verbatim summary<br>Required Documents from Liu Feng Lin Law Office W/ Verbatim<br>Translation<br>Instructions from Bandrich<br>Instructions for writing stories<br>Study guides<br>Contracts<br>Required documents<br>Subpoena Responses<br>Tracking Warrant |
| Documents<br>1 Disk, 941.1-941.57, 941.58- | | | John Wang and Associates Asylum Applications<br>John Wang and Clients Park Surveillance<br>6/29/2011 Surveillance- Fake Docs from Lianna Chen delivered by Hannah<br>Photos of Forged Documents from Lianna Chen<br>2/9/2011 surveillance<br>12/1/2010 Surveillance<br>Lu Gao Asylum Applications<br>Adedayo Idowu Asylum Applications<br>Photos<br>Letter from Gao and Associates |

| | | | |
|---|---|---|---|
| | | 941.68, 941.69-941.72, 941.73-941.95 | Birth Certificate Liang Lixian |
| | | | Receipt for Property |
| | | | List of Questions from Jian En Wang Office |
| | | | Form from Wang and Associates |
| | | | Pretrial Receipt for Passport |
| | | | Household Register Lianna Chen |
| | | | Birth Certificate Liang Lixian |
| | | | Birth Certificate Liu Jian |
| | | | Birth Certificate, National ID Card, Household Register, China |
| | | | Passport Chen Yanghong |
| | | | Items Seized from Jian En Wang's Office |
| | | | Subpoena Responses |
| | | | Tracking Warrant |
| 935 | Ken Giles Hong Che | Documents 1 Disk,935.1-935.28 | Receipt for property |
| | | | Asylum Application Paola Dongnina Manrique Mora |
| | | | Certificate of Eligibility for nonimmigrant student status Hengfei Hu |
| | | | Church of Grace Letter re: Heng Fei Hu |
| | | | Contract w/ Giles |
| | | | ID Cards |
| | | | Student Visa app |
| | Ken Giles Hong Che Living Lin | Disks: | Ken Giles Asylum Applications |
| | | Documents: 1 Disk,935a.1-935a.282 | Notice of Appearance Ken Giles for Zhen Yi Li |
| | | | Application for Asylum Zhen Yi Li |
| | | | Letter re: forced abortion Zhen Yi Li |
| | | | List of Evidence and evidence (biographic information, Education and employment background of applicant and husband, supporting documents for asylum claims, baptism photos, background information and news) |
| | | | Notice of Appearance Ken Giles for Zhen Yi Li |
| | | | Asylum Application Zhen Yi Li |
| | | | Asylum Approval |
| | | | Letter: Recommendation of approval |
| | | | Assessment to Grant Asylum |
| | | | Decision Regarding Application for Asylum |

| | | | |
|---|---|---|---|
| | | | Oaths |
| | | | Driver License Chen Yujing |
| | | | Waiver of Presence of Representative |
| | | | Questionnaire |
| | | | Ken Giles Gmail Records |
| 933 | Freddy Jacobs | Documents: | Property receipt |
| | Yi Yang | 1 Disk, 933.1-933.77, 933.78 | Notice of Appearance Freddy Jacobs for Lei Zhao |
| | | | Interview Instructions |
| | | | Application for Asylum Lei Zhao |
| | | | Statement Lei Zhao |
| | | | Oaths |
| | | | Decision |
| | | | Waiver of Presence of Representative |
| | | | Driver License Delin Sun |
| | | | Driver License Lei Zhao |
| | | | Passport Lei Zhao |
| | | | Documents List and Documents-Amendments to I-589, Applicants passport and I-94 Card, National ID, Notarial Birth Certificate, Household Register, Penalty Decision Letter, Diagnosis Certificate, Applicant's Baptism Certificate, Letter from Church, Translation Certificate |
| | | | Interpreters Notes During Interview |
| | | | Property Receipt |
| | | Disks: | 1 of 2 Freddy Jacobs Asylum Applications |
| | Freddy Jacobs | | 2 of 2 Freddy Jacobs Asylum Applications |
| | Yi Yang | | Notice of Appearance Freddy Jacobs for Dai Nnian |
| | Living Yang | Documents: | Application Dai Nian |
| | | 1 Disk,933a.1-933a.90 | Interview Dai Nian |
| | | | Passports, IDs Dai Nian |
| | | | Statements Dai Nian |
| | | | Notice of Appearance Freddy Jacobs for Tao Bai |
| | | | Asylum Application Tao Bai |
| | | | Statements of Tao Bai |
| | | | Photos |
| | | | Baptismal Certificate for Tao Bai |
| | | | Interview of Tao Bai |

| No. | Name | Type | Contents |
|---|---|---|---|
| 938 | Xia Ping Wen "Wendy" | Disk | Koston Feng Asylum Applications |
| | | Documents: 1 Disk, 938.1-938.7 | Passport Hong Cao |
| | | | Property Receipts |
| | | | Affidavit |
| | | | Hong Cao |
| 936 | Liying Lin | Documents: 1 Disk, 936.1-936.4, 936.5-936.8 | Property Receipts |
| | | | Subpoena Response |
| | | Disks: | 3/31/2011 Surveillance |
| | | | 6/22/2011 Surveillance |
| 940 | Lu Xu / Huan Wang | Documents: 1 Disk, 940.1-940.13 | Sara Cross Asylum Applications |
| | | | Document Preparation for Religious Extension from Sara Cross |
| | | | 41-60 Main St |
| | | | Verbatim Translation of Sara Cross Business Card |
| | | | Receipt of Property |
| | | | Photos |
| 939 | Yong Zhang / Song Luo / Zeyuan Wang / Xian Jun Yang | Disks: | 3/31/2011 Surveillance |
| | | | 6/22/2011 Surveillance |
| | | | 3/31/2011 "Steve" Zeyuan Wang Photos at Tang's Restaurant |
| | | | 196-50 Northern Blvd Flushing |
| | | | Grand Jury Subpoena Telephone Records 212-227-6333 |
| | | | Gerald Karl Karl Asylum Applications 2011 |
| | | Documents: 1 Disk, 939.1-939.14, 939.15-939.24 | Gerald Karl Karl Asylum Applications 2012 |
| | | | Receipts for Property |
| | | | Receipt for Passport |
| | | | Photos |
| | | | Subpoena response |
| 937 | Xiao Feng Xiu | Disk | John C. Lin Asylum Applications |
| | | Documents: 1 Disk, 937.1-937.5 | List of Doctors for Exams Hanging in office of John C. Lin |
| | | | List from the office of John C. Lin |

Yes

| CR933 | CR934 | CR935 | CR936 | CR937 | CR938 | CR939 | CR940 | CR941 |
|---|---|---|---|---|---|---|---|---|
| 164 | 10 | 93 | 140 | 49 | 29 | 8 | 8 | 8 |
|  | 12 | 97 | 156 | 52 | 35 | 18 | 31 | 9 |
|  | 15 | 100 | 157 | 59 | 38 | 19 | 54 | 14 |
|  | 25 |  |  | 66 | 51 | 23 | 68 | 16 |
|  | 32 |  |  |  | 78 | 31 | 69 | 17 |
|  | 40 |  |  |  | 82 | 54 | 72 | 20 |
|  | 44 |  |  |  | 84 | 68 | 79 | 21 |
|  | 48 |  |  |  | 86 | 69 | 88 | 22 |
|  | 57 |  |  |  | 88 | 73 | 117 | 24 |
|  | 58 |  |  |  | 108 | 152 | 131 | 26 |
|  | 60 |  |  |  |  | 153 | 143 | 27 |
|  | 61 |  |  |  |  |  | 144 | 28 |
|  | 62 |  |  |  |  |  |  | 30 |
|  | 63 |  |  |  |  |  |  | 37 |
|  | 64 |  |  |  |  |  |  | 41 |
|  | 65 |  |  |  |  |  |  | 55 |
|  | 71 |  |  |  |  |  |  | 56 |
|  | 74 |  |  |  |  |  |  | 76 |
|  | 80 |  |  |  |  |  |  | 77 |
|  | 81 |  |  |  |  |  |  | 78 |
|  | 83 |  |  |  |  |  |  | 96 |
|  | 85 |  |  |  |  |  |  | 107 |
|  | 87 |  |  |  |  |  |  | 115 |
|  | 89 |  |  |  |  |  |  | 123 |
|  | 90 |  |  |  |  |  |  | 126 |
|  | 96 |  |  |  |  |  |  | 135 |
|  | 98 |  |  |  |  |  |  | 136 |
|  | 104 |  |  |  |  |  |  | 155 |
|  | 105 |  |  |  |  |  |  | 158 |
|  | 110 |  |  |  |  |  |  | 159 |
|  | 112 |  |  |  |  |  |  | 160 |
|  | 113 |  |  |  |  |  |  | 162 |
|  | 118 |  |  |  |  |  |  | 163 |
|  | 120 |  |  |  |  |  |  |  |
|  | 124 |  |  |  |  |  |  |  |
|  | 125 |  |  |  |  |  |  |  |
|  | 127 |  |  |  |  |  |  |  |
|  | 128 |  |  |  |  |  |  |  |
|  | 129 |  |  |  |  |  |  |  |
|  | 130 |  |  |  |  |  |  |  |
|  | 132 | 145 |  |  |  |  |  |  |
|  | 133 | 146 |  |  |  |  |  |  |
|  | 134 | 147 |  |  |  |  |  |  |
|  | 137 | 149 |  |  |  |  |  |  |
|  | 138 | 150 |  |  |  |  |  |  |
|  | 139 | 154 |  |  |  |  |  |  |
|  | 141 | 161 |  |  |  |  |  |  |
|  | 142 | 167 |  |  |  |  |  |  |

*48*

UNCLASSIFIED

## UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION



26 Federal Plaza, New York, New York 10278

| | |
|---|---|
| File Number: | 281E-NY-302120 |
| Requesting Official(s) and Office(s): | SA Daniel Park, NYO |
| Task Number(s) and Date Completed: | Click here to enter a date. |
| Name and Office of Linguist(s): | David Ha, NYO |
| Name and Office of Reviewer(s): | Click here to enter text. |
| Source Language(s): | Chinese Mandarin |
| Target Language: | English |

Source File Information
    Name of Audio File or CD: 1120
    *If Applicable*−Call Number:
           −Date, Time, Duration: 6/21/11; FLL
           −Line, Target Numbers:
           −Direction:

Choose an item.

<u>Participants</u>: (Delete if not needed.)
        Cooperating Human Source        CW
        Unidentified Female 1             UF1
        Unidentified Female 2             UF2

<u>Abbreviations</u>: (Delete if not needed.)
        Inaudible                     IA

[TN: ] (Delete if not needed.)

3502-84

UNCLASSIFIED

PREAMBLE:            *This is Special Agent Daniel Park and Detective Romero, the date is June 21st, 2011, the time is approximately 3PM. This is a female cooperator going to the law office of Fengling LIU, also known as the office of Troy Moslemi, 2 East Broadway, New York, New York.*

[15:11:22] [People can be heard speaking in the background; CW not engaged in any conversations.]

[15:17:24] CW says something about the "proof" and "the materials". She sounds to be speaking with a female [UF].

CW:     [IA]

UF1:    [IA]… isn't this a copy?

CW:     This is real!

UF1:    Isn't this a copy?

CW:     This is real…

UF1:    Year 78… [IA]

CW:     This is it…

UF1:    It's very strange, you know? He/she has to do it for you. [IA]

CW:     Can't use it?

[IA]

[15:20:11] CW says something about "other information". UF1 says something about "when they see it". CW says something about [the material] being no good.

[15:23:56] CW says something about bank account, flight tickets.

[15:24:52] CW thanks UF1. She says that "the other things are almost [done]", and that she [CW] is preparing them.

 [15:27:22] [CW sounds to be speaking with another female [UF2] at this point.]

CW says something about [the process] being difficult as she has no experience.

[IA]

[15:30:29] UF2 can be heard saying something about photos.

UNCLASSIFIED

[15:32:47] CW thanks UF2.

[CW sounds like she moves to another location.]

[15:33:39]

CW then can be heard telling another female [UF3] that someone else told her [CW] that her "proof of one year" is not good. CW says that according to another female, [this office] can provide her with the ad of the people who can "do these things".

CW:    …she said that these two are both not good.

UF2:   These are not good. It must have your name on it.

CW:    I just don't know how to write it… took it out and…

UF2:   Don't have to wait for him/her to write it. Don't have to see it, just put on the customer's name; the year; the date; and how much. Isn't it fine then? Customer's name…

CW:    No… [laughs]… I showed these to him/her before, [he/she said] these are no good. He/she even took out some [done] by others. [He/She] said that if [we] submit these, the immigration officers will know immediately…

UF2:   Even the paper is so fake… this thing…

CW:    Yea, it's really fake. Yea.

UF2:   Can't your family do some… like plane tickets, etc, insurance statement, all are fine. Shopping receipts. Just let them do it, then write the time and your name.

CW:    They don't have any means of doing it…

UF2:   Impossible!

CW:    He/she said…last time… sent out from China…

UF2:   Impossible. There are so many. Your family didn't put in enough effort.

CW:    [Sigh]

UF2:   How can they be unable to do this? [Your] family has to put in some effort. Don't have to spend a lot of money, go shop at any store and they'd have to write your name. A receipt. Small hotels… so many hotels. Just get someone to stay there, and that's it. Put on the name. Why is it impossible [to do]? You cannot use these two receipts.

CW:    Is there something like this, done in the US?

UF2:   This was sent in by client(s)!

CW:   ...because he/she said... that lady said there's [someone] that specialize in making these things...

UF2:   Oh!

CW:   Yea! The ad...

UF2:   You're saying...

CW:   Yea, I'll make a phone call and have [my] family members go do it...

UF2:   Then, then... copy down this phone [number], this phone [number]. His/her cell phone number... copy it down. He/she has flight tickets... flight tickets for before you left the country...

CW:   Just one business card right? That's it right?

UF2:   Just... just one business card. He/she sends [things] over for the client(s). He/she will help you prepare flight tickets; receipts; hotel receipts; tell him/her from what day to what month.

CW:   Hmm, it'd be good to get this person to do it. He/she is professional.

UF2:   You can call him/her from here... long distance... ask him/her. And you can have your family go look for him/her.

[UF2 speaks with someone else in the background.]

CW:   *Okay.* Thanks!

UF2:   Sure, no problem.

POSTAMBLE:   *This is Special Agent Daniel Park and Detective Romero, the time is approximately 3:36PM, and that concludes the recording.*

U.S. v. Feng Ling Liu
S2 12 Cr. 934 (RA)

DATE:                   June 21, 2011

TIME:                   3:00 pm

LOCATION:               Moslemi & Associates
                        2 East Broadway
                        New York, NY

PARTICIPANTS:           Unidentified Male 1
                        Unidentified Male 2

ABBREVIATIONS:          [UI] = Unintelligible
                        [IA] = Inaudible/Quiet audio
                        [PH] = Phonetic Spelling
                        [SC] = Simultaneous Conversation



GOVERNMENT
EXHIBIT
48T
S2 12 Cr. 934 (RA)

| SPEAKER | English Translation | Original Language |
|---|---|---|
| *Unidentified Male 1:* | Hello | 喂 |
| *Unidentified Male 2:* | [UI] | [UI] |
| *Unidentified Male 1* | I was too excited, too excited, what if there is [UI] | 我这太高兴了，太高兴了之万一这有什么 [UI] |
| *Unidentified Male 2:* | No, no, no this | 没有，没有，这个没有 |
| *Unidentified Male 3:* | [Speaking Minnan dialect] Did you meet them? You what [UI]? | [闽南话] 你遇到他们了没？你什么 [UI]啊？ |
| *Unidentified Male 2：* | [UI] | [UI] |
| *Unidentified Male 3* | I didn't. [UI] | 我没有啊。[UI] |
| *Unidentified Male 4* | At that time I said I needed to learn more from you… | 当时我说，还要进一步跟你了解….. |
| *Lin Chen:* | [SC] Is this lady here? | [SC]这位小姐在吗？ |
| *Unidentified Female 2:* | Zhou Ya Yan Ling [PH] just a second | [周雅艳玲PH]，再等一会 |
| *Lin Chen:* | OK | 好 |
| *Unidentified Male 4* | [SC] Then he fell asleep | [SC]后来他睡着了 |
| *Unidentified Male 4* | [Tai PH] several words, so they were deleted. The rest remained untouched. | [太PH]字有几个就直接删掉了，其他都没动。 |
| *Unidentified Male 5* | Oh | 哦 |
| *Unidentified Male 4* | Not too bad, can't connect very well, right? | 还好，不太连不通，对吧？ |
| *Unidentified Female 3* | Must get it out, just like this. Put it on newspapers. | 一定要出去，像这样吧，尽快见报 |

1

| | | |
|---|---|---|
| *Unidentified Male 6* | Can I help you? | 你有什么事吗？ |
| *Lin Chen:* | I am looking for this lady. | 我有找这个小姐。 |
| *Unidentified Male 7* | Type this out for me | 给我把这个打出来 |
| *Unidentified Male 4* | Bad things about him just came directly, but he has a temperament…[UI] | 他的坏话直接过来了，但是他有一个脾气…..[UI] |
| *Unidentified Female 4* | I really got myself in trouble. This is really big trouble. | 自己真遇到麻烦事了，这个麻烦死了。 |
| *Unidentified Female 5* | Are you done listening? | 听完了？ |
| *Unidentified Male 8* | I finished reading this | 我把这个读完了 |
| *Unidentified Female 5* | Oh | 哦 |
| *Lilian Miao* | Sit there. Wait until he finishes talking. Excuse me. | 你坐那儿，等他说完话，我打扰一下。 |
| *Lilian Miao* | [UI] | [UI] |
| *Unidentified Female 6* | Hi, how are you? | 诶，你好！ |
| *Unidentified Male 9* | OK, OK, fine, goodbye | OK,OK，好，再见 |
| *Unidentified Female 6* | Mm, fine, bye | 嗯，好，再见 |
| *Lin Chen* | Ah, pretty much. But I… material… still… | 啊，是差不多，但是我..材料还… |
| *Lin Chen* | I have evidence, [SC] | 我这里是证明嘛，[SC] |
| *Unidentified Female 2* | Everything proves, come back a little. No. How does he do that? It was not filled out. One thing was smooth, like the hotel. Also formal, in his file also … [UI]. He already packed | 所有的事实证明，再回来一点，没有啊。现在他怎么做？它都是没有填写的。一件事就很平，像酒店的是这样子。还有正式的，在自己档案里的也..[UI]， |

2

| | it for you, for the whole… [UI] | 他已经给你包好了，为了整个….[UI] |
|---|---|---|
| *Lin Chen:* | Is this real? | 这是真的？ |
| *Unidentified Female 8* | [SC] about 2.7 million | [SC]大概270多万 |
| *Unidentified Female 9* | [SC] it's not a kind of module, is it? | [SC]不是一种模式吧？ |
| *Unidentified Female 2* | This is real. | 这是真的。 |
| *Unidentified Female 9* | [SC] Right, aunty. This has become a hole without a bottom. | [SC]对吧阿姨，这成了无底洞了。 |
| *Unidentified Female 2* | This is real. | 这是真的。 |
| | [Portion U/I] | [Portion U/I] |
| *Unidentified Female 9* | And then, [UI] receipt | 然后的话，[UI] 单子 |
| *Lin Chen* | For a doctor's visit? | 看病的是吗？ |
| *Unidentified Female 9* | Yes | 对。 |
| *Lin Chen* | From health clinic? | 卫生所的？ |
| *Unidentified Female 9* | Like this. Not stamp is required | 像这样的，不要盖章的 |
| *Lin Chen* | No stamp | 不要盖章 |
| *Unidentified Female 9* | Prescriptions, as long as it's private evidence, it is delivered here via express | 检药单，只要是私人的证据，都是这样快递过来的 |
| *Lin Chen* | These all require stamps? | 这些都是要盖章的？ |
| *Unidentified Female 9* | Yes. If it's this kind of doctor's visit without a receipt, we can… [UI] prescriptions | 对啊，如果是这种看病没有药费单子的话就可以….[UI]药单子 |

| | | This is just a prescription. | 这个只是处方 |
|---|---|---|---|
| *Lin Chen* | | | |
| | | | |
| | | [Portion U/I] | [Portion U/I] |



# 福州开明食品贸易商行

No 0001382

收货单位：　　　　　　　　　　　　　　年　　月　　日

| 名　称 | 数　量 | 单　价 | 金　额 | |
|--------|--------|--------|------|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

合计　　万　仟　佰　拾　元　角　分￥

地址: 福州马尾区海峡水产品交易中心14号楼42-43店　电话: 0591-83659645
手机: 13635273577　13705002923　　　　　手机: 13305010228

底欠: _____

第一联 存根(白) 第二联 客户(红) 第三联 回单(黄)

mgp
GOVERNMENT
EXHIBIT
302 K
S2 12 Cr. 934 (RA)

# 福州开明食品贸易商行

No 0001382

收货单位：　　　　　　　　　　　　　年　　月　　日

| 名　称 | 数　量 | 单　价 | 金　额 |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

合计　万　仟　佰　拾　元　角　分￥

第一联 存根(白) 第二联 客户(红) 第三联 回单黄

地址: 福州马尾区海峡水产品交易中心14号楼42-43店　电话: 0591-83659645
手机: 13635273577　13705002923　　　　　　　　手机: 13305010228

底欠: _____

# 福州开明食品贸易商行

No 0001401

收货单位：　　　　　　　　　　　　　　　年　　月　　日

| 名　　称 | 数　量 | 单　价 | 金　　额 |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| 合计　　万　仟　佰　拾　元　角　分¥ | | | |

第一联 存根白) 第二联 客户(红) 第三联 回单(黄)

地址: 福州马尾区海峡水产品交易中心14号楼42-43店　电话: 0591-83659645
手机: 13635273577　13705002923　　　　　　　手机: 13305010228

底欠: _____

# 福州开明食品贸易商行

No 0001401

收货单位：　　　　　　　　　　　年　月　日

| 名　　称 | 数　量 | 单　价 | 金　　额 |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

第一联 存根白) 第二联 客户(红) 第三联 回单黄)

| 合计 | 万 | 仟 | 佰 | 拾 | 元 | 角 | 分¥ |
|---|---|---|---|---|---|---|---|

地址: 福州马尾区海峡水产品交易中心14号楼42-43店　电话: 0591-83659645
手机: 13635273577　13705002923　　　　　　　　手机: 13305010228

底欠: ＿＿＿＿＿＿＿

# 福州开明食品贸易商行

No 0001402

收货单位：　　　　　　　　　　　年　月　日

| 名　称 | 数　量 | 单　价 | 金　额 |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| 合计　万　仟 | 佰　拾 | 元　角 | 分 ¥ |

第一联　存根(白)　第二联　客户(红)　第三联　回单(黄)

地址：福州马尾区海峡水产品交易中心14号楼42-43店　电话：0591-83659645
手机：13635273577　13705002923　　　手机：13305010228

底欠：＿＿＿＿＿＿＿＿

# 福州开明食品贸易商行

No 0001400

收货单位：朱柏清　　　2009 年 9 月 7 日

| 名　称 | 数　量 | 单　价 | 金　额 |
|---|---|---|---|
| 好牛肚翁 | 199×2×12⁹⁰ | | 513 |
| 13 肋排 | 4×140 | | 565 |
| 40 七寸 | 5×40×7⁴⁰ | | 1480 |
| 舌头 | 3×24×12⁸ | | 922 |
| 明爪 | 2×20×11²⁰ | | 468 |
| 2b爪 | 5×30×12 | | 1800 |
| 大腿 | 2×140 | | 280 |
| 中腿 | 2×142⁹ | | 284 |
| | | | |
| 共: 24件 | | | 6215 |
| | | 42 | |
| | | | |
| | | | |

| 合计 | 万 | 仟 | 佰 | 拾 | 元 | 角 | 分 ¥ |
|---|---|---|---|---|---|---|---|

地址: 福州马尾区海峡水产品交易中心14号楼42-43店　电话:0591-83659645
手机: 13635273577　13705002923　　　　　　　手机: 13305010228

底欠:_____

第一联 存根(白)　第二联 客户(红)　第三联 回单(黄)

福州明源食品批发商行

## 商品调拨单 0000538

单位名称：李柏清    2009 年 9 月 7 日

| 名　称 | 规　格 | 单位 | 数　量 | 单价 | 金　额 | 备注 |
|---|---|---|---|---|---|---|
| 金钱牛仔炒菜 | 扣 | 2 | | 370 | | |
| 豆仟 | " | 2 | | 38 | | |
| 再天使 | " | 3 | | 108 | | |
| 醉鸡 | " | 3 | | 699 | | |
| 小牛丸 | " | 3 | | 465 | | |
| 虾春 | " | 2 | | 106 | | |
| 鳗头 | " | 1 | | 180 | | |
| 甜蜜头 | 2包 | 100包 | | 1000 | | |
| | | | | | | |
| | | | | 2963 | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

① 欠款 (白)
② 客户 (红)
③ 会计 (黄)
④ 库存 (绿)

| 合　计 | 拾 | 万 | 仟 | 佰 | 拾 | 元 | 角 | 分 ￥2963 |
|---|---|---|---|---|---|---|---|---|

地址：福州水产批发市场 2#34-35
电话：0591-83929820    83658688
发货单位：　　送货：　　　收货：　　制单人：

福州明源食品批发商行

## 商品调拨单 0000539

单位名称：                         年    月    日

| 名　称 | 规　格 | 单位 | 数　量 | 单价 | 金　额 | 备注 | |
|---|---|---|---|---|---|---|---|
| | | | | | | | ①欠款（白） |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | ②客户（红） |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | ③会计（兰） |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | ④库存（绿） |
| | | | | | | | |
| | | | | | | | |
| 合　计 | 拾　万　仟　佰　拾　元　角　分￥ | | | | | | |

地址：福州水产批发市场2#34-35
电话：0591-83929820    83658688
发货单位：        送货：        收货：        制单人：

福州明源食品批发商行

## 商品调拨单 0000539

单位名称：　　　　　　　　　　　　　　　年　　月　　日

| 名　　　称 | 规　格 | 单位 | 数　量 | 单价 | 金　额 | 备注 | |
|---|---|---|---|---|---|---|---|
| | | | | | | | ①欠款(白) |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | ②客户(红) |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | ③会计(蓝) |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | ④库存(绿) |
| | | | | | | | |
| | | | | | | | |
| 合　计 | 拾　万　仟　佰　拾　元　角　分¥ | | | | | | |

地址：福州水产批发市场2#34-35
电话：0591-83929820　83658688
发货单位：　　　　送货：　　　　收货：　　　　　制单人：

福州明源食品批发商行

## 商品调拨单　0000539

单位名称：　　　　　　　　　　　　　年　　月　　日

| 名　称 | 规　格 | 单位 | 数　量 | 单价 | 金　额 | 备注 |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| 合　计 | 拾　万　仟　佰　拾　元　角　分￥ | | | | | |

①欠款(自)

②客户(红)

③会计(兰)

④库存(绿)

地址：福州水产批发市场2#34-35
电话：0591-83929820　　83658688
发货单位：　　　　送货：　　　收货：　　　　制单人：

福州明源食品批发商行

# 商品调拨单 0000539

单位名称：　　　　　　　　　　　　　年　　月　　日

| 名　　称 | 规　格 | 单位 | 数　量 | 单价 | 金　额 | 备注 | |
|---|---|---|---|---|---|---|---|
| | | | | | | | ①欠款（白） |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | ②客户（红） |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | ③会计（黄） |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | ④库存（绿） |
| | | | | | | | |
| | | | | | | | |
| 合　计 | 拾　万　仟　佰　拾　元　角　分￥ | | | | | | |

地址：福州水产批发市场2#34-35
电话：0591-83929820　　83658688
发货单位：　　　送货：　　　收货：　　　制单人：

福州明源食品批发商行

## 商品调拨单 0000527

单位名称：                              年    月    日

| 名　　称 | 规格 | 单位 | 数　量 | 单价 | 金　额 | 备注 |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
| 合　计 | 拾　万　仟　佰　拾　元　角　分￥ | | | | | |

①欠款(自)　②客户(红)　③会计(兰)　④库存(绿)

地址：福州水产批发市场2#34-35
电话：0591-83929820    83658688
发货单位：        送货：        收货：        制单人：

福州明源食品批发商行

# 商品调拨单 0000527

单位名称：　　　　　　　　　　　　　年　　月　　日

| 名　　称 | 规　格 | 单位 | 数　量 | 单价 | 金　额 | 备注 |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| 合　计 | 拾　万　仟　佰　拾　元　角　分￥ |
|---|---|

① 欠款(白)

② 客户(红)

③ 会计(兰)

④ 库存(绿)

地址：福州水产批发市场2#34-35
电话：0591-83929820　　83658688
发货单位：　　　送货：　　收货：　　制单人：

福州明源食品批发商行

## 商品调拨单　0000527

年　　月　　日

单位名称：

| 名　　称 | 规　格 | 单位 | 数　量 | 单价 | 金　额 | 备注 | |
|---|---|---|---|---|---|---|---|
| | | | | | | | ①欠款(白) |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | ②客户(红) |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | ③会计(黄) |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | ④库存(绿) |
| | | | | | | | |
| | | | | | | | |

| 合　计 | 拾　万　仟　佰　拾　元　角　分￥ |
|---|---|

地址：福州水产批发市场2#34-35
电话：0591-83929820　　83658688
发货单位：　　　送货：　　　收货：　　　制单人：



GOVERNMENT
EXHIBIT
672
S2 12 Cr. 934 (RA)



GOVERNMENT
EXHIBIT
673
S2 12 Cr. 934 (RA)



Jiang Jin Ming Tx paroled 12075

File    Edit    View    Favorites    Tools    Help

Back  •          Search      Folders

Address   F:\CASE\J\Jiang\Jiang Jin Ming Tx paroled 12075

**File and Folder Tasks**

- Rename this file
- Move this file
- Copy this file
- Publish this file to the Web
- E-mail this file
- Print this file
- Delete this file

**Other Places**

- Jiang
- My Documents
- My Computer
- ork Places

AAAHousehold Register Changle
Attesting letter from Chen Ke Qian
Attesting letter from Chen Ke Qian Reviewed by Robert
Attesting letter from Li Xiu Wu
Attesting letter from Li Xiu Wu Reviewed by Robert
Attesting letter from Ou Yun Jiao
Attesting letter from Ou Yun Jiao Reviewed by Robert
EMS Tom
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW Detailed
I-589 Christian
MOTION TO CHANGE VENUE
Resident ID chen ke qian
Resident ID jiang jin ming
Resident ID li ji wu
Resident ID ou yun jiao
Statement
Statement Reviewed by Robert
I-765 C8

GOVERNMENT
EXHIBIT
674
S2 12 Cr. 934 (RA)



**I-765 (A5&C8) (Application For employment Authorization)**

File    Edit    View    Favorites    Tools    Help

Back  ▼    🔍 Search    📁 Folders    ▦ ▼

Address  📁 F:\We Check Here Please\Anna\I-765 (A5&C8) (Application For employment Authorization)

**File and Folder Tasks** ☆

- 📄 Rename this file
- 📁 Move this file
- 📄 Copy this file
- 🌐 Publish this file to the Web
- ✉ E-mail this file
- 🖨 Print this file
- ✖ Delete this file

**Other Places** ☆

- 📁 Anna
- 📁 My Documents

📄 I-765 A5
📄 I-765 A5 Derivative
📄 I-765 A10
📄 I-765 A10 Renewal
📄 I-765 C8
📄 I-765 C18

GOVERNMENT
EXHIBIT
675
S2 12 Cr. 934 (RA)



GOVERNMENT
EXHIBIT
676
S2 12 Cr. 934 (RA)



GOVERNMENT
EXHIBIT
698
S2 12 Cr. 934 (RA)



GOVERNMENT
EXHIBIT
699
S2 12 Cr. 934 (RA)



DHS
Office of Chief Counsel
P. O. Box 1939
San Antonio, TX 78297-1939

To:  Immigration Court
Clifford B. Davis Federal Bldg.
167 North Main St., Room 460
Memphis, TN 38103

To:  USICE District Counsel
Clifford B. Davis Federal Bldg.
167 North Main St., Room 1036
Memphis, TN 38103

To:  Immigration Court
1901 S. Bell Street, Suite 200
Arlington, VA 22202

To:  USICE District Counsel
1901 S. Bell Street, 9th Floor
Arlington, VA 22202

**** By UPS or FedEx ****

Vermont Service Center
75 Lower Welden Street
St. Albans, VT 05479-0001

** upgrade Category to F1 family
base**
To: Vermont Service Center
P. O. Box 9130
St. Albans, VT 05479-9130

To: Premium Processing
Vermont Service Center
30 Houghton Street
St. Albans, VT 05478-2399

To: Quincy Shang
3147 Shallowford Rd
Atlanta,   GA 30341

SONY

GOVERNMENT
EXHIBIT
700
S2 12 Cr. 934 (RA)



Microsoft Excel - 12-17-12 week.xls

| Index | LastName | FirstName | ANumber | HType | HDate | Time | JudgeName |
|-------|----------|-----------|---------|-------|-------|------|-----------|
| 10552 | Wang | Lei | 201-118-025 | IJDecision | 05/30/13 | 11:00 | Gordon |
| 12288 | Lian | Hong Fei | 205-621-479 | Master | 01/25/13 | 08:30 | Nelson |
| 12325 | Zhu | Yan Juan | 205-621-480 | Master | 01/29/13 | 09:00 | VanWyke |
| 12255 | Liu | Xin | 205-612-582 | Individual | 03/18/15 | 09:00 | Bain |

GOVERNMENT
EXHIBIT
701
S2 12 Cr. 934 (RA)



GOVERNMENT
EXHIBIT
702
S2 12 Cr. 934 (RA)



**U.S. Citizenship and Immigration Services**

Home | Español | Site Ma

Search

FORMS

- Check My Case Stat
- Sign-in to My Accoun
- Sign-up for Case Up
- Check Processing T
- Change Of Address
- e-Request
- Office Locator

**Microsoft Access - [Clients : Database]**

File  Edit  View  Insert  Tools  Window  Help  Adobe PDF

Open  Design  New  ✕

Objects

- Tables
- Queries
- Forms
- Reports
- Pages
- Macros

Create form in Design view
Create form by using wizard
Active
All Clients
Closed

Groups

Favorites

Ready

GOVERNMENT
EXHIBIT
703
S2 12 Cr. 934 (RA)



GOVERNMENT
EXHIBIT
677
S2 12 Cr. 934 (RA)



| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 1 | Statement | | | | | | |
| 2 | ID | check | | | | | |
| 3 | Notarial Birth Certificate | here | | | | | |
| 4 | Household Registration Booklet | here | | | | | |
| 5 | Attesting letter from family | here | | | | | |
| 6 | Attesting letter from friend | | | | | | |
| 7 | Mailing label | | | | | | |
| 8 | Passport copy | | | | | | |
| 9 | Marriage certificate | here | | | | | |
| 10 | Husband's ID copy | here | | | | | |
| 11 | Husband's Household Registration Booklet copy | here | | | | | |
| 12 | Husband's Notarial birth Certificate | | | | | | |
| 13 | | | | | | | |
| 14 | | | | | | | |
| 15 | | | | | | | |
| 16 | | | | | | | |
| 17 | Left China on 05/05/2012 | can submit any time | | | | | |
| 18 | Arrived on the second day 05/06/2012 | | | | | | |

GOVERNMENT
EXHIBIT
678
S2 12 Cr. 934 (RA)



GOVERNMENT
EXHIBIT
679
S2 12 Cr. 934 (RA)



GOVERNMENT
EXHIBIT
680
S2 12 Cr. 934 (RA)



GOVERNMENT
EXHIBIT
681
S2 12 Cr. 934 (RA)

FD-302a (Rev. 05-08-10)

281E-NY-302120-302

Continuation of FD-302 of  Proffer of Mengfei YU                              , On  03/02/2012 , Page  2 of 6

never knew that the Chinese government persecuted its people to the
extent that LIU described to her.

YU started preparing for political asylum applications after
working in LIU's firm for two weeks. YU's job was to help the
clients prepare their asylum applications by writing up their
stories or statements based on the claims they chose. YU stated that
the stories were never longer than two pages. YU emphasized that she
was never involved in the discussions for claims since YU was told
the firm's policy did not allow her to participate in the initial
interview of a client. In fact, only LIU and her husband, "David,"
could conduct the initial interviews.

During the initial interview, the client would fill out a
one-page intake form, which contains questions concerning the
client's name, age, parents, passport information, religion
affiliation, addresses/contact information in the U.S. and China,
and persecution. On some occasions, YU could overhear the client
asking David which persecution claim was better. By the time that YU
got the client's intake form from David, the client already had a
claim.

YU's role was to "improve" the client's story based on the chosen
claim so it could increase the client's chance of getting the case
approved by the Asylum Office. Sometimes LIU and "David" would
simply tell a client's claim directly and then YU would write it. YU
estimated that she added additional information, such as persecution
details, to 90 percent of the cases she got. For example, when YU
wrote "beating," LIU instructed YU that she needed to write more
than just "beating." Every time YU submitted a client's story to
LIU, LIU would revise everything YU wrote without consulting the
facts with YU or verifying the client's case file. YU noticed the
things that LIU wrote were not what the client had told her. Through
her conversations with clients, YU also knew in her heart that most
of them had been in the U.S. longer than the one year limit set by
the Asylum Office for eligibility. The clients all wrote down they
had been in the U.S. for less than a year.

**Change of Firm's Name and Policy in Early 2009**

Sometime in early 2009, Feng LI (also known as "Brandon"), one of
the attorneys working at LIU's firm at the time, told "Harry"
(Fengling's brother) in front of YU and the other two paralegals
that a Boston law firm's employees were arrested for filing false
political asylum applications. YU later Googled the incident on the

FD-302a (Rev. 05-08-10)

281E-NY-302120-302

Continuation of FD-302 of  Meeting with Mengfei YU                    , On  10/24/2012  , Page  2 of 6

Photo #6: YU did not know the person.

Photo #7: YU identified the subject as **"Bruce LEE,"** an interpreter
in the Asylum Office. LEE did a few cases for Fengling LIU. Victor
told YU that LIU disliked LEE because LEE was not trustworthy. YU
had seen LEE a few times when LEE went to LIU's office to pick up
his bonuses. LEE had a group lunch with YU, Victor and a freelance
translator named "Adriana" once.

Photo #8: YU recognized the person as **Victor**, her former coworker at
Fengling LIU's office.

Photo #9: YU did not know the person.

Photo #10: YU met the woman in the photo in April or May 2012 at a
birth celebration party for Victor's daughter in Flushing, New York.
The woman told YU that she used to work as a paralegal for an
immigration attorney named WANG. The woman claimed that WANG allowed
her to make up clients' medical records based on the stories she
made up for them. The woman currently works in an immigration office
on East Broadway in Manhattan's Chinatown.

Photo #11: YU did not know the person.

Photo #12: YU identified the person as David MIAO, Fengling LIU's
husband and manager at LIU's firm. MIAO has no legal background and
he is the person who screens new clients. MIAO would typically spend
10 to 20 minutes to interview a new client, trying to ascertain the
client's passport status/entry time rather than whether or how the
client was persecuted. After the interview, MIAO would tell YU what
type of claim the client would be using. YU knew the majority of the
claims was all fraudulent. MIAO never gave YU or others advice how
to write a story. He would refer them to Fengling LIU.

Photo #13: YU identified the person as **Attorney WANG** (YU pronounced
"WONG" in Chinese). YU often ran into WANG in U.S. Immigration Court
hallways while YU was working as an attorney at Fengling LIU's firm.
WANG approached YU once, asking about YU's pay and case load at
LIU's office. According to YU's former colleague (either Feng LI or
Victor), WANG is very greedy. Before having his own firm, WANG would
tell potential clients that he could solve their problems if they
paid him money. He also claimed that he has a lot of connections to
various asylum service firms.

Photo #14: YU recognized the person as **Pastor Qibi SHE**. YU believed

(11)

the writing. Fenglin is a very
aggressive woman; Yu wasn't in
a position to confront her boss.
The firm never helped clients
prepare documents/ certificates
They would tell clients which
branch of the Chinese Gov't they
could get the regid documents.
They would never change the
statements to accommodate
the evidence the clients
produced. She is not aware
the firm would direct clients
to where to get false evidence
for the application.
1 Case she knew: a girl who
got abortion in real life was forced
by Fenglin to do Christianity
later. Yu knew the girl
was not a Christian during the state

| **NAME** | **ENGLISH TRANSLATION** |
|----------|-------------------------|
| | happened to that witness who appeared in court? |
| VICTOR: | [Clears throat] He/she him/herself got the legal status through political… political asylum that year. |
| CI: | Ah hah. |
| VICTOR: | Then he/she had [U/I] then the government said [U/I] and such and such. Then his/her green card was revoked. |
| CI: | You mean that witness's was revoked? |
| VICTOR: | Right. Because he/she got the political asylum, then went back to the country (China). So we now basically rarely use witnesses. |
| CI: | So how do you collect the evidence? You can't use the hotel receipts each time, and the Mainland… the air tickets from Fuzhou to America. |
| VICTOR: | That will be up to the individual… individual's capability. If they can [U/I], then we submit for them. |
| CI: | Oh, understand. Not responsible, ah. |
| VICTOR: | How can we help them with this kind of thing? Right? If they can [U/I], as long as the dates match and no big problem, then we submit for them. |
| CI: | Last time that… do you know Diana [ph], that girl, the Fuzhounese interpreter. |
| VICTOR: | Ah. |
| CI: | Last time, she helped you for more than half a year. Asked people to |

United States v. Liying Lin                                                   CD 7. Park_003

| | |
|---|---|
| | met his former boss.  His former boss offered him a big position. |
| Vanessa Bandrich | Oh, that's good. |
| Meng Fei Yu | The salary is comparable here. And it is a big company. Here the company only has 5 employees. It is really small. And his boss is also very nice to me. So, why not… |
| Vanessa Bandrich | Yea, oh…I just feel bad |
| Meng Fei Yu | Don't worry, we can come back to visit.  It is very easy to travel. |
| Vanessa Bandrich | Do you have any other requirements? Do you have to come back at a certain time or? You are going to be out of the country for how long? |
| Meng Fei Yu | No, you just apply for a visa, a visitor visa. |
| Vanessa Bandrich | Why, then you are going to give up your H1B or whatever? |
| Meng Fei Yu | When I quit the job, my H1B is suspended. |
| Vanessa Bandrich | So what do you have now? |
| Meng Fei Yu | Xiaofei has H1B, so we don't worry about it. |
| Vanessa Bandrich | Oh, that's right. |
| *Meng Fei Yu* | I just head a funny story yesterday.  Karen fired Shu. |
| *Vanessa Bandrich* | Sorry? |
| *Meng Fei Yu* | Karen fired Shu. |
| *Vanessa Bandrich* | Who's Karen? |
| *Meng Fei Yu* | Ms. Liu |
| *Vanessa Bandrich* | Oh, she fired Shu? |
| *Meng Fei Yu* | You don't know that? |

4

| | |
|---|---|
| *Vanessa Bandrich* | Wasn't she? I don't know |
| | |
| *Meng Fei Yu* | I heard that the female attorney is better than the male. |
| | |
| *Vanessa Bandrich* | I have no idea. |
| | |
| *Meng Fei Yu* | Both of them would always spend 3 hours to prepare one client. Wenting is so exhausted to help them. |
| | |
| *Vanessa Bandrich* | Oh, well. At least they are doing a good job… It took me long. |
| | |
| *Meng Fei Yu* | Really? |
| | |
| *Vanessa Bandrich* | If you want to do it right, it is going to take a long time. |
| | |
| *Meng Fei Yu* | They just started, have no common sense.  They don't know what they are doing right now. So they spend more time the you |
| | |
| *Vanessa Bandrich* | So they are nice, or not? |
| | |
| *Meng Fei Yu* | Er…I just encountered the female one.  She is OK, she is nice.  Maybe she was in bad mood the other day when you called her. |
| | |
| | [Silence] |
| | |
| *Meng Fei Yu* | Have you seen Ms. Liu very often? |
| | |
| *Vanessa Bandrich* | I haven't. |
| | |
| *Meng Fei Yu* | Never? Why? |
| | |
| *Vanessa Bandrich* | [UI] one time after I gave birth.  Once time only. [UI] never at the office. I mean I might.  You know Harry [PH] is having a really hard time at the office. [UI, laugh] Because you know his family [PH] [UI] seems really mean to him. |
| | |
| *Meng Fei Yu* | They shouldn't be mean to Harry?  Why? Harry is close to Lucy. |
| | |
| *Vanessa Bandrich* | It has nothing to do with the job.  [UI] Sometimes being mean to the clients to get them back off after realizing that what's |

FD-302a (Rev. 05-08-10)

281E-NY-302120-302

Continuation of FD-302 of  Proffer of Mengfei YU                    , On  03/02/2012 , Page  3 of 6

Internet and found LI's information to be correct. LI was very
worried that the same thing would also happen to LIU's firm. After
hearing about the Boston incident, "Harry" became very concerned and
said, "I will talk to Fengling LIU." LI advised "Harry" that he
("Harry") must stop doing certain things from now on. In the
meantime, YU and the other two paralegals were all fearful of their
own future: "Victor" (Tianlong YOU) wanted to obtain a permanent
residency ("green card") in the U.S., "Betty" (Beibei XU) wanted to
return to China, and YU wanted LIU to sponsor her a H1B visa.

YU did not know exactly when LIU changed her firm's name from
"Fengling LIU Attorney At Law" to "Moslemi & Associates." By the
time that YU returned to the office in March 2009 from one month of
leave, the firm had a new name and a new policy for processing
political asylum applications. Under the new policy, the clients
must write their own statements first and then the paralegals would
revise them. The only exception would be if the clients were
illiterate. Both "Harry" and Fengling LIU instructed the paralegals
to give the firm's "writing samples" to clients in order to help
them write their stories. According to YU, "Harry" was the one who
drafted the various "writing samples" and was very proud of his
work.

LIU trained the paralegals about her firm's new policy procedure
either by oral instructions or in Word Perfect documents. After the
firm's name change, LIU stopped coming to the office on a regular
basis. Her claim was that she wanted to spend more time with her
family. As a result, LIU delegated the "story review" responsibility
to 1)Feng LI, 2)her brother "Harry," and 3) her sister "Lucy," in
that order. LIU also stopped signing all political asylum
applications.

Even though the firm's name was changed and LIU was no longer
reviewing her clients' persecution stories and signing their
applications, LIU is still the owner of her firm and she does not
like outsiders know about this. YU knew about this fact because Troy
Moslemi, the attorney whose name is being used as LIU's law firm
title, told everyone that he was by no means in charge of the
office. Therefore, he was not the "go-to" person for any
decision-making issues. After his wife stopped coming to the office,
"David" took on the office manager position. YU, however, had seen
"David" call LIU directly for help if he could not answer a
question.

**File Cleaning**

Ashley                                6/20/13

①

Fraud Cases:

Individual Cases. - needs to have specific evidence.

Document fraud - Can table/pull the case out of process

Can't just pull out the case because of similar
cases/situations. (b/c ① it could be a country's
sys so it's expected to be the same/similar)

② b/c only the case officer can only see his/
her own cases. Because of the deadline,
                                  strict

    they don't get to compare all their cases.
         min
    (60 days to give final decisions. by the
    time her office receives the appe, there'll
    be only about 15~18 days left.)

    "Fraud Hold" - She would be alerted +
    could make a copy of the case for
    further testing. (e.g. fraudulent
    passport ⇒ foreign gov't ⇒ can't do so w/o
    ⊗ appl's ⊗ consent.)

    (D.C.) examination lab - asylum cases are
Document fraud            the last priority.

        ⊗ Then give it to an ICE attorney to
        take a look.

3504-2



**From**: Caudill-Mirillo, Ashley B [mailto:Ashley.Caudill-Mirillo@uscis.dhs.gov]
**Sent**: Tuesday, February 11, 2014 07:52 AM
**To**: Blais, Brian (USANYS)
**Subject**: RE:

Good Morning,

Just to confirm, in addition to Ms. Chen, you mentioned three other persons testifying for the prosecution that I may be asked to testify as to their application status.  Can you confirm for me who the other three are?

I have reached out to my HQ regarding this request because we are generally prohibited from speaking about an individual's asylum case due to laws surrounding asylum confidentiality.  We are not even generally permitted to confirm the existence of such applications.  This prohibited one of our officers in the past from testifying in a criminal murder prosecution where the applicant admitted their involvement to the officer in the crime during their asylum interview.  I have contacted our HQ so they can determine whether there is any way we can work around it.  I assume that none of these persons have signed a waiver of confidentiality with our office in the past.  If they would be willing to do so, that may be one way to remedy the matter.  I am trying to get more guidance on this before tomorrow's meeting.

Thanks,
Ashley

Ashley B. Caudill-Mirillo
Deputy Director

DHS/USCIS
New York Asylum Office
One Cross Island Plaza, Third Floor
Rosedale, New York 11422

3504-8

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services



# CONFIDENTIALITY WAIVER

The confidentiality of information contained in or pertaining to asylum applications is protected by regulation at 8 C.F.R. § 208.6. However, I consent to the disclosure of information contained or pertaining to my asylum application in the trial of XXX including to: the federal district court judge; all federal district court personnel; the assistant U.S. attorney and any other personnel from the U.S. attorney's office; the defense attorney and any other personnel from the defense attorneys' office; anyone else present in the court room or reading the courtroom transcript. The Asylum Office assigned to my case may release information regarding my case with the testimony of the New York Asylum Office's Deputy Director.

I understand that I am not required to agree to this waiver and that I do so voluntarily.

Today's Date: _____

Last Name: _____      First Name: _____

Address: _____      A-Number: _____

_____      Date of Birth: _____

Phone Number: _____      Email address (if available): _____

**Signature of Applicant:** _____

---

## TO BE COMPLETED BY THE INTERPRETER

The contents of this form were read and explained to the applicant in the _____ language.

Interpreter's Name (print): _____

I, _____, certify that I am fluent in both the _____ and English languages. I interpreted the above information completely and accurately to the applicant.

**Signature of Interpreter:** _____      Today's Date: _____

                                                              78
        E2h1lin2                    Caudill-Mirillo - direct

1            MR. BLAIS:  Your Honor, the government offers
2    Government Exhibits 301, 302, and 303.
3            THE COURT:  Government Exhibits 301, 302, and 303 are
4    admitted in evidence.
5            (Government's Exhibits 301, 302, and 303 received in
6    evidence)
7            MR. BLAIS:  Ms. Chace, could you please publish just
8    the first page of Government Exhibit 301.
9    Q.  Ms. Caudill-Mirillo, again, what is Government Exhibit 301?
10   A.  This is the completed asylum application of an individual
11   named Dai Nian.
12   Q.  And what is the status of Dai Nian's asylum application?
13   A.  This individual was -- their application was not granted by
14   our office.  It was referred to the immigration court.  When it
15   was discovered that there was some fraud potentially associated
16   with this application, we requested the file back to review as
17   part of a fraud review, of several cases associated with this
18   case.
19           MR. BLAIS:  Now, Ms. Chace, could you publish
20   Government Exhibit 302.
21   Q.  And again, Ms. Caudill-Mirillo, what is Government
22   Exhibit 302?
23   A.  This is the asylum application of Tao Bai.
24   Q.  And what is the status of Tao Bai's asylum application?
25   A.  Similarly, this individual was not granted asylum by our

E2h1lin2                      Caudill-Mirillo - direct

1  office and was referred to the immigration court.  It is my
2  understanding from reviewing government records that they are
3  still in removal proceedings with the immigration court.  We
4  are reviewing this file also along with our fraud review.
5          MR. BLAIS:  And finally, Ms. Chace, if you could
6  publish Government Exhibit 303.
7  Q.  Ms. Caudill-Mirillo, what is Government Exhibit 303?
8  A.  This is the asylum application of an individual named
9  Zhenyi Li.
10 Q.  And what is the status of Zhenyi Li's asylum application?
11 A.  This application was initially granted by our office.  When
12 we later learned that there was fraud associated with this
13 application, we have recalled the file as part of our fraud
14 review.
15 Q.  Okay.  Are you sure that that's the case with Ms. Zhenyi
16 Li's asylum application?
17 A.  I -- yes, I believe so, yes.
18 Q.  Now have you also reviewed the status of an asylum
19 application for an individual named Lin Chen?
20 A.  Yes, I have.
21 Q.  What is the status of her asylum application?
22 A.  That individual was referred to the immigration court by
23 our office.  The case was not granted.  We determined --
24 discovered that there was mandatory paperwork missing from that
25 file so we requested the file back from the immigration court

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

80

E2h1lin2                          Caudill-Mirillo - direct

1    so that we could complete the record.  At that time we learned

2    again of the fraud associated with the application and it is on

3    a fraud hold.

4    Q.  Okay.  Now I've also placed before you what have been

5    marked for identification as Government Exhibits 304 and 305.

6    Do you recognize these?

7    A.  Yes, these are, again --

8              THE COURT:  I'm sorry.  What is the relevance of Lin

9    Chen to 301, 302, or 303?

10             MR. BLAIS:  There's no -- she's not connected to

11   those.

12             THE COURT:  That's separate and apart.

13             MR. BLAIS:  Separate and apart, correct.

14             THE COURT:  And the same is true of 304, 305?

15             MR. BLAIS:  304 and 305, they have a relationship

16   which we'll explore in a moment.

17             THE COURT:  Okay.

18   BY MR. BLAIS:

19   Q.  Again, what are Government Exhibits 304 and 305?

20   A.  These are completed applicant and interpreter oath forms.

21   Q.  For which applicant?

22   A.  One is for Dai Nian; the other one is for Tao Bai.

23   Q.  Do these exhibits contain records that are maintained by

24   your office?

25   A.  Yes, they do.

FD-302 (Rev. 10-6-95)

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**

Date of
transcription

Investigation on                              at
File #                                                    Date dictated
by
This document contains neither recommendations nor conclusions of the FBI.  It is the property of the FBI and is loaned to
your agency;
it and its contents are not to be distributed outside your agency.

10/14/2009

      Lin CHEN, Date of Birth 11/03/1977, Chinese Passport Number
G20818277, telephone number 646-420-2148, was interviewed at the New
York Asylum Office located at One Cross Island Plaza, Rosedale, New
York, 11422.   The interview was conducted in the Chinese language with
the assistance of FBI Linguist Li Zhang. After being advised of the
identity of the interviewing agent and the nature of the interview,
CHEN provided the following information:

      CHEN, who is from the People's Republic of China ("PRC")
entered the United States illegally in March 2009.   In the PRC, a
relative referred CHEN to an alien smuggler ("Snakehead") to arrange
for CHEN to be smuggled into the United States.

      On 09/18/2008, CHEN started her journey by traveling from
Fujian, PRC to Hong Kong with eight other travelers.  On 09/19/2008,
CHEN flew from Hong Kong to Equador with the same eight other travelers.
 In February, 2009, CHEN flew from Equador to Haiti with three different
travelers.   On 02/28/2009, CHEN flew from Haiti to the Bahamas with
thirteen other travelers.   From the Bahamas, CHEN was taken by
speedboat, operated by two black men, to a small abandoned island.
This island had no inhabitants, no houses and no trees (only shrubs).
 The speedboat trip took approximately five hours.   Once on the island,
CHEN and the others were led on a 20 minute run across the island.
Waiting on the other side of the island, was a white boat that had two
small rooms below deck.   CHEN and twenty-nine other travelers were
crammed inside these rooms.   Two day later, the boat arrived at a private
mansion by the beach.   After dark, they were taken off the boat and
went inside the private house.   Later, a large motor home (Recreational
Vehicle type vehicle) took all of them to a hotel, where they stayed
for two nights.   CHEN and a few others were taken to the hotel where
she took a flight to New York.   CHEN used her genuine Chinese passport
to travel on each of her flights.

      In New York, CHEN hired a Chinese man known to CHEN as
"Attorney Wang" (hereafter "WANG").   CHEN does not know if WANG really
is a lawyer, but he has an office with several workers.

      In April 2009, CHEN went to WANG's office.   WANG looked CHEN's
passport.   He told CHEN, "you're a girl, we will probably use family
planning for your asylum application."

      10/02/2009       Queens, New York

281E-NY-302120

SA Daniel Park

3502-09

FD-302a (Rev. 10-6-95)

302a-NY-302120

Continuation of FD-302 of     Lin Chen                           10/02/2009           2
On
, Page

      Two weeks later, CHEN returned to WANG's office.  There one of WANG's assistant asked CHEN a few questions about her background and the route that CHEN took from the PRC to the United States.  Then the assistant gave CHEN "her story".  CHEN had never seen the story before.  CHEN was instructed to copy the story in her own handwriting in the Chinese language.  The only part of the story that was true were the details of CHEN's identity, the route that CHEN took from PRC to the United States, and some of her background information.

      Contrary to the story in CHEN's asylum application, CHEN never worked in a stone factory (she was a teacher in the PRC); CHEN was never pregnant, never paid a penalty for becoming pregnant, and was never forced by the Chinese authorities to have an abortion.  At the direction of WANG, CHEN contacted her family in the PRC to buy a receipt for payment of a pregnancy penalty and dismissal notice from the Stone Company firing CHEN.  These "genuine" documents can be bought from the real government agency and the real Stone Company, for the right price.

      CHEN was instructed to memorize the story.  Later, WANG called CHEN into his office to prepare CHEN for her interview with the Asylum Office.  They told her the questions that the U.S. Asylum Officer would ask her and told her what her answers should be.

      WANG arranged for a translator to assist CHEN at her asylum interview.  The translator also prepared CHEN for the interview.

      CHEN has family living at 43-77 165th Street, Flushing NY 11358.  CHEN lives and work at a restaurant located in Virginia Beach, Virginia.

UNCLASSIFIED

| FD-1023 | **FEDERAL BUREAU OF INVESTIGATION** |
|---|---|
| (07/24/2010) | CHS REPORTING DOCUMENT |

### HEADER

Source ID: **S-00034808**

Date: **06/13/2012**

Case Agent Name: **Shen,Melody**

Field Office/Division: **New York**

Squad: **C6**

Date of Contact: **06/11/2012**

List all present including yourself. (Do not include the CHS.): SA Melody Shen, SA Christopher DeGraff, SA Daniel Park

Type of Contact: **Telephonic**

Date of Report: **06/13/2012**

Substantive Case File Number: **281E-NY-302120-A**

Source Reporting:

On 6/11/2012, CHS reported that Lilian MIAO of Moslemi & Associates agreed to set up an appointment for CHS to meet with Feng Ling LIU on 6/21/2012 to discuss the status of CHS's asylum application. CHS informed Lilian that she received a phone call from the asylum officer who interviewed her in February 2012 for her asylum request. The officer stated that he needed to discuss certain things in her application and asked her to report to the Asylum Office in Rosdale, NY on 6/22/2012.

CHS demanded that she wanted to talk to Feng Ling LIU, owner of Moslemi & Associates. Lilian asked the CHS to call on this coming Sunday, 6/17/2012, to confirm the appointment and to bring the case documents with her for the appointment on 6/21/2012.

Signed by:

⚖ Click here to sign this section

✉ **Signed by MSHEN**    View details
on Wednesday, June 13, 2012 3:14 PM (Eastern Daylight Time)

| **FD-1023** (07/24/2010) | FEDERAL BUREAU OF INVESTIGATION |
|---|---|

| Lilian Miao: | With a palm branch… in his hand...  he's riding a donkey. | 棕榈枝 [PH] 手里拿的是棕榈枝[PH]，骑得是驴。 |
| Unidentified Male 1: | Oh | 啊 |
| Lilian Miao: | Palm branches | 棕榈枝[PH] |
| Unidentified Male 1: | Palm branch…[PH]? | [棕榈枝 PH]? |
| Lilian Miao: | Palm branch… [PH] | [棕榈枝 PH] |
| Unidentified Male 1: | How to write the 2nd character for it  [PH]? | 哪个[榈吕 PH]? |
| Lilian Miao: | How to write it…. It's the one of the character "lv" with the part for "wood" on the left. | 哪个[榈 PH]，就是吕洞宾的吕，再加个木字旁。 |
| Unidentified Male 1: | Oh. | 哦。 |
| Lilian Miao: | Yeah, palm branch [PH]. | 嗯，[棕榈枝 PH]。 |
| Lin Chen: | So, that lawyer, LIU Fengling, is she in? | 那、那[刘枫凌 PH]律师在不在啊？ |
| Lilian Miao: | Attorney Liu is not in  today. How can I help you? [SC] [UI] | [刘枫凌 PH]律师今天没在这里。你有什么事情，[SC] [UI]。 |
| Lin Chen: | [SC] Nothing, nothing. It's just that, it's just that she is quite well-known, right? | [SC] 没有，没有。我是，就是他名气不是，是很大？ |
| Lilian Miao: | Oh, yes, yes. | 嗯，对对。 |
| Lin Chen: | My friend is very [UI], my friend… | 朋友很[UI]，我的朋友就 |
| Lilian Miao: | You came over here because your friend referred you, is that correct? | 你是朋友介绍过来的，对不对？ |
| Lin Chen: | Yes, he said that this LIU Fengling is quite something. | 嗯，他就说这[刘枫凌 PH]很厉害。 |
| Lilian Miao: | Please, sit, Zhou Wenkai. | 坐吧，[周文凯 PH]。 |
| Unidentified Male 1: | The money, I've brought the money… | 钱、钱拿过 |
| Lilian Miao: | So you've brought the money. Sit down. Who'd ask you to sit down without money? [laughing noise] You've brought the money here. I'm not that nice. | 钱拿过来，钱拿过来坐。不拿钱让你坐啊？[笑声] 钱拿过来，没那么好啊。 |
| Unidentified Male 1: | What about that thing? | 那个东西呢？ |
| Lilian Miao: | What? | 什么呀？ |
| Unidentified Male 1: | That thing. | 那东西呀。 |
| Lilian Miao: | What, the evidence? | 什么证据啊？ |

3

| | individual hearing? Just go ahead and tell me, oh, just a second, [Taoshu PH], Taoshu, Pick up the West Line, please. | 啊，陶书[PH]、陶书，西线你接一下 |
|---|---|---|
| | | |
| *Lin Chen* | Is Attorney Liu in today? | 今天刘律师不在？ |
| | | |
| *Lilian Miao* | Attorney Liu is not in. She came this morning and left at past 2 o'clock. | 刘律师不在这里，他今天上午过来了，两点多走的 |
| | | |
| *Lin Chen* | She just left? I talked with you last time. I consulted and plan to do the type of case for 13,000 yuan. | 刚走的？我上次有跟你说过了，我商量了一下，就打算做1万3这种的。 |
| | | |
| *Unidentified Male 2* | … [UI] | ….[UI] |
| | | |
| *Lilian Miao* | Yes, OK. Hello. Do you have anything that I can help you with? Attorney Liu is not in today. Attorney Liu left past 2 o'clock… It is hard to say, sometimes it's Monday, sometimes Thursday. It's Friday today and she came over. If you need help, you mind telling me? | 可以啊，行啊。喂，你有什么事我可以帮你？刘律师今天不在这里。刘律师两点多走的…说不准啦，有时候是星期一，有时候是星期四，今天是星期五过来了，你有什么事可以跟我说吗？ |
| | | |
| *Unidentified Male 2* | … [UI] | ….[UI] |
| | | |
| *Lilian Miao* | Uh huh, she might come in during the day. She sometimes comes on Friday, sometimes on Thursday, sometimes on Monday. There is no set time. Do you have anything you need to talk to her in person? | 嗯哼，他中间都有会过来，他有时候星期五过来，有时候星期四过来，有时候是星期一过来，没有准确的时间。你要亲自跟他谈有些事情吗？ |
| | | |
| *Unidentified Male 2* | ….[UI] | ….[UI] |
| | | |
| *Lilian Miao* | Or you can call every day and check. She doesn't come at any certain time, and doesn't tell us. Mm, yes, usually | 要不然你每天打电话来问一下也行，他没有确定的时间的，也没跟我们说，嗯，是，一般都是差不多11点到两点之间、 |

3

| | | |
|---|---|---|
| | you gave me a person from Luoyang, Henan province. He was the one who took me there. | 一个河南洛阳的人，就是他带我去的。 |
| *Lilian Miao:* | Because at that time we did not know that your original copies were taken away. We need to see if there is indeed any problem with the original copies. Do you need to have another interview again? In case there are any issues with evidence, we will not venture to let you have another interview. | 因为当时我们也不知道你的原件被收走，我们要看看原件到底有没有问题，要不要再去问话？万一你的证据什么的看出问题的话，我们就不敢让你再去问话。 |
| *Lin Chen:* | If this is the case, let me take a look at the content of the phone call from the other day. | 那先把我那天电话的内容先给我看看吧！ |
| *Lilian Miao:* | All right! Wait for him in the living room for a while then! | 行吧！那你去客厅等他一下！ |
| *Lin Chen:* | Is David an attorney? | 那David他是律师吗？ |
| *Lilian Miao:* | Not much difference! | 差不多啊！ |
| *Lin Chen:* | What do you mean not much difference? Is he an attorney? | 什么差不多？是律师吗？ |
| *Lilian Miao:* | He is an attorney's assistant. | 律师助理。 |
| *Lin Chen:* | He is an attorney's assistant, uh huh! | 是律师助理啊！ |
| *Lilian Miao:* | Yes! An attorney's assistant is not that much different from an attorney. | 是啊！律师助理跟律师也没差多少啊！ |
| *Lin Chen:* | Then, is Liu Fenling [PH] an attorney? | 那刘枫凌【PH】是律师吗？ |
| *Lilian Miao:* | She is an attorney. | 她是律师。 |

| Lin Chen: | Then I still need to see attorney Liu.  Let me wait outside then!  [gets up to go outside, waiting for the attorney to come.] | 那我还是得见到刘律师。那我还是到外面等她吧！【起身到外面等待律师到来】 |
|---|---|---|
| Lilian Miao: | All right then.  You can wait for her outside! | 好，那你到外面等她吧！ |
| Lin Chen: | Hello!  May I ask if you are David? | 你好！请问你是David吗？ |
| David (Yuchang) Miao: | Yes.  I am. | 是，我是。 |
| Lin Chen: | I called you already. | 我给你打过电话的。 |
| David (Yuchang) Miao: | Are you Chen Yanhong? | 你就是陈艳红吗？ |
| Lin Chen: | That is right, that is right.  Sorry to bother you! | 对对，不好意思啊！ |
| David (Yuchang) Miao: | Have a seat please, have a seat please! | 请坐请坐！ |
| Lin Chen: | All right. | 好。 |
| David (Yuchang) Miao: | Did you come by yourself? | 你一个人过来的吗？ |
| Lin Chen: | That is right, that is right. | 对对。 |
| David (Yuchang) Miao: | OK, then do you think that the interview itself had any problems? | OK，那个你觉得面谈本身有什么问题吗？ |
| Lin Chen: | I had an interview in March.  I had an interview… | 我是三月份面谈的啦，我面谈… |
| David (Yuchang) Miao: | [UI] I was going to get the result.  Did he say that they will mail it, is that right? | 【UI】本来是要去取结果的，他说要寄过来是不是？ |
| Lin Chen: | Yes, they will mail it over, and then I did not hear from him at all.  It has been almost four | 对，寄过来，然后都没有收到任何的消息就是啦。到现在都 |

7



GOVERNMENT
EXHIBIT
783
S2 12 Cr. 934 (RA)

FD-302 (Rev. 5-8-10)

- 1 of 4 -



**FEDERAL BUREAU OF INVESTIGATION**

Date of entry ____08/01/2012____

On May 1, 2012, Federal Bureau of Investigation (FBI) Special Agents (SA)
Christopher J. DeGraff and Melody Shen, FBI Intelligence Analyst Matthew
Johnston and Assistant United States Attorney (AUSA) Harris Fischman
proffered TIAN LONG YOU aka VICTOR YOU, date of birth, 04/10/1984, at the
Southern District of New York.  Also present was YOU's attorney, JULIA
GATTO.  A proffer agreement was signed at 10:35am.  After being advised of
the identities of the interviewing agents and the purpose of the interview,
YOU provided the following:

Names that appear in Bold Print are the names people identified by YOU are
known to the Federal Bureau of Investigation (FBI) and not necessarily the
names by which those people are known to YOU.

YOU stated that he first entered the United States in July 2005 on a F1
student visa to attend University of California-Davis.  He said that he
never intended on attending UC-Davis and instead began working in New York
City.  He said that he applied for asylum in the United States under the
family planning policy because while in China his girlfriend, now his wife,
was forced to have an abortion after she became pregnant while they were
not married.  After the abortion, they were allowed to finish school and
then they immediately left for the United States.

YOU said that he began working at a law firm owned by a British individual
located on Broadway in Manhattan.  He said that he left that firm in
September 2006 because the firm closed.  He began working at JEN IN TSOU's
real estate law firm immediately but that the firm closed in January 2007.

YOU advised that he answered an advertisement in a law journal for the LAW
FIRM OF KENNETH GILES in February 2007.  He said that he was hired by JULIE
CHEN (HONG CHE) and KENNETH GILES to work as a Chinese translator in the
office.  YOU said that the law firm handles all kinds of immigration and
asylum cases but that their main focus is on Chinese and Sri Lankan asylum
claims.  He stated that JULIE was involved in making up persecution stories
for the Chinese clients in order to improve the chance that the case will
be approved.  He said that his job was to translate documents for the
clients after JULIE finished the stories.  He said that GILES would coach
the clients as to what kind of documents they would need to produce in

Investigation on ___05/01/2012___ at   New York, New York, United States (In Person)

File # __281E-NY-302120-302__

Date drafted ___05/09/2012___

by   Christopher J. DeGraff

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

UNCLASSIFIED

| FD-1023 | FEDERAL BUREAU OF INVESTIGATION |
|---|---|
| (07/24/2010) | CHS REPORTING DOCUMENT |

**HEADER**

Source ID: **S-00043665**

Date: **02/07/2012**

Case Agent Name: **DEGRAFF,CHRISTOPHER J**

Field Office/Division: **New York**

Squad: **C6**

Date of Contact: **12/20/2011**

List all present including yourself. (Do not include the CHS): SA Christopher J. DeGraff, SA Daniel Park

Type of Contact: **In Person**

Country: **UNITED STATES**

City: **New York**

State: **New York**

Date of Report: **02/07/2012**

Substantive Case File Number: **281E-NY-302120-302**

Source Reporting:    After being advised as to the identities of the individuals present and the nature of the interview, INDIVIDUAL provided the following information:

Names that appear in Bold Print are the names people identified by INDIVIDUAL are known to the Federal Bureau of Investigation (FBI) and not necessarily the names by which those people are known to INDIVIDUAL.

Employment Background

INDIVIDUAL stated that he was born in Nan Chang city in China. He said that he grew up in China and traveled to New York city on July 18, 2005. He said that he came to the United States with a F1 Student Visa to attend school at the University of California - Davis. He said that the "snakehead" arranged for the visa and that he never had any intention of going to school in California.

INDIVIDUAL said that he began working in NY in 2006. He said that he first held a job as a salesman at a window factory on College Point Boulevard in Flushing, NY. He said that he worked there approximately three months. INDIVIDUAL said that he next worked at a glass factory in Flushing for approximately one month. INDIVIDUAL said the he next worked for PI PROPERTY MANAGEMENT COMPANY (PI) in Woodside, NY. He said that he only worked for PI for two weeks before they let him go because he did not have a valid work permit or status in the United States. He said that he next worked for a freight forwarding company near JFK airport but only worked for two weeks because the commuting from home to work took too long.

INDIVIDUAL said the he next got hired by JOSHI & ASSOCIATES, a law firm located at 225 Broadway, room 705, New York, NY. He said that the attorney that hired him was a British man who was barred to practice law in the United Stares. He said that he was hired as the firm was closing and that he transferred a lot of cases to new law firms,

**IMMIGRATION COURT  INDIVIDUAL CALENDAR ---2/26/07  8:30 am**

**Immigration Judge   Javier Balasquide**

**INDEX OF EXHIBITS  FOR** ███████████████ **nd her husband Tianlong**
                          YOU A 95579078

Exhibit A: Order  of  Immigration Judge Nelson granting Asylum to Mother of
Tianlong YOU  His mother name is LUO, Jian

Exhibit B  Order of Immigration Judge Nelson granting asylum to father of Tianlong
YOU  His father's name is YOU, Jianguo.

Exhibit C  Notarial Birth Certificate of Father –YOU, Jianguo

Exhibit D  Notorial Birth Certificiate of Mother  LUO, Jian

Exhibit E  Marriage Certificate of parents of Tianlong YOU

Exhibit F  Notorial Birth Certificate of Tianlong YOU

Exhibit G  IPsychiatric Treatment Report for Wei Zhang and Curriculum Vitae of Dr
Chen, Jianping  MD PHD

Exhibit H   Notarial Birth Certificate of Brother YOU  Tiancheng

Exhibit I  Decision granting asylum to brother YOU  Tiancheng

Exhibit J  Copies of  Visa  for Tianlong YOU

Exhibit K  A Copy of I -94 for Tianlong YOU

Exhibit L    A Copy of Passport Page  for Tianlong YOU

Exhibit M  Copies Of I -20—Tianlong YOU

Exhibit N  Certificate of Marriage Registration  Tianlong YOU and Wife  █████████

Exhibit O  Copies of I-20 ████████

Exhibit P  Visa Page and I-94  o █████████

Exhibit Q  PASSPORT PAGE OF █████████

1

Exhibit R   Nanchang University Student Apartment  Regulation

Exhibit S  Order of State Education Committee of People's Republic of China

Exhibit T  New Regulation of Ministry of of Education

CERTIFICATION BY ATTORNEY:  I, Lawrence Steven Kerben, an attorney duly admitted to practice in all Courts of the State of New York, affirm and certifies that he has seen the original of the above exhibits and that the copies are true and correct copies. I further certify and affirm that the passport copies and copies of the I-20 are true and correct copies and I have seen the original of the passport and I-20

Affirmed this 1/30/2007

Lawrence Steven Kerben

CERTIFICATE OF SERVICE

I Lawrence Steven Kerben, attorney duly admitted to practice laws in all Courts of the State of New York certifies that a full and complete copy of the above exhibits A thru T have been sent to  Office of Chief Counsel DHS  Immigration and Naturalization Servie 26 Federal Place, 11th Floor, New York NY 10278 on t his 1/30/2007 via UPS overnight service

Affirmed this 1/30/2007

Lawrence Steven Kerben



**U.S. Department of Justice**
Immigration and Naturalization Service

---

*Nebraska Service Center*
*P.O. Box 82521*
*Lincoln, NE 68501-2521*

September 02, 2003
Refer To File No.
LIN0219554562
A95579078

JIAN LUO
C/O LAWRENCE STEVEN KERBEN ESQ
125 26 QUEENS BLVD
KEW GARDENS NY 11415

Dear Sir or Madam:

Re: I730 for Tianlong You

This refers to the above noted application or petition. The record shows that you were given 87 days in which to submit additional evidence in support of the application or petition. A response was not received by the required date. Therefore, in accordance with Title 8, Code of Federal Regulations, Part 103.2(b)(13), the application or petition is hereby denied due to abandonment.

There is no appeal from this decision. However, you may file a new application. You may also file a motion to reopen within 30 days of the date of this decision. A motion to reopen an application or petition denied due to abandonment must be filed with evidence that the decision was in error because:

(i) The requested evidence was not material to the issue of eligibility;

(ii) The required initial evidence was submitted with the application or petition, or the request or initial evidence or additional information or appearance was complied with during the allotted period; or

(iii) The request for additional information or appearance was sent to an address other than that on the application, petition, or notice of representation, or that the applicant or petitioner advised the Service, in writing, of a change of address or change of representation subsequent to filing and before the Service's request was sent, and the request did not go to the new address.

Sincerely,

*Terry E Way*

Terry E. Way
Director

NSC/SUP071/lke253



Case 1:12-cr-XXXXX-XXX Document XXX-X Filed XX/XX/XX Page XX of XXX

WOULD TELL CO-WORKERS /CLIENTS THAT HIS
TRUE ASYLUM CASE WAS FAKE

OTHER CRIMES:

∟ F1 STUDENT VISA FOR UC-DAVIS
  - PARENTS TOLD HIM TO STAY IN NY

∟ TAX EVASION - RELATED TO PAY @ FIRMS

∟ GOT MEDICAID 2008/2009 FOR 1 YR
  BY NOT CLAIMING HIS CASH INCOME

FD-302 (Rev. 5-8-10)

- 1 of 3 -



**FEDERAL BUREAU OF INVESTIGATION**

Date of entry    08/01/2012

On June 8, 2012, Federal Bureau of Investigation (FBI) Special Agents (SA)
Christopher J. DeGraff and Melody Shen, FBI Intelligence Analyst Matthew
Johnston and Assistant United States Attorney (AUSA) Harris Fischman
proffered TIAN LONG YOU aka VICTOR YOU, date of birth, 04/10/1984, at the
Southern District of New York.  Also present was YOU's attorney, JULIA
GATTO.  A proffer agreement was signed.  After being advised of the
identities of the interviewing agents and the purpose of the interview, YOU
provided the following:

Names that appear in Bold Print are the names people identified by YOU are
known to the Federal Bureau of Investigation (FBI) and not necessarily the
names by which those people are known to YOU.

YOU said that wile working as a freelance translator, JULIE CHEN (HONG
CHE)from the KEN GILES LAW FIRM would pay YOU $500 for each asylum case
where he wrote an asylum persecution story.  He said that CHEN, a female
Sri Lankan assistant, and a male Chinese assistant were the three people
who sit in the office's common area.  He said that KEN GILES is the
attorney who owns the office and works there every day.  He stated that in
2007 GILES was advertising to sponsor students on an F1 visa to go to
school in the US for language studies.  YOU said that he processed two or
three of these applicants.  YOU believes that most of these people never
went to school and only used the F1 visa status to get into the United
States.

YOU said that he never filed taxes while working at the asylum law firms
because he was paid in cash.  He also said that he was told that the firms
did not report him as an employee so they did not pay employer taxes and if
he filed taxes they would get caught also.  YOU said that he received
Medicaid benefits in 2008 or 2009 for one year because he did not report
the cash income that he received on the Medicaid application.  YOU said
that he would lie to clients and coworkers about his true asylum
application saying that he made up the story despite the fact that it was
true.  He said that he did this to make the clients more comfortable with
the asylum process and trust that the firm could get asylum with fake
stories of persecution.

Investigation on  06/08/2012  at  New York, New York, United States (In Person)

File #  281E-NY-302120-302                            Date drafted  06/26/2012

by  Christopher J. DeGraff

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

3503-4

7/24/13

Victor YOU
Christopher Degraff
AUSA Mukhi

Go through Q+A

Was admitted to UC-Irvine (not UC-Davis)

Intended to attend UC-~~Davis~~ Irvine but did not
go

Parents suggested that he apply for political assylum

Ken Giles → Huan LLP→ Feng Ling Liu
                                    ↓
                             Did not report until
                               recently.

Reported Income

Ken Giles                    Feng Liu
    ↓                            ↓
Translator               story writer/trainer

Feng Liu → sent him to be a translator
at office to gather information for coaching

Told his boss/co-worker that his assylum
claim was fake because wanted to
win their trust (doesn't remember telling
clients)

A couple Government Christian church in his town
      that he attended in China
                                                 3503-38

    Never persecuted for being christian but
    was discriminated against — believe you
    targeted forced abortion because of political
activism

Feng Liu fired him in November 2010 for making
too many mistakes - They were are of the false claims

Immigration firm - George + Associates

Ken Giles firm - had work authorization

Decided which asylum claim based
on what he was told

- Told boss and another coworker that his
  claim was fake - no one would have believed
  him + and wanted to tell them something
  that would make them trust as a fellow criminal
when coached it was stories made up by other
people

save written materials to clients b/c
it was easier → told them not to take
out law office b/c documents was
high quality

The Moses/Noah son story was too complicated

translators/Story writer - just paid by the firm not
by client (client)

for translating paid by client $1 106 for when work
freelance

For documents related to Christianity

Learned the names/churches from the documents

Saw Liying @ Rosedale a few dozen times

Li told him spend $200 to get docs +
Liying talked about trains/coach/ at
Church

146

E2HKLIN5                         You - direct

1    Q.  What type of persecution would you make up in a story

2    asserting a false Christianity claim?

3    A.  They were all persecution back home.

4    Q.  And "back home," you mean where?

5    A.  In China.

6    Q.  And was it past persecution or future persecution?

7            MR. PAUL:  Object to the form.

8            THE COURT:  I don't understand the question.

9    Q.  Well, you mentioned that the stories you would make up were

10   persecution in China.  Was that a claim of past persecution

11   that had taken place or a fear of persecution that would take

12   place in the future in China?

13   A.  Past.

14   Q.  Now, did you ever tell the people that you worked with

15   about your own personal asylum claim?

16   A.  Yes.

17   Q.  And who did you tell?

18   A.  My boss and my colleagues.

19   Q.  Did you tell them that your claim was a real claim or a

20   fake claim?

21   A.  I told them that it was fake.

22   Q.  Why did you tell your boss and your coworker that your

23   claim was fake?

24   A.  There were many reasons.  Well, first of all, in 2008,

25   after I left Ken Giles' office, I went to look for a job.  And

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

147

E2HKLIN5                    You - direct

1      when the other people saw my work card, they would ask me, is

2      this real, and I told them that it's real.

3              (In English) they asked -- because the working permit

4      they were -- the work authorization card, that's the formal

5      name, on the card they will show your category, the kind of

6      immigrant you are.  And those immigration law firm hiring

7      people, they would ask you, you're applying for political

8      asylum?  Yes.  Is it true?  I said, yes.  But eventually I

9      didn't get any job.

10             MR. PAUL:  I didn't hear the last part.

11             THE WITNESS:  Eventually I didn't get any job.

12             May I proceed back to Chinese?

13             THE COURT:  Yes.  This is your immigration card --

14             THE WITNESS:  Yes.

15             THE COURT:  -- you're talking about?

16             THE WITNESS:  (Through Interpreter)  After that, I

17     went to other law firm to apply for a job and other people

18     asked me the same questions.

19             So I told them it was fake, because I know that in

20     this industry, everybody do it -- do the fake one, so if you

21     tell them that it's real, nobody would believe you.

22             The reason I said that was because I wanted to be able

23     to work longer at that law firm, because it's a organized way

24     of committing a crime and these law firms, they don't welcome

25     outsiders unless you have dirty hands.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E2h1lin4                    You - direct

1    work on false asylum claims?

2    A.  Yes.

3    Q.  And what did you do for the applicants when you were

4    working freelance?

5    A.  All the work before the interviews, including filling out

6    forms, making up stories, translations, and prepare materials.

7    Q.  And how did you know that claims were false?

8    A.  I was the one who made them up.

9    Q.  Okay.  Just backing up a minute -- and we touched on some

10   of this -- when you were at the Ken Giles firm, the first firm,

11   what was your position there?

12   A.  (In English) Legal assistant.

13   Q.  And what were your duties as a legal assistant?

14   A.  Filling out forms, translation, answering phones, and

15   getting the documents ready.  Basically those are the things.

16   Q.  And then going forward to Feng Ling Liu and her firm, what

17   was your position there?

18   A.  Also legal assistant.

19   Q.  And what were your duties at the Feng Ling Liu firm?

20   A.  The first part of the -- the first period, it's making up

21   stories.  The second part, the latter part was training

22   customers.

23   Q.  Now what was the relationship between the individuals who

24   were filing the fake or false asylum claims and the law firms

25   you were working at?

## Part 5. Information for Criminal Records Search

Write your USCIS A-Number here:
A 095-579-078

**NOTE:** The categories below are those required by the FBI. See instructions for more information.

**A.** Gender

[X] Male   [ ] Female

**B.** Height

5 Feet  11 Inches

**C.** Weight

180 Pounds

**D.** Are you Hispanic or Latino?   [ ] Yes   [X] No

**E.** Race *(Select one or more)*

[ ] White   [X] Asian   [ ] Black or African American   [ ] American Indian or Alaskan Native   [ ] Native Hawaiian or Other Pacific Islander

**F.** Hair color

[X] Black   [ ] Brown   [ ] Blonde   [ ] Gray   [ ] White   [ ] Red   [ ] Sandy   [ ] Bald (No Hair)

**G.** Eye color

[X] Brown   [ ] Blue   [ ] Green   [ ] Hazel   [ ] Gray   [ ] Black   [ ] Pink   [ ] Maroon   [ ] Other

## Part 6. Information About Your Residence and Employment

**A.** Where have you lived during the last five years? Begin with where you live now and then list every place you lived for the last five years. If you need more space, use a separate sheet of paper.

| Street Number and Name, Apartment Number, City, State, Zip Code, and Country | Dates *(mm/dd/yyyy)* | |
|---|---|---|
| | From | To |
| Current Home Address - Same as Part 4.A | 09/01/2008 | Present |
| 41-08 Parsons Blvd., Apt. 6B, Flushing, NY 11355 | 03/15/2007 | 08/31/2008 |
| | | |
| | | |
| | | |

**B.** Where have you worked (or, if you were a student, what schools did you attend) during the last five years? Include military service. Begin with your current or latest employer and then list every place you have worked or studied for the last five years. If you need more space, use a separate sheet of paper.

| Employer or School Name | Employer or School Address *(Street, City, and State)* | Dates *(mm/dd/yyyy)* | | Your Occupation |
|---|---|---|---|---|
| | | From | To | |
| Hofstra University | HOFSTRA UNIVERSITY Hempstead, NY 11549-1000 | 08/11/2011 | Present | Law Student |
| Queens College | 65-30 Kissena Blvd. Flushing, NY 11367 | 01/20/2008 | 12/24/2010 | College Student |
| | | | | |
| Moslemi & Associates, Inc. | 2 East Broadway, 6th Floor New York, NY 10002 | 07/14/2008 | 11/20/2010 | Paralegal |
| Law Office of Ken Giles | 299 Broadway, Suite 1404 New York, NY 10007 | 02/23/2007 | 06/30/2008 | Paralegaal |

FD-302 (Rev. 10-6-95)

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**

Date of

transcription

Investigation on                                    at

File #

by                                                              Date dictated

This document contains neither recommendations nor conclusions of the FBI.   It is the property of the FBI and is loaned to

your agency;

it and its contents are not to be distributed outside your agency.

07/18/2011

YOU, TIANLONG (a/k/a "Victor"), Date of Birth 04/10/1984,
telephone number 917-250-9096, was interviewed at the New York Asylum
Office located at One Cross Island Plaza, Rosedale, New York, 11422.
After being advised of the identity of the interviewing agent and the
nature of the interview, YOU provided the following information:

YOU was advised that he was not under arrest, that the
interview was voluntary, and that YOU could end the interview and leave
at any time.

YOU began working as a Chinese translator for asylum
applicants in 2007.  In 2007, YOU had 5 or 6 cases.  In 2008, YOU had
approximately 20 cases.  In 2009, YOU had approximately 20 cases.  In
2010, YOU had 125 cases (an average of 2 or 3 cases each week).  YOU
is certain of this number, because YOU kept records.  In 2011, YOU had
approximately 50 cases.  YOU is going to stop translating at the asylum
office soon because YOU will attend Hostra law school next month.  YOU
made money translating asylum cases and saved up for law school.  YOU
majored in Political Science as an undergraduate student.  YOU is
married and is expecting his first child in March.

There are 4 "Big Translators" (owners of their own translator
business who get work from law firms, and then distribute asylum
translation cases to individual "Small Translators", such as YOU).
The 4 Big Translators are "Yang" (identified as Song LUO, a/k/a
"Marshall", Date of Birth 11/12/1978), "Tom", "Bruce" and "Larry".
Larry has a brother in one of the large law firms that prepare asylum
applications.  Larry gives many of his cases to "Crystal".  Bruce gives
many of his cases to "Lianna".  Tom gives many of his cases to "Jessica"
(YOU does not recall Jessica's first name, but knows that her last name
is LIU).  Jessica is tall, beautiful and has long hair.  Jessica had
a case at the Asylum Office today.

"Tony" (known to YOU as Cheng SHANG, identified as Cheng
SHANG, Date of Birth 09/16/1985, New York Driver's License 531999678),
Jessica (identified as Yan LIU, Date of Birth 08/03/1984, New York
Driver's License 321302692) and Lianna do not like Big Translator Yang
(LUO) because he has on occasion, given them cases and then failed to
pay them their money.  SHANG had a case at the Asylum office today.

07/18/2011        Queens, New York

281E-NY-302120-302

SA Daniel Park



### PERMANENT RESIDENT CARD

NAME YOU, TIANLONG

A# 095-579-078

Birthdate PART Category          Sex
04/10/84                          M

Country of Birth
China, People's Republic of

CARD Expires 08/15/18

Resident Since 08/14/07

C1USA0955790785LIN0811151732<<|
8404109M1808155CHN<<<<<<<<<<7
YOU<<TIANLONG<<<<<<<<<<<<<<<<

UNITED STATES OF AMERICA   Department of Homeland Security

### PERMANENT RESIDENT CARD

The person identified by this card is authorized to work and reside in the U.S.

**New York City Department of Finance**
**Office of the City Register**

HELP

[Click help for additional instructions]
Selecting a help option will open new window

*Current Search Criteria:*

**Borough:** QUEENS
**Block:** 2154
**Lot:** 1     **Unit:** 3G
**Date Range:** To Current Date
**Document Class:** All Document Classes

# Detailed Document Information

| | | | |
|---|---|---|---|
| **DOCUMENT ID:** | 2008081300468001 | **CRFN:** | 2008000332722 | **COLLATERAL:** | N/A |
| **# of PAGES:** | 2 | **REEL-PAGE:** | N/A-N/A | **EXPIRATION DATE:** | N/A |
| **DOC. TYPE:** | BOTH RPTT AND RETT | **FILE NUMBER:** | N/A | **ASSESSMENT DATE:** | N/A |
| **DOC. DATE:** | 8/14/2008 | **RECORDED / FILED:** | 8/20/2008 10:08:16 AM | **SLID #:** | N/A |
| **DOC. AMOUNT:** | $187,000.00 | **BOROUGH:** | MANHATTAN | | |
| **% TRANSFERRED:** | 100% | **RPTT #:** | N/A | **MAP SEQUENCE #:** | N/A |
| **MESSAGE:** | N/A | | | | |

## PARTY 1

| NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|
| LIU, JIN-LI | 85-16 253RD STREET | | BELLROSE | NY | 11426 | US |
| HUANG, HUI | 85-16 253RD STREET | | BELLROSE | NY | 11426 | US |

## PARTY 2

| NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|
| YOU, TIANLONG | 66-37 YELLOWSTONE BLVD., #3G | | FOREST HILLS | NY | 11375 | US |
| ZHANG, WEI | 66-37 YELLOWSTONE BLVD., #3G | | FOREST HILLS | NY | 11375 | US |

## PARTY 3/Other

| NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|

## PARCELS

| BOROUGH | BLOCK | LOT | PARTIAL | PROPERTY TYPE | EASEMENT | AIR RIGHTS | SUBTERRANEAN RIGHTS | PROPERTY ADDRESS | UNIT | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|
| QUEENS | 2154 | 1 | ENTIRE LOT | SINGLE RESIDENTIAL COOP UNIT | N | N | N | 66-37 YELLOWSTONE BOULEVARD | 3G | |

## REFERENCES

| CRFN | DOCUMENT ID | BOROUGH | YEAR | REEL | PAGE | FILE NBR |
|---|---|---|---|---|---|---|

## REMARKS

Print    View Document    Search Results    Search Options    Main Options

Go To: Finance Home Page | NYC.gov Home Page | Contact NYC.gov | FAQs | Privacy Statement | Site Map

**Tape 15 Recorded by Fulcrum of Victor and Meng Fei on December 10, 2010**
**Session 4**

**08:55**
**CHS: Did they promise you to sponsor green card for you when you started to work here?**
**Meng Fei: In the beginning I did not care about it.**
**CHS: You must have taken the job for the sake of green card?**
**Meng Fei: Actually I wanted to stay in the United States permanently, and I started to have this idea from this year. Originally I wanted to go back.**

**09:40**
**Talking about the possibility of starting a new firm, VICTOR says, "we have worked here for over two years and we have planned to set up our own office for at least two years." CHS asked what is the technical issue? Meng Fei says, "My status in the US is the 'technical issue'". CHS says Meng Fei can consider applying for asylum herself. Meng Fei says, "You know that I am pretty well known over there, so that's impossible, I told you earlier that I couldn't do this thing."**

**Session 6**
**06:00**
**CHS: Liu ever went to court herself?**
**Victor: She used to go to court back in 2007 and when we first came here in 2008. Later she mainly watched us.**
**Meng Fei: She only cared that you have things done well in the most efficient way. You must pay attention to the proper procedure of doing things.**

12:10
**Victor: Because now clients can rarely see Attorney Liu, Attorney Liu's influence is decreasing.**
**Qi: Take this opportunity and hurry up to get her clients when the brand name is fading.**
**Victor: Now very few clients are able to see Attorney Liu. Clients have come to us for several months and they are still unable to see Attorney Liu.**
**CHS: Are there any clients who call you Attorney Liu?**
**Yu: No, but some clients will call me Attorney Meng because they have heard others call me Meng Fei.**

234

E2JKLLIN4                    You - cross

1    corrected the translator that's appearing for you, right?

2    A.  Correct.

3    Q.  So your English is pretty good; fair?  Is that fair?  Your

4    English is pretty good?

5    A.  However, if you want to put this as well as you are, no,

6    it's not.

7    Q.  Well, you told us you speak fluent English when you first

8    took the stand yesterday.

9    A.  Fluent -- fluently is different than a native speaker.

10   Q.  I see.  So you're more comfortable in speaking your native

11   language; is that fair?

12   A.  Correct.

13   Q.  And is it also fair, sir, that when you use an interpreter,

14   you not only listen to my English in the form of a question but

15   you then get a chance to hear it translated in your own

16   language, in Mandarin, right?

17   A.  Correct.

18   Q.  So you get a chance to hear the question two times before

19   you have to answer, right?

20   A.  Correct.

21   Q.  But you didn't feel that that was necessary when you

22   pleaded guilty in front of a judge, right?

23   A.  When I pleaded guilty, all I have to do was to answer yes.

24   Q.  Excuse me?  When you pleaded guilty, all you had to do was

25   answer yes?

235

E2JKLLIN4                    You - cross

1    A.  All I have to do is to plead guilty, I do not really have
2    to answer a lot of things.
3             MR. PAUL:  One second, Judge.
4             (Pause)
5    Q.  Sir, do you remember the day you had to appear in court
6    before Judge Furman to plead guilty?
7    A.  In the middle of September, but I don't remember the
8    specific date.
9    Q.  Right.  But you remember the event, right?
10   A.  That's right.
11   Q.  I'm going to show you what's identified as 3503-22.  Before
12   I do that, sir, you do read English, correct?
13   A.  That's right but not very fast.
14   Q.  OK.  So take your time.  Let me know when you're done.
15   A.  I have a question for you:  Do I only read the answers I
16   provided or I read all the statements here?
17   Q.  I'd like you to go through that document at your own pace,
18   reading it to yourself, not out loud, just read it to yourself.
19            (Pause)
20   Q.  Finished?
21   A.  Yes.
22   Q.  Now, having read that document, has that refreshed your
23   recollection as to what occurred on the day you pleaded guilty
24   in court?
25   A.  Yes.

E2JKLLIN4                    You - cross

1    Q.  And, in fact, it was more than just yes-and-no answers you

2    had to give throughout the hearing; is that not so?

3    A.  Most of those questions are formalities.

4    Q.  Formalities?  Formalities dealing with your life, is that

5    how you refer to them?

6    A.  I think every person who pleads guilty would be asked those

7    questions.

8    Q.  Well, that may be so, but my question to you is:  That

9    proceeding involved several times where the judge had to advise

10   you of certain legal rights you had, correct?

11   A.  Correct.

12   Q.  The judge had to advise you of the maximum penalties you

13   were facing for the plea of guilty you were entering, correct?

14   A.  Correct.  However, I already found out about that earlier,

15   before that.

16   Q.  Well, you may have, but the judge is advising you at this

17   hearing of some very important issues perhaps in your life;

18   would you not agree?

19   A.  Yes.

20   Q.  Let's talk about that a little.  We've seen a cooperation

21   agreement that was put on the screen, right?

22   A.  Correct.

23   Q.  That was an agreement that you entered into with the

24   government, right?

25   A.  Correct.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

287

E2JKLIN6                    You - cross

1    A.  Correct.

2    Q.  Did you come to learn, sir, that in fact they had

3    cooperating witnesses working for them who were taping you

4    while you were conducting this business?

5    A.  Recorded my conversation?

6    Q.  Yes.

7    A.  I don't recall.

8    Q.  Have you since learned about conversations you had with

9    cooperating witnesses or witness while you were engaged in

10   these activities?

11   A.  I don't think that was mentioned.

12   Q.  Well, let me ask you, sir:  Before you pleaded guilty, did

13   the government turn over what's referred to as discovery

14   material concerning your charges and the case against you?

15   A.  No.

16   Q.  So your attorney, who's in the courtroom today -- that was

17   never provided to you at any time?

18   A.  As far as I know, I have not seen them.

19   Q.  Have you since your cooperation had an opportunity at any

20   time to review or to listen to recordings that were made by

21   cooperating witnesses who were recording you engaged in these

22   activities?

23   A.  No.

24   Q.  I'm going to show you what's previously identified as

25   3503-45.  I'm going to show you the date and I am going to show

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Lucy & Lillian took over the editing job after Li Feng
left. FLL found out Lucy & Lillian were not qualified
to do the job. → very inconvenient for FLL.
(David would take the stories home for FLL to read)

Lillian is doing the editing job.

After Li came back, his job was to write briefs.
                                                appeal

Li Feng resigned in 2/2012 because MF + her
husband urged him to quit due to the high risks
of this job. So, Li was worried about being caught.
(After M.F. quit) When M.F. heard that FBI had talked to Victor,
m.F. also told him that he's more senior than m.F.



m.F.

Lillian → FLL

upset @ m.F. for
spreading rumors,
scaring her
employees

Li knew everything

LiFeng ← comforting Li,
m.F.

Victor
(FBI talked
to me)

322
E2KKLIN1                      You - cross

1    Q.  And was the guest list made up or composed by you or by the
2    FBI or a combination of the two?
3    A.  At that time, the FBI wanted me to find as many people as I
4    can, but there were a lot of people who couldn't come at the
5    time.
6    Q.  So you sent out invitations to gather information about
7    people who were working, like you, in this industry, to help
8    the FBI at that point; is that right?
9    A.  Correct.
10   Q.  And did Ms. Lin get an invitation, by the way?
11   A.  I didn't know her well at the time; I didn't have her
12   telephone number.
13   Q.  I see.  When was this meeting, by the way?
14   A.  It was March or April of 2012; I don't remember exactly
15   when that was.
16   Q.  So as recent as March or April 2012, you had a meeting,
17   while cooperating with the agents, and determined who should be
18   gathered together at such a meeting to further this
19   investigation; is that right?
20   A.  Correct.
21   Q.  Was this meeting recorded?
22   A.  Yes.
23   Q.  So you had a mike on you and you were able to record,
24   similar to what we've seen previously yesterday?
25   A.  Correct.

UNCLASSIFIED

| FD-1023 | **FEDERAL BUREAU OF INVESTIGATION** |
|---|---|
| | CHS REPORTING DOCUMENT |
| (07/24/2010) | |

**HEADER**

Source ID: **S-00043665**

Date: **06/11/2012**

Case Agent Name: **DEGRAFF,CHRISTOPHER J**

Field Office/Division: **New York**

Squad: **C6**

Date of Contact: **06/08/2012**

List all present including yourself. (Do not include the CHS.): SA Christopher J. DeGraff
SA Melody Shen
IA Matthew Johnston

Type of Contact: **In Person**

Country: **UNITED STATES**

City: **New York**

State: **New York**

Date of Report: **06/11/2012**

Substantive Case File Number: **281E-NY-302120-302**

Source Reporting:    On June 8, 2012, CHS provided the FBI with three printed pages from a LinkedIn account. CHS stated that he had recently joined LinkedIn and the program had automatically connected him with several people he knew.

CHS provided the printed pages of:

FENG LING LIU- identified as the owner of MOSLEMI AND ASSOCIATES by the CHS.

DAVID YUCHANG MIAO- identified as the Office Manager of MOSLEMI by the CHS.

GEHAN SHANMUGANATHAN- identified as the translator and Sri Lankan "snakehead" that utilized the law firm of KEN GILES to submit asylum cases.

The printed pages were placed in a 1A envelope in the case file.

Signed by:

✍ Click here to sign this section

📧 **Signed by CJDEGRAFF**    View details
on Monday, June 11, 2012 9:57 AM (Eastern Daylight Time)

| **FD-1023** (07/24/2010) | FEDERAL BUREAU OF INVESTIGATION |
|---|---|

3503-18

DX33: Tape 152 Recorded by Victor

Session 2
15:00
Victor: I want to ask you: if I now open a law office, can I succeed? It is better to open the law office in Chinatown but the cost will be very high in Chinatown. If the first few cases can be approved, the pressure will be much lower. The law office cannot be very small otherwise clients will not have a good impression. At least it should be large enough to put two or three desks. Jeff opened his own office. How is he doing? In fact when I first left Old Liu's office, he invited me to work with him. He first shared an office with Sister Yang and later moved to Chinatown.

Session 3
02:50
Victor: If Old Liu has trouble and is out, this field will have big changes. Anyway, I can assure you that my writing is very good and I can do well in appeal cases. I do law review in law school. The ordinary law firm in Chinatown has no way to compete with me. I will graduate top 15 in my class.

Session 3
16:20
Victor: I feel that now she [Karen] does not take care of anything. Not just now, started from the later days when I was still in Old Liu [Karen]'s office. Originally, we absolutely did not do one year evidence. It was all provided by clients. Then the stories were all written by the clients themselves. We tried not to get involved.

Sealed
Public and unofficial staff access
to this instrument are
prohibited by court order.

**UNSEALED
PER ORDER**

United States Courts
Southern District of Texas
FILED

AUG - 2 2007

Michael N. Milby, Clerk of Court

**UNITED STATES DISTRICT COURT** JAN 1 4 2008

SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CRIMINAL NO. |
| | § | |
| SHELLY WINN; | § | |
| ELIZABETH JONES, a/k/a | § | UNDER SEAL **H 07 - 330** |
| ELIZABETH TSAI; and | § | |
| HONGLIAN FENG, a/k/a | § | |
| DIANE FENG | § | |

<u>INDICTMENT</u>

The United States Grand Jury charges:

**<u>INTRODUCTION</u>**

At all times material herein:

1.    **SHELLY WINN** was an attorney licensed to practice in the state of Texas who operated "S. Winn and Associates" ("the Law Office") in Houston, Texas. **WINN** was also the registered agent for Taiyun Investment and Development, a company that used the same address as the Law Office.

2.    **ELIZABETH JONES, a/k/a ELIZABETH TSAI**, worked at the Law Office. **JONES** was the manager of Taiyun Investment and Development.

3.    **HONGLIAN FENG, a/k/a DIANE FENG**, began working as a receptionist at the Law Office in 2002. Prior to working at the Law Office, **FENG** was a client of the Law Office who filed an asylum application.

AO 245B     (Rev. 08/05) Judgment in a Criminal Case
            Sheet 1

# UNITED STATES DISTRICT COURT
## Southern District of Texas
### Holding Session in Houston

| | |
|---|---|
| UNITED STATES OF AMERICA<br>V.<br>**SHELLY WINN** | **JUDGMENT IN A CRIMINAL CASE**<br><br>CASE NUMBER: **4:07CR00330-001**<br>USM NUMBER: 66734-179<br><br>Richard Kuniansky<br>Defendant's Attorney |

☐ See Additional Aliases.

## THE DEFENDANT:

☒ pleaded guilty to count(s)    1S on April 30, 2010.

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1001 | False statement to a federal agency | 06/02/2003 | 1S |

☐ See Additional Counts of Conviction.

The defendant is sentenced as provided in pages 2 through 5 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☒ Count(s) remaining _____ ☐ is ☒ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

September 17, 2010
Date of Imposition of Judgment

_Melinda Har_____
Signature of Judge

**MELINDA HARMON**
**UNITED STATES DISTRICT JUDGE**
Name and Title of Judge

September 27th, 2010
Date

CH | SJ

Approximately end of 2008:  Lucy (Younger sister of Old Liu) came, in charge of interview trainings;

April, May 2009:  Lilian, (David's other younger sister) took over Lucy's work; Lucy worked on training for court appearances and greeting new clients, etc;

Early 2009:    Law firm changed its name; Troy Moslemi was recruited from the firm where Miani [cannot read handwritin] worked as a counselor; his name was used to opearte;

Later half of 2009:    Dennis left;
        Troy referred his friend from Miani Vanessa Bandrich to replace Dennis;
Later half of 2009: David's classmate William joined to work on document translations;
Later half of 2009: Andy (Old Liu's nephew) came to do odds and ends work; later worked with Lucy to greet new clients;

Mid-October 2009: Old Liu told me that the immigration office is short of translators, knew that I had translation experience and sent me to help out; at the same time, [wanted me] to pay attention to the movements of the immigration office, in order to raise the interview approval rate, because the longer the court dates are dragged out, the better it is.  $50 per day over time for translators and an red envelope of $100 once approved;  (in 2008 when William first left, around September, used to work as a replacement translator for about a month)

Responsible of interviews:  Larry Miao (David's younger brother) he worked with Jeff Liu, passed on a list of clients needing translators to Jeff; Jeff would coordinate wiht translators and then Larry would pick up the clients; I used to be one of the translators picked up by Jeff;

End of November 2009:  Immigration office notification for policy change:  each translator cannot submit two cases at the same time, one at a time only; the translation fee charged by law firms from clients raised from $150 to $200; but Jeff and Larry had disputes over sharing the expenses; Larry stopped working with him; and temporarily had Tom Zhang making arrangements; at the same time, he wanted me to take over the job of coordination with translators;
        Larry put the terms on the table:  Other than my clients (no money to share from my clients) I would get $100 out of the $200, I get to decide which translator to use and however much the translator gets paid; I get to keep the rest; At that time, the market price was $100 with car and $80 without car; there was no car at the time, must have a translator who has a car;

January 2010:  found a translator with car: Melissa Jiang; according to the agreement with Larry, if only one client, provide the translation [myself], no money to share; if two clients, [I] get one, Melissa gets one, no money to share; if three clients, myself, Melissa and another translator each gets one, profit is $20;

Later half of 2009:  preparing for LSAT; worked 5 days per week; $20 per day; over time fee two to three times per week;

End of 2009 or January 2010:  Meng Fei sworn in as a lawyer; started to delegate assistant work; office was too busy;

February 2010:  Old Liu requested that I temporarily stop working as a translator and concentrate on working in the office; but because the approval was high when i worked as a interpreter in January and droped when I stopped interpreting in February, at the end of February, Old Liu wanted me to move from the position of writing stories and documents to working as an interpetor in the

morning and providing trainings in the afternoon; my desk moved from the assistants' office to the conference room; I no longer received over tiem fee, but i would get another half day off in the event that I would interpret for three or more times per week; which would allow me to better prepare my LSAT; at that time, requested that I would state to the public that I nolonger worked in that office, instead, I leased the conference room from them as an independent office;

February 2009:        Feng Li told Old Liu that a law firm in Houston was busted for helping clients prepare for interviews; demaned that we had to be careful when we write stories; do not provide documents to clients carelessly;

March, April 2010:  Adrianna Qi and a new person (worked for a short time, forgot his/her name, was an alumni of Meng Fei; not through referral; after getting fired went to another immigration office, used to chance met in the immigration office)

Summer 2009: Old Liu's niece Tara came to work; first translated national ID cards, later transferred to write stories;
        Anther girl from Wu Han, graduated with LLM, replace me as a story-writer;
        Another girl from North-Eastern China, LLM, story writer, later becomes a trainer (Kai Nan Zhang) [double check name, cannot read handwriting]

End of May or Early June in 2010:  Adrianna went back to China; other than providing training and interpreting, I also took over part of the story translation work from  her;

End of August 2010:  Adrianna came back to work; but because she was frequently late, she was fired; but Old Liu outsourced the work of translating stories and statement letters to her, worked at home; one story plus two letters = $30; Andy was responsible for  coordination and paying her.

September 2010:  school started; many translators in the immigration office left temporarily;
        I was short of help so I haired Adrianna to work as an interview interpreter; (she used to work in a law firm as an oral interpreter)

End of May in 2010:  Feng Li was fired; the actual reason is unknown; to the public, he stated that he was going back to China; later stated that he was taking his parents to travel;

May 2010:  Old Liu's branch opened up, across [the street], Larry, Yolanda, Vanessa, Calvin (Lucy's husband) and William's wife [worked there]; also several assistants were hired at the same time;
        Liu transferred more than 100 cases over there; because the branch could operate and submie more cases without outsider knowledge; in the beginning, I would go there to help with training every so often; but later on Old Liu said that [we] have to keep a distant with that side, so I did not continue to be sent there; but I feel like this pretense is really pointless; because Troy had already told a certain judge in court that he was not the real boss; and the real boss was Ms. Liu; therefore the true identity of this new law firm was quickly exposed by Troy;

November:  I started to apply to Law school; at the end of November just before Thanksgiveing, I left the law firm; but cotinued to worked for the two firms as a translator and coordinated translators;  Because I lost my main source of income, I considered to open up our own law firm with Meng Fei; but because Meng Fei's status was not resolved, and that we had no money, my pressure would decrease if I receive scholarship, therefore I gave up this plan;

I went back to China at the end of December 2010, came back at the end of January; When I was away, the translator coordination job was given to Vivian. After I come back, I did not continue to

| **NAME** | **ENGLISH TRANSLATION** |
|---|---|
| | gentleman wrote for me. Just talking about you. |
| VICTOR: | [U/I]. |
| CI: | I was not familiar with you at that time. I didn't know you. I said who is he? He/she said just from our law firm. Right. I said to myself that these people were too wicked. Fuck. This is what I heard in person. |
| VICTOR: | But frankly speaking, we can't count on them… those big bosses are standing with us in their minds. Just… at about the beginning of this year, at that time… [Clears throat] in Houston there that… a law firm was shut down after it was investigated by that Immigration Office for seven to eight years. |
| CI: | Was it the one that did the political asylum? |
| VICTOR: | Right. [V/O] Someone said… |
| CI: | [V/O] Ah, I kind of heard from them. What was going on with that? What happened, that one? |
| VICTOR: | They just did the political asylum and then asked the clients to do false… false Christianity. |
| CI: | [V/O] Oh. |
| VICTOR: | [V/O] Finally [U/I] Religion was 200 questions. |
| CI: | Was it very **regular**? Aren't there 200 questions in every… every one? |
| VICTOR: | But [U/I] **SE** intentionally wrote that… that in its Declaration… Declaration. |

---

United States v. Liying Lin                                           CD 7. Park_003

FD-302a (Rev. 05-08-10)

281E-NY-302120-302

Continuation of FD-302 of  Proffer of Mengfei YU                        , On  03/02/2012  , Page   3 of 6

Internet and found LI's information to be correct. LI was very
worried that the same thing would also happen to LIU's firm. After
hearing about the Boston incident, "Harry" became very concerned and
said, "I will talk to Fengling LIU." LI advised "Harry" that he
("Harry") must stop doing certain things from now on. In the
meantime, YU and the other two paralegals were all fearful of their
own future: "Victor" (Tianlong YOU) wanted to obtain a permanent
residency ("green card") in the U.S., "Betty" (Beibei XU) wanted to
return to China, and YU wanted LIU to sponsor her a H1B visa.

YU did not know exactly when LIU changed her firm's name from
"Fengling LIU Attorney At Law" to "Moslemi & Associates." By the
time that YU returned to the office in March 2009 from one month of
leave, the firm had a new name and a new policy for processing
political asylum applications. Under the new policy, the clients
must write their own statements first and then the paralegals would
revise them. The only exception would be if the clients were
illiterate. Both "Harry" and Fengling LIU instructed the paralegals
to give the firm's "writing samples" to clients in order to help
them write their stories. According to YU, "Harry" was the one who
drafted the various "writing samples" and was very proud of his
work.

LIU trained the paralegals about her firm's new policy procedure
either by oral instructions or in Word Perfect documents. After the
firm's name change, LIU stopped coming to the office on a regular
basis. Her claim was that she wanted to spend more time with her
family. As a result, LIU delegated the "story review" responsibility
to 1)Feng LI, 2)her brother "Harry," and 3) her sister "Lucy," in
that order. LIU also stopped signing all political asylum
applications.

Even though the firm's name was changed and LIU was no longer
reviewing her clients' persecution stories and signing their
applications, LIU is still the owner of her firm and she does not
like outsiders know about this. YU knew about this fact because Troy
Moslemi, the attorney whose name is being used as LIU's law firm
title, told everyone that he was by no means in charge of the
office. Therefore, he was not the "go-to" person for any
decision-making issues. After his wife stopped coming to the office,
"David" took on the office manager position. YU, however, had seen
"David" call LIU directly for help if he could not answer a
question.

**File Cleaning**

FD-302 (Rev. 5-8-10)

- 1 of 6 -

 OFFICIAL RECORD

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry    10/24/2012

On October 24, 2012, Mengfei YU and her attorney, Patrick Joyce, attended a meeting in the United State Attorney's Office at the Southern District of New York (SDNY). Also in presence were Assistant United States Attorney (AUSA) Harris M. Fischman, AUSA Robert Boone, FBI New York Special Agent (SA) Melody Shen, and SA Christopher J. DeGraff. YU was asked to identify the subject in each photo from a photo book and provide any knowledge she may have concerning the identified targets. YU provided the following information:

Photo #1: YU did not know the person.

Photo #2: YU did not know the person.

Photo #3: YU did not know the person.

Photo #4: **Feng LI**. LI started working at Fengling LIU's firm in 2006 first as a paralegal. After passing New York State's Bar Examination, LI became an attorney in LIU's office later in 2006. LIU fired Feng LI in May 2010 while LI was in China for vacation but brought him back in April 2011 when she needed help. YU knew that Feng LI wrote many fake stories while he was a paralegal because he would often brag how efficient he was and asked how many stories YU and Victor (the other paralegal) did. During the early 2009 to about May 2010 timeframe, LI reviewed all the stories written by YU and Victor. If a story needed revision, LI would return the hard copy to YU and told her how he wanted her to re-write. LI also reviewed translation work done by the translators in the office and went to U.S. Immigration Court for hearings if other attorneys were too busy. LI resigned from LIU's firm in early 2012.

Photo #5: YU identified the man in the photo as **David MIAO's brother**. This target and his wife are both drivers. They mainly drive Fengling LIU's and Harry LIU's clients to the Asylum Office for interviews. YU's former coworker, Victor, had seen the target coach clients as to how they should answer questions at the Asylum Office. YU had seen the target in LIU's office before.

| | | |
|---|---|---|
| Investigation on | 10/24/2012 | at  New York, New York, United States (In Person) |
| File # | 281E-NY-302120-302 | Date drafted  10/24/2012 |
| by | SHEN MELODY, Christopher J. DeGraff | |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

④

a better Story would work better?

1) Fenglin Liu. — She would review
   them in 2008.
   2009 - not much time in the
   office. Gave it to Feng Li.
   3) Hatty then 4) Lucy

~~Did~~ Every time she gave the Story
to Liu. She would write
everything Yu wrote. She
noticed it's not what the Client
had told her.

Liu would just make changes
of her writing w/o consulting
the facts w/ Yu or verifying
the clients file:

in
take    Name, age, Parents,
form    Passport info, U.S. / PRC
was     address. Contact info.
1 page. Religion, Persecution.

and Huan Wang
25 Tara Zhang DNR
26 Jia "Adrianna" Qi Adrianna, Jia Qi.  FLL translator
27 Zeyuan "Steve" Wang film major who worked at a law firm at 305 Broadway NY
28 Christian Zhang Christian.  a translator on the Facebook group,  freeelance translator
29 Xu Lu XU LU, ex-felon.  Taught GMATs and now own a firm with Huan Wang in Flushing
30 Hong Che aka Julie Chen Julie Chen.  in business for 10 years.  Worked at Robert
Pargess then moved to Ken Giles 2003/2004
31 Vanessa Bandrich Vanessa Bandrich.  Has FL bar.  Named owner of Bandrich and
Assc.  Henry Liu's office.
32 "Allen" DNR
33 "Wendy" possibly FLL younger sister
34 Troy Moslemi Troy Moslemi.  Of counsel for FLL in FL.  2008/2009 came to NY and
changed firm name to his name
35 Xiaoseng Xu DNR
36 Henry Liu Harry Liu.  FLL younger brother.  owner of Bandrich firm
37 "Ms Zheng" Winton, new paralegal at FLL.  has a LLM degree but hasnt passed the bar
38 Huan Wang probably Huan Wang.  with Xu Lu
39 Ken Giles Kenneth Giles, attorney and owner of Ken Giles firm
40 Yong "Ollie" Sha paralegal for Julie and Ken Giles

Signed by:

🖊 Click here to sign this section

Signed by CJDEGRAFF      View details
on Tuesday, February 07, 2012 1:21 PM (Eastern Daylight Time)

Signed by DPMCKENNA      View details
on Wednesday, February 08, 2012 8:01 AM (Eastern Daylight Time)

| **FD-1023** (07/24/2010) | FEDERAL BUREAU OF INVESTIGATION |
|---|---|

① Yolanda
  ↳ Horry's wife
  ↳ Barbiera Law School
  ↳ worked @ Moslemi ← Broadrich
  — Boss @ Broadrich
  — used to be story writer @ Moslemi
  — Training VY How to be Story writer

② Andy Liu
  ↳ Nephew FLL
  ↳ interviews New clients — decides on claim
    — then give them to
      paralegal
  ↳ does contracts
  ↳ collects clients $

③ Do not Know

144

E2HKLIN5                         You - direct

1    BY MR. MUKHI:

2    Q.  What was the nature of the asylum story you would make up

3    for people who would assert this claim?

4    A.  It would be the client had a certain kind of illness in

5    China and it was treatable.  The person practiced Falun Gong

6    and it was able to cure them of their illnesses, but it was

7    discovered by the government.

8    Q.  Now, the last type of claim you mentioned was a

9    Christianity claim.  When you made up stories for Christianity

10   asylum, generally, what was the story that you made up?

11   A.  I usually prepare those stories for single, young people

12   who had received high school education.  It would say that they

13   practiced Christianity in China, they went to underground

14   church and were discovered by the -- and was persecuted by the

15   government.

16   Q.  You mentioned an underground church.  What is an

17   underground church?

18   A.  These were churches that were not registered with the

19   Chinese government.

20   Q.  Now, what other types of churches are there in China

21   besides the underground churches?

22   A.  The other types are the ones registered with the government

23   and approved by the government to operate.

24   Q.  Now, what would happen to the stories once you wrote them

25   for clients?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Like I said above, this standard is modified over the time. For one time, I'm told interviewers to check out if the client left any record in another country, for instance, arrested in Guatemala. Because sometimes asylum officer would dig out the info. but the story says the client was in China when he was actually in the middle of nowhere, which is embarrassing for us and for client. For one time, we decline almost every male middle-age people for family planning case because the recent case law did not protect them any more, until she found out how to present the claim in another way.

Based on their age, gender, education, we would suggest which claim fits them. A young male adult can choose between Falun Gong and Christianity, while a female counterpart is eligible to everything. Usually we would not suggest the client to make multiple claims, i.e. Christianity + Family Planning, in order to save our time and efforts. But certainly we would tell the client "it too hard for you, you will be overwhelmed during the hearing." We do not try other claims like land dispute, corruption, environment protests, strikes because they are difficult, time-consuming and less efficient. Other law firms are more of a writing workshop but our firm is a factory. One client who has a legitimate claim was converted to Christianity just because Ann did not know how to handle that type of case.

The third standard is the IQ. If the client is too dumb, we will kick him out because working for them is a pain on the ass. Also dumb client would make unanticipated mistakes to tell the officer that the story is made up.

E2h1lin4                     You - direct

1    them to be ready for the interviews.

2    Q.  What type of stories were you writing?

3    A.  Stories related to the political asylums.

4    Q.  And who were these stories written for?

5    A.  For the law firm's clients.

6    Q.  And were the stories that you wrote real or made up?

7    A.  Most of them were made up.

8    Q.  And what would happen to those stories?

9    A.  Submitted to immigration.

10   Q.  And then you mentioned at the Feng Ling Liu firm you also

11   did training.  What did you mean by training?

12   A.  Later Feng Ling Liu send me to work as an interpreter in

13   the immigration interviews and when I came back, I was told to

14   train the applicants to be ready for the interviews.

15   Q.  And how would you train them?

16   A.  I told them what type of questions that the immigration

17   officers are likely to ask and how they should answer those

18   questions.

19   Q.  And were these the same clients that you would write

20   stories for or different clients?

21   A.  In any case they were all the clients of the law firm.

22   Q.  Was it both clients that you'd written stories for and

23   clients that you had not written stories for?

24   A.  Yes.  Both.

25   Q.  And then once you started working freelance, did you also

My family was split apart in 1998 when my parents had to flee to the United States and in doing so leave my younger brother and me behind in China. At that time, I had very vague knowledge about why they "abandoned" us so cruelly until I started connecting my family's tragic event to our autocratic regime, which I used to trust full-heartedly claimed to be the "savior" of our country.

After grasping several pieces of what happened to my family, however, I turned toward an undisclosed world of knowledge, once prohibited by the government, where the wisdom of John Locke, Alexandra Hamilton and Immanuel Kant shed light. Therefore, I completely dispelled dark clouds of the "philosophy of struggling" from my heart, which was overshadowed for years. The time I began thinking independently was my spiritual rebirth.

Because I think the individual salvation is far from enough to overturn the future of the whole nation kidnapped by the Party, I engaged in fighting against the Party and advocating the democracy. Armed by newly acquired knowledge, I helped many people including my girlfriend topple down their mindset deeply controlled by those suffocating ideological misconceptions. Thus, I had been on the Party's radar all the time since my high school. Not only did they monitor me, the Party also forced me to join its Youth League to fight back my anti-brainwash efforts. Our ideological quasi- war escalated very soon. I began resisting against paying membership fee of Youth League and verbally, sometimes physically, fighting with other ideologues of my dorm who were sent to monitor me. One thing comes to another, the infuriated Party harmed me severely by an unexpected incident.

Right before my senior year, my girlfriend discovered her pregnancy that was reported to the Party by my roommate. Although we both decided to deliver it at any expense, our baby was killed by coercive abortion according to inhuman family planning policy. The failure to conceal her pregnancy, which brought us from the ecstasy to the harrowing of hell, turned out to be the last straw that triggered my self-exile from our hometown where two generations of my family were persecuted by

the same political entity.

We sought asylum to the "City upon a Hill" in 2005, where millions of mournful people had found their havens for centuries. Guided by my fate, I found an entry-level paralegal position in an immigration law office in the same afternoon when I was granted asylum in 2007. Related to my own experience, I naturally informed my interest in pursuing a career in the law. Just several months later, I was accepted by the paralegal certificate program and the political science department at Queens College. The former introduced a splendid world laying behind the obscure legalese while the latter provided an opportunity to find a way out for my country.

From my work, I gradually realize how vastly my fellow countrymen suffer from the despotism of the Communist regime. From my study, I also gradually accumulate some understandings about the cons and pros of different political systems. Most important, I regained my lost courage and fused my practice and my knowledge into scores of writings posted on my own website. I initially tried to pretend to be "neutral" in my tone so that my website might survive the "Great Fire Wall" imposed by the Chinese government. However, with the skyrocketing of my readership, the Party denied them to access my website from China mainland abruptly last year.

My powerlessness in front of the state machinery once again pushed me to the intersection of my life. Working with hundreds of clients from every corner of the world, my own country in particular, I am exposed to the suffering of ordinary people whose day-to-day struggles guide me to the social justice. Therefore, I profoundly believe I should be an activist rather than an advocate, especially when China is emerging as a global superpower that may be as dangerous and destructive as its ideological predecessor. The only viable solution to help those victims from the largest human rights violator is stretching out our hands to them and telling them they are not alone. Unlike other politically standoff Chinese students who evade the uncomfortable truth in our home country, my

conscience asks me thousands of times to do something for those left-behinds. I thus believe it's the time I shall move forward to a law school where I look to build my practice of law upon the pillars of compassion and humanity.

| **NAME** | **ENGLISH TRANSLATION** |
|---|---|

CI:              David…

VICTOR:          [U/I].

CI:              Da… David that… I was shocked when he opened his mouth.

VICTOR:          [Laughs]

CI:              Hmm, fuck.

VICTOR:          David is a little bit cunning.

CI:              A little bit what?

VICTOR:          He is a little bit cunning.

CI:              Oh.

VICTOR:          He is [U/I] when he talks. So he speaks [U/I].

CI:              He is… he is a deep one. Is the… has the making of a boss. Speaking seamlessly and slowly. Liu Feng Ling shows the edge a lot. But I think she is much lower key now.

VICTOR:          [U/I].

CI:              Right. It is said she is also a **Legend**. A legend. It seems you didn't do Democratic Party (cases) at that time, did you?

VICTOR:          Rarely.

---

| NAME | ENGLISH TRANSLATION |
|------|---------------------|
| CI: | Never did. |
| VICTOR: | We didn't take the initiative to do the Democratic Party **case**. Then if there was any, [U/I]. |
| CI: | I see. |
| VICTOR: | If [U/I], mostly [U/I]. Unless the customer voluntarily [U/I]. Spend that much money [U/I] on a voluntary basis. |
| CI: | Oh. Because that… many… many people have come for five or six years, seven or eight years and are not qualified for ten-year green card. Many… cannot do other ones (cases) except Democratic Party (cases). This situation. |
| VICTOR: | [U/I]. |
| CI: | It seems you… you have very few Fa Lun Gong [ph] (cases). |
| VICTOR: | In fact, I… it is not because we don't' take Fa Lun Gong [ph] (cases), customers… our customers here don't want to do Fa Lun Gong [ph]. |
| CI: | Oh. |
| VICTOR: | Most of our customers here do Christianity. Many friends of theirs do Christianity, then they also do Christianity. Then afterwards… |
| CI: | You just have those few churches. Like: Ming En, Tian Hu… what… what… what… that… that of Tian Hu [ph]. Just those few churches. |
| VICTOR: | So the customers find one by themselves. |
| CI: | Oh, don't care. |

If we decide to take the case, then we will discuss the contract. There are three types of contract: step-by-step, 1000-9000, 0-13000. If the client choose step-by-step, then he must pay $1000 to initiate the case, $1000 for the interview, $1000 for the hearing and $3000 after approval. If the client chooses the 0/1000-9000, he just pays $1000 from scratch to BIA appeal, and $9000 after approval. For 0-13000 the client gives $500 refundable deposit for everything, and pays $13000 after approval. If you want to add a spouse in the middle of proceedings, another $800 - $2000. If a couple apply together, the price would be 1.5 times or double the original price. For cancellation of removal case, $15000 at least. These prices are for affirmative asylum. If a client has been detain in D/ICC custody, a.k.a. defensive asylum, the price would be much higher for additional services like bail, bond hearing, change of venue and so on.

When a contract is formed, the interviewer will input the info client's info into the database. Type of claim, type of contract, three telephone number including client's Chinese home phone. Then the interviewer will assign the case to the one story writer, depending on each writer's competence and workload. The cancellation of removal is an exception because I'm the only one Ms Liu allowed to do it. I tried to let Mengfei to learn how to do this type of cases, but Ms Liu did not allow us. Also, Ann does not know any English, so she can't do defensive asylum case because she can't read the record of credible fear interview between asylum officer and applicant.

One more thing we don't take the case if the client has been here more than a year but less than ten years

The asylum has two kinds: asylum and withholding of
removal. Usually, if you prove your one-year issue, and tell a
good story before immigration judge, you will get asylum and be
eligible to apply for permanent residency one year later. However,
if you can't prove your one-year issue (lack of evidence) or you
have left some records which prove otherwise, you may still not be
granted of asylum, or more likely get withholding of removal. For
withholding of removal, you can work with work authorization card (you
renew annually) and stay here forever. But you can't leave the
States, apply for permanent residency, and petition your immediate
family member elsewhere. The most likely thing is losing the
case. So for a firm like ours, we are not interested in this
group of people at all. However, some law offices in Chinatown
are more than willing to take our "leftover". They would
spend tones of efforts, prepare tons of "documents", and
coach the client more intensely. Still, some of them can get
asylum in full at interview level.

# Moslemi And Associates, Inc

2 East Broadway, 6th Floor, New York, NY 10038
Tel: (212) 226-3960    Fax: (212) 625-2362      AttorneyMoslemi@gmail.com

Warning

If you knowingly file a frivolous application for asylum, **YOU WILL BE BARRED FOREVER** from receiving any benefits under the Immigration and Nationality Act. A frivolous application for asylum is one which contains statements or responses to questions that are deliberately fabricated. Not being granted asylum does not mean that your application is frivolous.

[TRANSLATION]

警告

如果您故意递交虚假的政治庇护申请，您将终生不能享受移民法的一切好处。虚假的政治庇护申请是申请的内容是故意编造的。政治庇护申请未得到批准并不意味着您的申请是虚假的。

政治庇护申请人 签名： _____

日期： _____

# Moslemi and Associates

2 East Broadway, 6FL
New York, NY 10038
Tel: (212) 226-3960    Fax: (212) 625-2362

[TRANSLATION]

## 法 律 咨 询

在您递交任何申请之前，我在此告知您您可能有资格递交的申请种类，政治庇护申请的资格和故意递交虚假的政治庇护申请的严重后果。根据您的具体情况，您可能有资格提出如下申请。

### I  政治庇护

1) 申请政治庇护的资格：如果您在自己的国家因为<u>种族，宗教，国籍，社会团体的成员或政治见解</u>而受到迫害或将来会面临迫害，您将有资格申请政治庇护，申请必须在<u>您来美国一年之内</u>提出除非您符合例外的情况，例外的情况包括生重病或出于情况发生变化，申请政治庇护的理由是在来美国一年之后才出现。

2) 故意递交虚假的政治庇护申请的后果
如果您故意递交虚假的政治庇护申请，您将<u>终生不能接受移民法的一切好处</u>。虚假的政治庇护申请是申请的内容是故意编造的。申请未得到批准并不意味着您的申请是虚假的。

### II  申请移民法第 241 (b)(3) 条不被遣送回原居住国的资格

如果您能证明因为种族，宗教，国籍，社会团体的成员或政治见解，您的生命或人身自由会在被遣送回去的国家受到威胁的话，您有资格申请不被遣返回原居住国。

### III  根据国际反虐待公约的保护申请不被遣返回原居住国的申请资格

如果您能证明如果把您遣返原居住国后，您很可能会受到虐待的话，您将有资格申请国际反虐待公约的保护，申请不被遣返回原居住国。

注：以上只是对有关法律的简要的概述。律师会根据您的具体情况提供详细的咨询。作为律师我强烈鼓励您<u>对移民局和法庭诚实。如果我们了解到或有理由相信您的申请是虚假的，我们将不再代理您</u>。请注意你有责任向法庭证明你所陈述的事实，因此请尽可能地提供详细的陈述和充分的证据。

签名＿＿＿＿＿＿＿＿＿＿＿        日期＿＿＿＿＿＿＿＿＿＿＿

934.363

# Moslemi and Associates

2 East Broadway, 6FL
New York, NY 10038
Tel: (212) 226-3960    Fax: (212) 625-2362

## Legal Advise

Before you file any applications, I hereby advise you the relief that may be available to you and the eligibility for asylum and the severe consequences for knowingly filing a frivolous asylum application. The following relief may be available to you depending on your particular circumstances.

### I. Political Asylum

1) Asylum Eligibility:

   If you have been or will be persecuted in your home country on account of race, religion, nationality, membership in a particular social group, or political opinion, you are eligible to file asylum application and the application must be filed within one year of your arrival in the United States unless the failure is caused by some extraordinary circumstances or the eligibility for asylum arises later beyond one year of arrival due to changed circumstances.

2) Consequences Of Knowingly Filing A Frivolous Application For Asylum:

   If you knowingly file a frivolous application for asylum, **YOU WILL BE BARRED FOREVER** from receiving any benefits under the Immigration and Nationality Act. A frivolous application for asylum is one which contains statements or responses to questions that are deliberately fabricated. Not being granted asylum does not mean that your application is frivolous.

### II. Eligibility for Withholding of Removal under section 241(b)(3) of the INA

If you can establish that your life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion, you are eligible for withholding of removal under section 241(b)(3) of the INA.

### III. Eligibility for Withholding of Removal under the Convention Against Torture

If you can establish that it is more likely than not that you would be tortured if removed to the proposed country of removal, you will be eligible for withholding of removal under the Convention Against Torture.

**Note:** The above is only a brief statement of the law. Counsel will consult with you in detail regarding your rights and your particular circumstances. As counsel, I strongly encourage you to be honest to U.S. government and the Immigration Court. If we have knowledge or have reason to believe that your application is not true, we will not represent you. Please keep in mind that the burden is on you to prove your case. So please provide as much details as possible and as many documents as you can obtain them.

Name: _____         Date: _____

934.362

# Affidavit

State of New York       )
                        ) ss.
County of New York )

I, Wen Xiu Ou, being duly sworn, do hereby state and depose under penalty of perjury that:

1. Before starting to prepare my asylum application, my attorney's office has given me the following warnings regarding frivolous asylum application:

2. If you knowingly file a frivolous application for asylum, **YOU WILL BE BARRED      FOREVER** from receiving any benefits under the Immigration and Nationality Act. A frivolous application for asylum is one which contains statements or responses to questions that are deliberately fabricated. Not being granted asylum does not mean that your application is frivolous.

3. I fully understand the above warning and the consequences of filing a frivolous asylum application.

4. Next, my attorney's office has prepared my asylum application form based on the information I provided to the office and the asylum application has been read back to me in the language I understand and it is true and accurate. The written statement attached to my asylum application form is written by myself according to my attorney's legal advice and has been reviewed and revised by my attorney. After my attorney's review and revision, my attorney has gone over with me sentence by sentence. I swear that the written statement is a true, accurate and complete statement of what have happened to me and my family in my country. There is no false information in my application or the attached statement. I am warned by my attorney that I must be very truthful to the U.S. government and must not provide any false information or fake document. The documents I have submitted to my attorney's office are all genuine. I further promise that all documents I will submit in the future will all be genuine.

[TRANSLATION]

宣誓书

1  在开始帮我准备我的政治庇护申请之前，我的律师事务所已经给我以下警告

   言，如果我故意递交虚假庇护申请：

934.20

2. 如果您故意递交虚假的政治庇护申请，您将终生不能享受移民法的一切好处。虚假的政治庇护申请是申请的内容是故意编造的。政治庇护申请未得到批准并不意味着您的申请是虚假的；

3. 我完全理解以上警告，以及如果递交虚假政治庇护申请的后果；

4. 之后，我的律师楼根据我提供给律师楼的信息为我填写了政治庇护申请表。然后，我的律师楼将我的政治庇护申请表用我能懂的语言读给我听，我确信它们是真实的 准确的。附在政治庇护申请表之后的书面陈述是我根据我律师的法律建议自己写的，我的律师对它进行了审查和修改。我的律师审查和修改后，和我逐句核对，我发誓书面陈述是我以及我的家人在中国所遭受的遭遇的真实 准确和完整的陈述。我的申请表以及附在之后的书面陈述没有任何虚假的内容。我的律师警告我说，我必须对美国政府诚实，我一定不能向美国政府提供任何虚假的信息和假造的文件。我向我的律师楼已经提供的所有文件都是真实的。并且我保证我之后将要递交的任何文件也都是真实的。

客人签名： 欧文秀

日期： 4月1日

Sworn to before me this
1st day of April 2010

_____
Notary Public

AI MOU LIN
Notary Public, State of New York
No. 01LI6085994
Qualified in Queens County
Certificate Filed In New York County
Commission Expires 01/13/20 11

# 政 治 庇 护 申 请 表 信 息

1. 姓名＿＿＿＿＿＿＿＿＿＿＿＿ A 号码＿＿＿＿＿＿＿＿＿＿ 婚姻状况＿＿＿＿＿＿ 生日＿＿＿＿
   出生城市和国家＿＿＿＿＿＿＿＿ 民族＿＿＿＿＿ 宗教信仰＿＿＿＿＿＿＿＿
2. 离开中国时间年月日＿＿＿＿＿＿ 到美时间年月日＿＿＿＿＿＿ 入境地点＿＿＿＿ 若被抓，释放日
   期＿＿＿＿＿＿＿ 是否曾经来美＿＿＿ 若注明时间和地点＿＿＿＿＿＿＿＿＿ I-94 号码＿＿＿＿＿＿＿＿
3. 如果有用护照出国，护照号码是＿＿＿＿＿＿＿＿＿＿＿＿＿ 有效期为 ＿＿＿＿＿＿＿＿＿＿＿
4. 美国住址＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
5. 中国详细地址＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
6. 五年内的其它住址（标明年月）＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
   ＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
   ＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
7. 从中国到美国的路线（详细填写清楚在各个地方停留的时间）
   ＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
   ＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
8. 若有结婚，结婚年月日＿＿＿＿＿＿ 结婚地点＿＿＿＿＿＿ 配偶姓名＿＿＿＿＿＿＿＿＿＿＿
   配偶生日＿＿＿＿＿＿＿＿＿ 现在住址＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
   若在美国，A#或社会号，何时何地何以何种身份入境＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
   配偶如果有申请过政治庇护，是什么理由，现在什么状况＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
9. 孩了＿＿＿个，分别的姓名，生日，地点＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
   若在美，A#或社会号是什么，何时何地何身份入境＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
10. 国语还是福州话＿＿＿＿＿＿＿＿＿＿＿
11. 中国大陆电话＿＿＿＿＿＿＿＿＿＿＿
12. 家人若在美国有过庇护申请，写明 A 号码，申请时间，状况＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
13. 是否在其他国家申请过政治庇护＿＿＿＿＿＿＿ 是否有其他国家的居民居留身份＿＿＿＿＿＿＿＿

➤ 教育状况：

| 学校名称 | 小学初中高中大学 | 地址（简单写） | 开始年份 | 结束年份 |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

➤ 过去五年的工作：

| 公司名称和地址 | 职业 | 开始年月 | 结束年月 |
|---|---|---|---|
| | | | |
| | | | |

➤ 父母及兄弟姐妹情况：

| 关系 | 姓名 | 出生国家城市 | 现居住城市（若去世请注明） |
|---|---|---|---|
| 母亲 | | | |
| 父亲 | | | |
| 兄弟姐妹 | | | |
| | | | |
| | | | |

**申请政治庇护的简要原因**(请在这里详细写你政治庇护的得理由，写清楚你所受的迫害，具体情节都尽量写清楚，律师楼要根据你提供的情况为你整理故事)＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

Information about Political Asylum Application Form

Name _____ A number_____ Marriage status_____ Date of Birth_____

City and country of birth_____ Ethnicity _____ Religion_____

Date left China_____ Date of arriving in the US_____ Place of entry_____ If
    arrested, date of release_____ If you had come before_____ if yes, please write time
    and place_____ I-94 No._____

If left China using a passport, passport No._____ Expire date_____

Address in the US _____

Detailed address in China_____

Other addresses live in the past 5 years( year
    month)_____
    _____

Route from China to US(write down clearly time stayed at each place in detail)

_____
    _____

If marriage , date of marriage_____ place of marriage_____ name of spouse_____

Husband's date of birth_____ current address_____

If in US, A No. or SSN, when , where and in what status entered US_____

Mandarin or Fuzhou_____

Telephone No. in China

If you have family members applied for asylum in US, write down A No. , time of application,
    status

If you applied for asylum in other countries_____ if you have residency status in other
    countries

Education

| School name | Primary, Junior high, senior high, or college | Address(in precise) | Year started | Year ended |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Work in past five years

| Company name and address | Occupation | Year started | Year ended |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

Information about parents and simblings

| Relationship | Name | City and country of birth | Current city of residence (note if dead) |
|---|---|---|---|
| Mother | | | |
| Father | | | |
| Simblings | | | |
| | | | |
| | | | |

Brief reason for asylum application(please write here in detail your reason for asylum application, describe clearly persecution you suffered, describe the details as clearly as possible.  Your attorney will compile your statement according to information you give)

_____

_____

_____

# 刘 枫 凌 律 师 楼
## ATTORNEY AT LAW
2 East Broadway, 6FL
New York, NY 10038
Tel: (212) 226-3960   Fax: (212) 625-2362

政治庇护申请所需材料（针对在看，未婚）

**建议提供的材料：**

**本人：** 身份证，户口本，出生公证书，护照

**妻子 或 丈夫：** 身份证（复印件即可）/ 户口本（复印件即可）/出生公证书

（最好直接提供原件）（若客人目前已经在美国登记结婚）

**男友：** 身份证复印件

**子女：** 身份证复印件/出生公证书/出生医学证明/出生纸（若在美国出生）

高中及高中以上学历证明

结婚证/ 结婚公证书/ 声明书

和国内男友或女友合影照

怀孕证明/ 病历

手术后的疾病证明/ 病历

罚款证明/罚款通知单

工作证/ 营业执照

单位或学校开除证明

证言信或声明信(说明本人受害经过) 及信封和声明人的身份证复印件

入境不满一年证明：能证明本人出国前仍在国内的证明，比如 飞机票 登机牌，住旅馆发票，看病药费单，购物发票，银行开户，合同，会员证等证据驾照，暂住证，工作证明，保修单，保险费单，学费单，各种罚款收费单，卫生收费，水电费，火车票，汽车票，体检表，银行存取款回执单，及信用卡还款收据，通讯费及上网费收据单.

**注意：** 以上证据清单不是详尽的，仅供参考。申请人有义务提供和案子有关的所有证据，不管是否在以上清单上。以上清单不能够千篇一律的适用于每个案子，不同案情所需证据不同，律师会具体建议。尤其要注意，不是清单上的每个证据都需要提供，能提供的就提供，拿不出的就拿不出，不会影响案子，千万不要递交虚假证据。

客人名字＿＿＿＿＿＿＿＿＿

UNCLASSIFIED

LIU FengLing [STC 0491/2800/0407] Law Office

**ATTORNEY AT LAW**

2 East Broadway, 6FL

New York, NY 10038

Tel: (212)226-3960   Fax: (212) 625-2362

Material Needed for Political Asylum Application (Family Planning, single)

Suggested materials that needs to be provided:

Yourself: Identification Card, Household Register, Birth Certificate, Passport

Spouse: Identification Card (Copy is fine)/ Household Register (Copy is fine)/ Birth Certificate (Best to provide originals) (If client has already registered for marriage in the US)

Boyfriend: Copy of identification Card

Sons/Daughters: Copy of identification Card/ Notarized Birth Certificate/ Birth Certificate/ Birth Certificate (If born in the US)

Proof of education level of high school or above

Marriage Certificate/ Notarized Marriage Certificate/ Statement

Photos taken with boyfriend or girlfriend in [China]

Proof of Pregnancy/ Medical Records

Proof of Fine/ Notification of Fine

Work Certificate/ Business License

Proof of Dismissal from Work or School

Testimony or Statement (explaining [your] persecution experience) and an envelope, and a copy of the identification card of the person making the statement

Proof of entering the territory for less than a year: Materials that can proof [you] were still in [China] before leaving the country, such as flight tickets, boarding pass, hotel receipts, receipts for seeing a doctor/getting medicine, shopping receipt, opening account in a bank, contracts, membership cards, etc. Driver's license, temporary residence certificate, work certificate, receipt of warranty, insurance statement, tuition receipt, receipt for various fines, cleaning fees, utilities, train ticket, body check-up, bank withdrawal/deposit statement, and credit card statements, communication fees and receipt for online services.

4

UNCLASSIFIED

UNCLASSIFIED

Please note: The above list is not thorough, it is for reference only. The applicant is responsible for providing all evidence in relation to the case, despite if it is on the above list or not. Items of the above list cannot be used for every single case, as different cases require different proofs, and the attorney will advice accordingly. Please especially note that it is not necessary to provide every piece of proof stated in the above list; provide the ones [you] can, if [you] can't then [you] can't, it will not affect the case, please do not provide fake proofs.

Client Name: _____

934.277

# 刘 枫 凌 律 师 楼
## ATTORNEY AT LAW
401 Broadway, Suite 1402
New York, NY 10013
Tel: (212) 226-3960    Fax: (212) 625-2362

## 政治庇护申请所用材料（法轮功）

### 建议提供的材料：

本人：身份证，户口本，出生公证书，护照

妻子 或 丈夫：身份证（复印件即可）/ 户口本(复印件即可)/出生公证书（最好直接提供原件）

子女：出生公证书，出生医学证明

结婚证/ 结婚公证书/ 声明书

高中毕业或以上学历的证明

工作证/营业执照

罚款证明/罚款通知单

单位或学校的开除证明

房子或家具被毁的证明

参加法轮功活动证明（照片或者证人。其中照片需要是集体练功照 或参加游行 抗议照片。证人最好能够出庭，证人本人是不是法轮功学员都可以。如果是，更好）

证言信或声明信(说明本人受害经过）及信封和声明人的身份证复印件

入境不满一年证明：能证明本人出国前仍在国内的证明，比如飞机票登机牌，住旅馆发票，看病药费单，购物发票，银行开户，合同，会员证，驾照， 暂住证， 工作证明，保修单， 学费单，各种罚款收费单，卫生收费， 水电费，火车票，汽车票，体检表，银行存取回执单，及信用卡还款收据，通讯费收据单

注意：以上证据清单不是详尽的，仅供参考。申请人有义务提供和案子有关的所有证据，不管是否在以上清单上。以上清单不能够千篇一律的适用于每个案子，不同案情所需证据不同，律师会具体建议。尤其要注意，不是清单上的每个证据都需要提供，能提供的就提供，拿不出的就拿不出，不会影响案子，千万不要递交虚假证据。

934.295

Law Office of Fengling Liu
401 Broadway, Suite 1402
New York, NY 10013 [letterhead on this page]

Document list needed for asylum application (Falun Gong)

Suggested documents to be provided:
Applicant: ID card, household register, notarial birth certificate, passport
Wife or husband: ID card (copy is fine)/household register(copy is fine)/notarial birth
certificate (better to provide the original directly).
Children: notarial birth certificate, medical birth certificate
Marriage certificate/notarial marriage certificate/declaration
Diploma for high school or above education
Employee ID card/business license
Fine receipt/Fine notice
Firing notice from work unit or expel notice from school
Proof that house or furniture are destroyed
Proof of participation in Falun Gong activities (photos or witness. Photos need to be
taken when collectively practicing Falun Gong with a group, or taken during participation
in a demonstration and protest. The witness should better be able to appear in court. It is
OK whether the witness is a Falun Gong member or not. It is better if the witness is a
Falun Gong member.)
Attesting letter or declaration (to describe the author's persecution experience) and the
envelope and the copy of the author's ID card.
Documents to prove you have come to the U.S. less than a year: documents that can
prove that you were still in China before you left China [within one year of filing the
application], such as plane ticket, boarding pass, hotel receipt, medical bills, receipts for
shopping, bank account, contract, membership certificate, driver license, temporary
residence card, employment certificate, warranty, tuition bills, various fines payment
receipts, payment receipt for sanitation, payment receipt for water and electricity, train
ticket, bus ticket, physical examination report, bank transaction slip, payment receipt for
credit card bills, payment receipt for telephone bills.

Attention: The above document list is not exhaustive. It is only for your reference. The
applicant is responsible to provide all documents that are related to their case whether
they are on the above list or not. The above document list is not applicable to every case
universally. Different case requires different documents/evidence. Lawyer will give you
advice specific to your case. You should pay special attention to the fact that not
everything document on the list is required to be provided. Provide whatever you are able
to provide. Those documents you are unable to provide, just don't provide them. This
will not affect your case. You must not provide fraudulent documents.

Attention: The above document list is not exhaustive. It is only for your reference. The
applicant is responsible to provide all documents that are related to their case whether
they are on the above list or not. The above document list is not applicable to every case
universally. Different case requires different documents/evidence. Lawyer will give you

advice specific to your case. You should pay special attention to the fact that not everything document on the list is required to be provided. Provide whatever you are able to provide. Those documents you are unable to provide, just don't provide them. This will not affect your case. You must not provide fraudulent documents.

Client Name_____

Date _____

# 刘 枫 凌 律 师 楼
## ATTORNEY AT LAW
2 East Broadway, Suite 601
New York, NY 10038
Tel: (212) 226-3960    Fax: (212) 625-2362

## 政治庇护申请所用材料（宗教）

### 建议提供的材料：

本人：身份证，户口本，出生公证书（要最新的），护照

妻子 或 丈夫：身份证复印件/ 户口本复印件/出生公证书

子女：出生公证书，出生医学证明

结婚证/ 结婚公证书/ 声明书

高中毕业或以上学历的证明

罚款证明/罚款通知单

宗教受洗证明（最好美国）

参加宗教活动证明（国内教会证明/美国教会证明及照片）

证言信或声明信(说明本人受害经过) 及信封和声明人的身份证复印件

入境不满一年证明：（越靠近出国时间越好，注意被关押时间不要冲突）能证明本人出国前仍在国内的证明，比如飞机票（推荐）， 登机牌，住旅馆发票，看病药费单，购物发票（上面有名字和日期），银行开户，合同，会员证等证据，驾照， 暂住证， 工作证明(单位抬头的纸)

注意：以上证据清单不是详尽的，仅供参考。申请人有义务提供和案子有关的所有证据，不管是否在以上清单上。以上清单不能够千篇一律的适用于每个案子，不同案情所需证据不同，律师会具体建议。尤其要注意，不是清单上的每个证据都需要提供，能提供的就提供，拿不出的就拿不出，不会影响案子，千万不要递交虚假证据。

客人名字_____

日期：_____

934.310

Law Office of Fengling Liu 2 East Broadway, 6th Floor
New York, NY 10038 [letterhead on this page]

Document list needed for asylum application (Religious claim)

Suggested documents to be provided:
Applicant: ID card, household register, notarial birth certificate (the most recent one), passport
Wife or husband: ID card (copy is fine)/household register(copy is fine)/notarial birth certificate
Children: notarial birth certificate, medical birth certificate
Marriage certificate/notarial marriage certificate/declaration
Diploma for high school or above education
Fine receipt/Fine notice
Baptismal certificate (better to be in the U.S.)
Document to show your participation in religious activities (church certificate from China and church certificate in the U.S. and photos)
Attesting letter or declaration (to describe the author's and/or applicant's persecution experience) and the envelope and the copy of the author's ID card.
Documents to prove you have come to the U.S. less than a year: the closer to your departure time, the better, make sure no conflict with your detained time) documents that can prove that you were still in China before you left China [within one year of filing the application], such as plane ticket (recommended), boarding pass, hotel receipt, medical bills, receipts for shopping (there is name and date on it), bank account, contract, membership certificate, driver license, temporary residence card, employment certificate (with work unit's letter head).

Attention: The above document list is not exhausting. It is only for your reference. The applicant is responsible to provide all documents that are related to their case whether they are on the above list or not. The above document list is not applicable to every case universally. Different case requires different documents/evidence. Lawyer will give you advice specific to your case. You should pay special attention to the fact that not everything document on the list is required to be provided. Provide whatever you are able to provide. Those documents you are unable to provide, just don't provide them. This will not affect your case. You must not provide fraudulent documents.
Attention: The above document list is no exhausting. It is only for your reference. The applicant is responsible to provide all documents that are related to their case whether they are on the above list or not. The above document list is not applicable to every case universally. Different case requires different documents/evidence. Lawyer will give you advice specific to your case. You should pay special attention to the fact that not everything document on the list is required to be provided. Provide whatever you are able to provide. Those documents you are unable to provide, just don't provide them. This will not affect your case. You must not provide fraudulent documents.

Client Name_____
Date _____

# 政治庇护申请书 Checklist

## Part 一: 开案

1. 第一步，和客人详细解释递交虚假的政治庇护申请的后果, 确保客人完全明白递交虚假的政治庇护申请的后果.
2. 第二步, 告知客人有关政治庇护的法律, 并让客人阅读办公室准备的有关政治庇护法律的简单介绍, 要确保客人明白并让客人在上面签字.
3. 第三步, 和客人详细的谈话, 通过谈话详细地了解掌握客人方方面面的情况, 尤其是关于客人的申请政治庇护的资格。如果对于客人申请政治庇护的资格有任何怀疑, 去找律师谈看是不是要往下做。
4. 初步填写 I-589 表格；
5. 需要让客人签以下文件：
   - A. G-28
   - B. I-589 Page 9
   - C. Frivolous Warning
6. 需要让客人拍移民局所用的照片 2 张；（也可以拍 4 张，留 2 张在案子里）
7. 让客人自己先初步起草自己的政治庇护申请陈述,要和客人讲解清楚需要包括那些方面以及格式.;
8. 如果是急案子要当天做, 让客人在这里写。基督教案子一般去教会一个月之后来做申请书, 这样问话前才可以拿到教会证明；
9. 布置证据, 尤其要提醒客人提供一年证据。要告诉客人有义务提供一切和案子有关的证据来支持政治庇护申请. 一定要告诉客人如果找不到有些证据也不要惊慌, 只要能解释清楚为什莫找不到, 一定要告诉客人在任何情况下都不能提供虚假的证据.

## Part 二: 做案子期间

1. 客人的申请书草稿拿来之后，要认真审查。如果需要修改, 告诉客人为什莫要修改和如何作修改. 修改后再审查, 一定要确保最终的定稿准确地真实地完整地表达客人的情况.然后, 拿给律师审核；
2. 律师审核后根据律师的建议再作修改, 修改内容 或者如果不需要修改的话, 和客人再核对一遍. 客人的申请书最终准备好后, 需要根据申请书内容和客人核清楚 I-589 表格, 尤其是工作情况；有没有外地躲藏, 若有, 则需要提供住址；若客人的配偶 父母 兄弟姐妹也受到了迫害, 请注意后四页的相关内容；
3. 根据和客人已经审核好的政治庇护申请书，进一步核实所需的证据，确认谁需要提供证言信, 告知客人证言信的具体要求, 并及时 follow up；
4. 以上工作做完以后，需要**及时**把案子交给同事做翻译；
5. 通常律师校对好申请书的翻译和 I-589 表格后，会把案子交回；

6. 案子回来后，需要及时整理好，打印出 I-589 交件，然后根据客人具体的个人情况决定何时寄出申请。比如一年证据的具体时间，客人大概多久可以拿到美国教会证明，客人国内材料的准备情况，客人证言信的进展状况等等。寄出前最好通知客人；

7. 关于证言信：一定要确定客人寄来的几封信，是用不同的 普通的信纸（没有任何的抬头或公章等）写成，落款时间不同，笔迹不同。信可以和国内其他的证据一起从国内寄来，不用分开寄快件，每个写信人附身份证复印件；

8. Follow up with documents and attesting letters. 提醒客人及时提供，不要误了问话/上庭，并要留给同事充裕的时间做翻译交件；

9. 收到客人证据后，要负责把关 核实客人的证据，是否和申请书有冲突，是否是真实的，是否确定可以经得起调查，无误后，准备好 Index, 然后交给别的同事做翻译，整理交件；

10. 要确认客人的证据已经到齐，若还缺证据，要记得提醒客人及时补充提供（如美国的教会证明和照片，或一年证人 affidavit）；

11. I-589 递交后（A.Asylum）收据回来后，要把 A#写在 file 上，通知客人。把指模信息写在 file 上和 database. 问话单来了，要通知客人，顺便催证据(证据可以直接寄到律师楼，但最好写清客人的名字);

   • 对于 **Defensive filing,** 要在第一次见庭后交指模申请单

12. 问话前要 tell client the procedure and things to pay attention to，帮客人安排问话翻译；

13. 问完话以后收回原件，并记录下次取结果的时间。

14. 客人取结果回来后，根据 NTA (Notice to Appear)，如有一年问题，直接做一年证人文件（最好先和客人核实一下该证人是否可以出庭）；

15. 客人见庭后，查是否需要重做 fingerprint 及法庭是否要求补充什么文件；

16. Iff court requires some further documents, comply with the court's requirements and then wait for merit hearing.

[English Translation]

## Political Asylum Application Checklist

Part I: Setting up the file

1. Step 1. You must talk to client in great detail about the consequences of filing a fraudulent political asylum application and you must make sure that client completely understand the consequences of filing a fraudulent political asylum application.

2. Step 2. Tell client about the laws regarding political asylum application and let client read the brief introduction of the laws regarding political asylum application prepared by the office. Make sure client understand and let client sign it.

3. Step 3. Talk to client thoroughly. Through the talk collect detailed and complete information about client's situation in all aspects. Pay special attention to client's eligibility to apply for political asylum. If you have any doubt about client's eligibility, go talk to a lawyer to see if the case should proceed or not.

4. Fill in the I-589 forms as much as possible;

5. You need to let client sign the following documents:

> A: G-28
> B: I-589 Page 9
> C: Frivolous warning

6. You need to let client take 2 photos to be used for I-589 form. (you can let client take 4 photos to be kept in the file)

7. Let client write a tentative draft first about his political asylum application statement. You have to explain to client the aspects he/she needs to cover and the format.

8. If the case is very urgent, you need to do it the same day. Let client write his/her draft here. For religious case, the application should be prepared after the client has attended church for one month. This way client can obtain the church certificate by the time he/her needs to go for asylum interview.

9. Tell client to provide documents.  Especially, you need to remind client to provide documents to prove his one year issue. You should tell client that he or she is responsible to provide all the documents related to his/her case to support his/her political asylum application. You must tell client that if he/she cannot find some document, don't be panic. All he/she needs to do is to explain why he/she cannot locate it. You must tell client that he/she must not provide fraudulent documents under any circumstances.

Part II. During the process of preparing the case

1. After client hands in the draft for his/her statement, you should review it conscienciously. If it needs to be revised, tell client why and how to revise it. After revision, review it again. You must make sure that the finalized statement accurately, truthfully and completely reflects client's situation. Then bring it to the lawyer for review.

2. After the lawyer reviews it, revise it according to the lawyer's advice. After revision or when no revision is needed, verify with client again. After the client's application is finalized, you need to verify the I-589 form based on the contents of the application. Pay special attention to client's work history, and whether client hid outside. If so, provide the address. If client's spouse, parents and brother and sister also suffered persecution, please pay attention to the related contents of the last four pages of the application form.

3. Based on the finalized statement for political asylum application that is verified with client, further verify the required documents and verify who needs to provide attesting letters. Tell client the detailed requirements for attesting letters and follow up timely.
4. After the above work is finished, you need to give the file to your colleague for translation.

5. Usually after the lawyer reviews the translation of the statement and the I-589 form, he/she will return the file to you.

6. After the case is returned to you, you need to organize the file timely and print I-589 and make it ready for submission. Then decide when to submit the application based on client's individual situation. For example, the time on the one year evidence, how long client can get the church certificate from the church in the U.S., the progress on collecting documents from client's home country, the progress on client's attesting letters, etc. You'd better notify client before you submit the application.

7. About the attesting letter, you must make sure that the several attesting letters received are written on different regular letter papers (no letter head nor stamp, etc.), the dates are different and the handwritings are different. The letters can be mailed together with other documents from client's home country. It doesn't have to be mailed separately in express mail. Every letter should be attached with a copy of the author's ID card.

8. Follow up with documents and attesting letters. Remind client to provide the documents timely and don't be late for the asylum interview or court hearing. You also need to leave plenty of time for your colleague to translate the documents and organize them for submission.

9. After receiving the documents, you are responsible for verifying the client's documents to check if there is any conflict with the application, whether it is genuine or not, whether the documents can withhold investigation. After making sure there is no mistake, prepare Index and give the file to colleague for translation and organize them for submission.

10. You have to make sure that client's documents are complete. If there is still document that is needed to be provided, remember to remind client to provide in a timely manner. ( such as church certificate and photos from the church in the U.S., or affidavit from the one year witness)

11. After the I-589 is submitted (for Affirmative Asylum cases), the receipt will be mailed to our office. After receiving the receipt, write A# on client's file and notify client. Write the fingerprint information on client's file and in the database. After receiving the interview notice, notify client and follow up with any document that has not provided yet. (the document can be sent directly to the law office but the sender better addresses to the client's name)

For defensive filing, you should file fingerprint request after the first court hearing.

12. Before the asylum interview, you need to tell client the procedure and things to pay attention to and help client arrange for interpreter for the asylum interview.

13. After the asylum interview, take back the original documents and write down the time for client to go back to pick up the result.

14. After the client picks up the result and returns to the office, based on the Notice to Appear, if there is one year issue, directly prepare the one year witness affidavit for submission. (You'd better confirm with client whether the witness can appear in court or not)

15. After client has court hearing, check to see if client needs to redo the fingerprint and whether court requires any supplementary documents.

16. If court requires some further documents, comply with the court's requirements and then wait for merit hearing.

（证言信要求）

## 证言信

尊敬的法官大人：

第一段　写写信人是谁，和申请人是什么关系

第二段　简要 写你所知道的申请人在中国发生的事情，简要概述。

第三段　写申请人逃到美国后，其家里的情况，是否又有事情发生，交待清楚。

第四段　写申请人回去会有什么样的后果。

第五段　宣誓自己所说的都是事实，并愿负一切法律责任。

签名

日期

---

证言信写好后，可先传真至律师楼，律师确定可以后再邮寄。

传真号：（212）625-2362

邮寄地址：

(客人的姓名)
2 E. Broadway, 6th FL
New York, NY 10038
USA

---

注：
- 证明人要随信附上个人身份证件的复印件
- 所有证言信不需要单独寄，可以装在一个信封里
- 国内写的信都要从中国寄出来，直接寄到律师楼
- 这只是一个大概的要求，并不是每封信都必须这样

而且：
- 抬头:尊敬的法官大人 (可写可不写)
- 简单介绍一下在中国发生的事情，但不能抄袭申请人的故事
- 和申请人故事不能有矛盾,无论是时间还是事件,主要事件不能遗漏
- 写证言信的人本人亲身经历的事情一定要详细写(如流产/结扎/被关等)

934.293

(Requirement for attesting letters)
Attesting Letters

Respected Honorable Judge:
First paragragh: write who the author is, the relationship to the applicant.
Second paragragh: briefly write what you know about what happened to the applicant in China, keep it brief and consise.
Third paragragh: write about applicant's situation at home after applicant fled to the U.S., whether there are any more incidents, state clearly.
Fourth paragragh: write what will happen to the applicant if he goes back.
Fifth paragragh: swear what you have said are all facts and is willing to take all legal responsibilities for what you have said.
<div align="center">Signature
Date</div>

After the attesting letters are drafted, you may first fax to our law office. After our attorney reviews and makes sure it is OK, you can mail to us.
Fax number: (212) 625-2362.

Mailing address:
(client's name)
2 East Broadway, 6th Floor
New York, NY 10038
USA

Note:
   The author should attach a copy of his ID card to the letter.
   The letters need not be mailed separately and can be put in one envelope and mail out.
   If the letters are from China, it should be mailed from China directly to the law office.
   This is only a guideline, not every letter is required to follow this format.
Moreover:
   The beginning "Respected Honorable Judge" is not mandatory.
   Give a brief account of what had happened in China. You cannot copy the applicant's story.
   You cannot contradict the applicant's story, no matter on time or on events, and there should not be omission of major events.
   The author must provide details about his/her personal experience (such as abortion/sterilization/being detained, etc.)

# 法轮功故事的大概要点

**1.** 为什么要练习法轮功（为了治病，受家人影响，朋友亲友同学介绍，或因为什么事情等）

**2.** 怎么样开始学习的（怎么学练，在哪里练，什么时候）

**3.** 平时怎么练习（怎么练，在哪里练，一周几次，每次练多久，多少人一起练，有无效果）

**4.** 政府是否允许（简单交待知道政府是不允许的）

**5.** 被抓过程（什么时间，地方被抓，被谁抓，怎样被抓，怎样带走，带到哪里）

**6.** 被审问，毒打，关押过程（什么时候审问，谁审，怎么审问，怎么答，怎么打，关在什么地方，能不能吃好睡好，审问几次）

**7.** 被公安放出来的情况（有没有托人送钱，花钱保释，放时有没有条件，例如写保证书，要求报到等）

**8.** 被放出来后的生活（公安严密监视，是否报到，不能再练功。其他功友的情况。）

**9.** 来美国后家里的情况（是否公安到家找人等）

**10.** 美国练功生活（有没有继续练功，哪里练功，是否参加集体练功和抗议游行活动等）

---------------------------------------------------------------------------------

要点：清楚陈述的目的，不写无用的信息，详细写关键的部分，如参加练功活动事实、受到迫害的整个经过等。

特别提醒：本文仅供参考之用，并不对您做任何的限制或规定，请您结合自己的实际情况写出自己的陈述。再次提醒您，根据法律规定，如果您做出任何虚假陈述，都将可能导致您终身不得享受《移民法》的任何好处。我们拒绝代理任何虚假陈述。

说明：

1. 填写该表格的目的是为了让律师楼了解您申请政治庇护的原因。考虑到客人的文字表达能力，如果您认为您有需要让律师楼帮助您整理政治庇护申请的陈述，请您填好此表格并交给帮助您的律师助理。

2. 如果您认为自己有能力可以写下政治庇护申请的陈述，您不需要填写该表格，可以直接将写好的陈述交给帮助您的律师助理。当然，律师会根据法律给予您适当的修改建议，让移民局和法官更直白清楚的了解您申请政治庇护的理由。我们律师楼鼓励您自己根据实际情况写申请陈述。

3. 请务必确保您是根据自己的真实情况填写此表格。如果您提交虚假或者不实的申请，导致的后果是一辈子不能享受任何美国移民法的福利。我们律师楼假定您填写在这份表格上的内容都是真实的，律师楼只根据这些内容帮助您整理陈述。

4. 如果您有任何的问题、补充或者要求，请向帮助您的律师助理提出。律师楼帮您整理好的陈述，将在与您确认后提交至移民局或者移民法官。请务必确保最终陈述的全部内容都是事实。

本表格是针对因为法轮功而提出政治庇护申请的客人。如果您是因为其他理由提出申请，请向帮助您的律师助理索要相关表格。

1）您有否练习过法轮功？

（　）有。开始时间：　　　年　　　月

如何接触：（　）经人介绍：介绍人：

（　）阅读资料：资料名称：

（　）其他途径：

练习原因：（　）强身健体

（　）治疗疾病：我从　　　（时间）患有

（　）好奇心

（　）其他原因：

练习频率：

练习地点：（　）自己家

（　）功友家

（　）其他：

练习同伴：（　）自己练

（　）和功友练

（　）没有。

2）您有否参与过其他的法轮功活动？

（　）发传单。如何得到传单：（　）功友处

（　）自己印制

（　）其他：

934.298

发传单时间：从　　年　　　月开始。
发传单地点：
发传单方式：（）偷偷塞进信箱
　　　　　　（）发给路人
　　　　　　（）其他：
（）抗议游行。时间：　　年　　　　月　　　　日
　　　　　　　地点：
　　　　　　　同伴：
（）其他活动：
（）没有。

3）您是否因为法轮功受到中国政府迫害？
（）有。时间：　　年 _ 月　　　日
　　　　地点：
　　　　您当时在做什么：
　　　　发生事情的经过：
（）没有。

4）如果您被逮捕：
关押地点：
关押时间：
有否被审问：（）有。
　　　　　　（）没有。
有否被打。（）有。如何被打：
　　　　　（）没有。
有否受到其他虐待：（）有。如何被虐待：
　　　　　　　　　（）没有。
如何被释放：（）保金。
　　　　　　（）签保证书。
　　　　　　（）定期报道。
　　　　　　（）其他：

5）如果您逃走：
如何逃走：
逃到哪去：
躲了多久：
期间发生了什么事：

6）如果您被关押后释放出来，还是否与政府有其他接触：
（）有：（）定期报道。频率：
　　　（）警察来家里骚扰。频率：
　　　（）其他：

934.299

（）没有。

7）您离开中国后，家里是否发生其他事？
（）有。
（）没有。


8）您还有什么要补充在您政治庇护申请陈述中的？




请再次确认您所提供的所有信息都是真实无误的。

请在这里签名，表示您已经确认律师楼帮助您整理的政治庇护申请陈述所有内容都
是真实无误的。

_____            年    月    日

934.300

Major points for Falun Gong story
1. why did practice Falun Gong? (in order to cure a disease, under the influence of family members, through the introduction of relatives or classmates, or because of some events, etc.)
2. how did you start to learn to practice? (how do you learn to practice, where did you practice, when did you practice)
3. how did you practice generally? (how to practice, where did you practice, how many times a week, how many people practiced together, whether it has effect)
4. whether the government allows it or not (briefly state you know that the government does not allow it)
5. the process of being arrested (when, where, who, how were you arrested and how were you taken away and where were you taken)
6. the process of being interrogated, beaten, and detained (when were you interrogated, by whom, how were you interrogated, how you answer, how were you beaten, where were you detained, whether you could sleep well and eat well, how many times were you interrogated)
7. how were you released by the police (whether you family spent money, or paid a bond, whether there is condition for the release, such as writing a guarantee letter, were required to report, etc.
8. your life after being released (police monitor you, whether you report to police, unable to practice, and other Falun Gong practitioner's situation)
9. situation at home after you came to the U.S. (whether police went to your home to look for you, etc.)
10. your practice of Falun Gong in the U.S. (whether you continued to practice Falun Gong, where did you practice, whether you participated in collective practice with a group and participated in demonstrations and protests, etc.)

Key points: be clear about the purpose of your statement, do not write useless information, give details about the critical part, such as facts about your participation in Falun Gong practice and the complete process of the persecution, etc.

Special attention: the above is for your reference only. It does not mean to restrict you in any way. Please write your statement based on your own actual situation. Remind you one more time, according to the law, if you make any false statement, it may cause you to be prohibited from receiving any benefits under the immigration law. We refuse to represent any false/fraudulent statement.

Instructions:
1. The purpose of filling in this form is to let the law office find out why you apply for political asylum. Considering the client's ability to put things in writing, if you think that you need the law office help you prepare the statement for your political asylum application, please fill in this form and then give it to the legal assistant who is helping you.
2. If you think that you are able to write on your own the statement for your political asylum application, you don't need to fill in this form, you can directly hand in the statement you write to the legal assistant who is helping you. Of course, lawyer will give you advice on how to revise your statement according the

requirement of the law, so that the immigration service and the judge can understand the reasons for your political asylum application more directly and clearly. Our law office encourages you to write by yourself the statement for your application according to your actual/truthful situation.

3. You must make sure that you fill in this form according to your own truthful situation. If you provide false or untrue application, the consequence will be that you cannot enjoy any benefit of the immigration law. Our law office assumes that the contents you fill in this form are all true. The law office will only prepare your statement according to the contents in this form.

4. If you have any questions, supplements or requirements, please raise them to the legal assistant who is helping you. The statement prepared by our law office on your behalf will be submitted to the immigration service or the immigration judge after we verify with you. You must make sure the complete content in the finalized statement are true.

This form is for clients who apply for political asylum application because of Falun Gong. If you apply for political asylum application because of other reasons, please ask the legal assistant who is helping you for the correct form.

1) Have you ever practiced Falun Gong?
   ( ) Yes, starting time: _____ year _____ month
   How did have contact with Falun Gong:
   ( ) through introduction of others, the person who introduced you _____
   ( ) through reading materials, name of the material _____
   ( ) through other means _____
   Reason for practicing Falun Gong:
   ( ) For good health and strong body
   ( ) For curing disease: I was inflicted with _____disease since _____(time)
   ( ) For curiority
   ( ) For other reasons _____
   Frequency of practice:
   Location of practice:
   ( ) Own home
   ( ) Falun Gong fellow's home
   ( ) Other location _____
   Falun Gong fellows to practice with:
   ( ) Practice by myself
   ( ) Practice with other fellows
( ) No.

2) Have you attended other Falun Gong activities?
   ( ) Pass out Falun Gong flyers.
   How did you get the flyers:
   ( ) From Falun Gong fellows
   ( ) Made by myself
   ( ) Other channel _____

When did you pass out the flyers?  Start from _____ year _____ month
Where did you pass out the flyers? _____
How did you pass out the flyers?
(  ) Secretly put into the mailbox
(  ) Give to the people on the street
(  ) Other:
(  ) Demonstration and protest, time: ____year _____month _____ date
                                   Location:
                                   Falun Gong fellows who went with you:

(  ) Other activities:
(  ) No.


3) Did you suffer persecution by the Chinese government because of Falun Gong?
(  ) Yes. Time:  ____year _____ month _____date
               Location:
               What were you doing then?
               How did it happen?
(  ) No.


4) If you were arrested:
    Place where you were detained:
    Time you were detained:
    Whether you were interrogated: (  ) yes
                                   (  ) no.
    Whether you were beaten: (  ) yes, how were you mistreated/tortured:
                          (  ) no.
    Whether you suffered other type of mistreatment/torture: (  ) yes, how?
                                        (  ) no.
    How were you released?  (  ) bailed out
                             (  )  signed guarantee letter
                             (  )  report regularly
                             (  ) other:


5) If you ran away: How did you run away?
                       Where did you run away?
                       How long did you hide?
                       What happened while you were in hiding?


6) If you were released after being detained, did you have any more contact with the government?
(  ) yes,  (  ) report regularly, frequency:
               (  ) police came to my home to harass me, frequency:
               (  ) other:
               (  ) No.


7) After you left China, anything happened to your family?

(   ) yes
(   ) no.

8) Do you have anything else to put to your statement for your political asylum application?

Please make sure one more time that the information you have provided are true and accurate.

Please sign here to indicate that all the contents in the statement prepared by the law office on your behalf for your political asylum application are true and accurate.

_____               year          month        date

说明：

1. 填写该表格的目的是为了让律师楼了解您申请政治庇护的原因。考虑到客人的文字表达能力，如果您认为您有需要让律师楼帮助您整理政治庇护申请的陈述，请您填好此表格并交给帮助您的律师助理。

2. 如果您认为自己有能力可以写下政治庇护申请的陈述，您不需要填写该表格，可以直接将写好的陈述交给帮助您的律师助理。当然，律师会根据法律给予您适当的修改建议，让移民局和法官更直白清楚的了解您申请政治庇护的理由。我们律师楼鼓励您自己根据实际情况写申请陈述。

3. 请务必确保您是根据自己的真实情况填写此表格。如果您提交虚假或者不实的申请，导致的后果是一辈子不能享受任何美国移民法的福利。我们律师楼假定您填写在这份表格上的内容都是真实的，律师楼只根据这些内容帮助您整理陈述。

4. 如果您有任何的问题、补充或者要求，请向帮助您的律师助理提出。律师楼帮您整理好的陈述，将在与您确认后提交至移民局或者移民法官。请务必确保最终陈述的全部内容都是事实。


本表格是针对因为计划生育政策而提出政治庇护申请的客人。如果您是因为其他理由提出申请，请向帮助您的律师助理索要相关表格。


1）您和您的配偶（男女朋友）是什么时候、如何认识的？

    配偶（男女朋友名字）：
    认识的时间：
    如何认识：


2）您或者您的妻子（女友）是否有被政府强迫上过节育环？
    （）有。时间：第一次：      年      月
                    第二次：      年      月
    （）没有。


3）您或者您的妻子（女友）是否有被政府强迫参加过妇检？
    （）有。时间：从      年      月到      年      月
                从      年      月到      年      月
        参加频率：      一次
    （）没有。


4）您或者您的妻子（女友）是否有违反或者反对过当地的计划生育政策？
    （）有。违反或者反对原因：（）没办法登记结婚，因为：
                            （）还想要更多的孩子。
                            （）其他：

如何违反或者反对：（）私自取环。时间：　　年　　月
地点：
（）违法怀孕。时间：　　年　　月
如何发现：
（）其他：
（）没有。

5）您或者您的妻子（女友）是如何试着逃避或者反对计划生育政策的执行？
（）躲藏：从　　年　　月到　　年　　月躲在
从　　年　　月到　　年　　月躲在
（）向政府抗议：　　年　　月　　日
如何抗议：

6）您或者您的妻子（女友）是否有因为试着逃避或者反对计划生育政策的执行受到政府的迫害或者惧怕政府的迫害？
（）有。时间：　　年　　月　　日
地点：
事情经过：

（）没有。

7）您认为如果现在把您送回中国会发生什么事？


8）您还有什么要补充在您政治庇护申请陈述中的？




请再次确认您所提供的所有信息都是真实无误的。

请在这里签名，表示您已经确认律师楼帮助您整理的政治庇护申请陈述所有内容都是真实无误的。


_____        　　年　　　月　　　日


934.306

# 计划生育未婚流产故事的大概要点

**1.** 怎么认识男朋友的（什么时间认识，朋友亲友同学介绍，或因为什么事情等）

**2.** 怎样交往的（什么时候开始交往，双方父母是否知道并同意）

**3.** 同居生活（什么时候开始同居，在哪里同居，有没有想过结婚，为什么不结婚，年龄不到还是不想很早结婚）

**4.** 怀孕（怎么发现怀孕的，发现怀孕前有没有想要孩子，发现怀孕后想不想要生下来）

**5.** 决定要不要这个孩子（政府让步让生，你为什么一定要生，决定怎么偷生，偷生生活）

**6.** 被抓过程（什么时间，地方被抓，被谁抓，怎样被抓，怎样带走，带到哪里）

**7.** 被流产过程（在哪里流产，流产的详细过程）

**8.** 流产后的情况（对身体伤害，对心理上的伤害，或者分手等）

**9.** 为什么要来美国（不愿在伤心地生活，要来自由国家多生孩子）

---------------------------------------------------------------------------------------

<u>要点</u>：清楚陈述的目的，不写无用的信息，详细写关键的部分，如被抓走被流产或引产的详细经过等。

**特别提醒：** 本文仅供参考之用，并不对您做任何的限制或规定，请您结合自己的实际情况写出自己的陈述。再次提醒您，根据法律规定，如果您做出任何虚假陈述，都将可能导致您终身不得享受《移民法》的任何好处。我们拒绝代理任何虚假陈述。

934.307

# 计划生育已婚男性故事的大概要点

**1.** 家庭情况（什么时候结婚，有几个孩子等）

**2.** 生第一个孩子后的情况（不让再生，有强迫上环及孕检等）

**3.** 还想不想再要孩子（为什么想要，想什么办法偷生等）

**4.** 怎么偷生（怎么发现怀孕的，想什么办法生孩子，躲在什么地方）

**5.** 被抓过程（什么时间，地方被抓，怎么被发现，要抓你太太，你做了些什么，计生办怎么对待你，怎么关你，打你等）

**6.** 流产后的情况（对身体伤害，对心理上的伤害等）

**7.** 为什么要来美国（在中国无法再生孩子，要来自由国家多生孩子）

---

--------------------------------------------------------------------------------

<u>要点</u>：清楚陈述的目的，不写无用的信息，详细写关键的部分，如被抓过程，被打被关过程的整个经过等。

**特别提醒**：本文仅供参考之用，并不对您做任何的限制或规定，请您结合自己的实际情况写出自己的陈述。再次提醒您，根据法律规定，如果您做出任何虚假陈述，都将可能导致您终身不得享受《移民法》的任何好处。我们拒绝代理任何虚假陈述。

# 计划生育已婚女性故事的大概要点

**1.** 家庭情况（什么时候结婚，有几个孩子等）

**2.** 生第一个孩子后的情况（不让再生，有强迫上环及孕检等）

**3.** 还想不想再要孩子（为什么想要，想什么办法偷生等）

**4.** 怎么偷生（怎么发现怀孕的，想什么办法生孩子）

**5.** 被抓过程（什么时间，地方被抓，怎么被发现，你做了些什么，计生办怎么对待你，怎么样带走）

**6.** 被流产过程（在哪里流产，流产的详细过程）

**7.** 流产后的情况（对身体伤害，对心理上的伤害等）

**8.** 为什么要来美国（在中国无法再生孩子，要来自由国家多生孩子）

--------------------------------------------------------------------------------

<u>要点</u>：清楚陈述的目的，不写无用的信息，详细写关键的部分，如被抓走被流产或引产的详细经过等。

特别提醒：本文仅供参考之用，并不对您做任何的限制或规定，请您结合自己的实际情况写出自己的陈述。再次提醒您，根据法律规定，如果您做出任何虚假陈述，都将可能导致您终身不得享受《移民法》的任何好处。我们拒绝代理任何虚假陈述。

Instructions:

1. The purpose of filling in this form is to let the law office find out why you apply for political asylum. Considering the client's ability to put things in writing, if you think that you need the law office help you prepare the statement for your political asylum application, please fill in this form and then give it to the legal assistant who is helping you.

2. If you think that you are able to write on your own the statement for your political asylum application, you don't need to fill in this form, you can directly hand in the statement you write to the legal assistant who is helping you. Of course, lawyer will give you relevant advice on how to revise your statement according the requirement of the law, so that the immigration service and the judge can understand the reasons for your political asylum application more directly and clearly. Our law office encourages you to write by yourself the statement for your application according to your actual/truthful situation.

3. You must make sure that you fill in this form according to your own truthful situation. If you provide false or untrue application, the consequence will be that you cannot enjoy any benefit of the immigration law. Our law office assumes that the contents you fill in this form are all true. The law office will only prepare your statement according to the contents in this form.

4. If you have any questions, supplements or requirements, please raise them to the legal assistant who is helping you. The statement prepared by our law office on your behalf will be submitted to the immigration service or the immigration judge after we verify with you. You must make sure the complete content in the finalized statement are true.

This form is for clients who apply for political asylum application on account of family planning policy. If you apply for political asylum application because of other reasons, please ask the legal assistant who is helping you for the correct form.

1) When and how did you get to know your spouse (girlfriend/boyfriend)?
   Spouse's name (girlfriend/boyfriend's name):
   When:
   How:

2) Have you or your wife (girlfriend) ever been forced by the government to have an IUD insertion?
   ( ) yes. When: First time:        year        month
                    Second time:     year        month
   ( ) no.

3) Have you or your wife (girlfriend) ever been forced by the government to attend gynecological checkup?
   ( ) yes, when: from        year    Month to     year    month.
                   From        year    month to     year    month.
            How often:   Once every _____
   ( ) no.

4) Have you or your wife (girlfriend) ever been violated or resisted the local family planning policy?

( ) yes. Reason for violation or resistance:
>>>>( ) unable to register marriage, because _____
>>>>( ) want to have more children
>>>>( ) other reason:
>>How did you violate or resist the policy?
>>>>( ) Have the IUD taken out without permission. When:    year    month
>>>>( ) getting pregnant in violation of the policy. When:    year    month
>>>>>>>>How did they find out?
>>>>( ) Other:
( ) no.
5) How did you or your wife (girlfriend) attempt to avoid or resist the enforcement of the family planning policy?
>( ) Going into hiding: hid at _____ from    year    month to    year        month
>>>>>>Hid at _____ from    year    month  to    year        month
>( ) Protest to the government:    year    month    date
>>>>>>How:
6) Have you or your wife (girlfriend) suffered persecution or fear for persecution by the government for attempt to avoid or resist the enforcement of the family planning policy?
>( ) yes. When:    year    month    date
>>>>Where:
>>>>How it happened:
>( ) No.
7) What do you think will happen to you if you are sent back to China now?
8) Do you have anything else you want to put into your statement for your political asylum application?

Please make sure one more time that the information you have provided are true and accurate.

Please sign here to indicate that all the contents in the statement prepared by the law office on your behalf for your political asylum application are true and accurate.

_____                    year         month        date


Major points to be covered in writing story on family planning claim based on forced abortion for unmarried applicant
1. How did you get to know your boyfriend? (when did you get to know each other, through the introduction of friends or relatives, or because of some special occasions, etc.)
2. How did you date? (when did you start dating, whether parents on both sides know and approve the relationship.)
3. Cohabitation life (when did you start cohabitation, where did you cohabit, whether you two ever thought about getting married, why were you not getting married, is it because you were underage or you did not want to get married early?)

4. Pregnancy (how did you find out the pregnancy? Whether you want to have children before you found out your pregnancy, did you want to give birth to the child after you discovered your pregnancy?)

5. Did you decide to keep this child? (did the government allow you to give birth to this child, why did you decide to give birth to this child, how did you plan to give birth to the child secretly, your life while trying to give birth to the child secretly)

6. How were you arrested? (when, where and by whom, and how were you arrested? How were you taken away and where were you taken to?)

7. How were you undergone the abortion (where did you have the abortion and the detailed process of the abortion)

8. Your situation after the abortion (harm to your body, harm to your mind, or broken up, etc.)

9. Why did you decide to come to the U.S.? (did not want to live in the heart broken place and want to go to a free country to have more children)

Key points: be clear about the purpose of your statement, do not write useless Major points to be covered in writing story on family planning claim based on forced abortion for unmarried applicant

1. How did you get to know your boyfriend? (when did you get to know each other, through the introduction of friends or relatives, or because of some special occasions, etc.)

2. How did you date? (when did you start dating, whether parents on both sides know and approve the relationship.)

3. Cohabitation life (when did you start cohabitation, where did you cohabit, whether you two ever thought about getting married, why were you not getting married, is it because you were underage or you did not want to get married early?)

4. Pregnancy (how did you find out the pregnancy? Whether you want to have children before you found out your pregnancy, did you want to give birth to the child after you discovered your pregnancy?)

5. Did you decide to keep this child? (did the government allow you to give birth to this child, why did you decide to give birth to this child, how did you plan to give birth to the child secretly, your life while trying to give birth to the child secretly)

6. How were you arrested? (when, where and by whom, and how were you arrested? How were you taken away and where were you taken to?)

7. How were you undergone the abortion (where did you have the abortion and the detailed process of the abortion)

8. Your situation after the abortion (harm to your body, harm to your mind, or broken up, etc.)

9. Why did you decide to come to the U.S.? (did not want to live in the heart broken place and want to go to a free country to have more children)

Key points: be clear about the purpose of your statement, do not write useless information, give details about the critical part, such as the detailed process on how you were taken away, the abortion or induced labor, etc.

Special attention: the above is for your reference only. It does not mean to restrict you in any way. Please write your statement based on your own actual situation. Remind you

one more time, according to the law, if you make any false statement, it may cause you to be prohibited from receiving any benefits under the immigration law. We refuse to represent any false/fraudulent statement.


Major points to be covered in writing story on family planning claim for married male applicant
1. Family situation (when did you get married, how many children did you have, etc.)
2. The situation after the birth of the first child (not allowed to have more children, was forced to have IUD insertion and gynecological checkup, etc.)
3. Whether you want more children (why did you want more children? What means did you think about in having children secretly, etc.)
4. How did you have children secretly? (how did you find out pregnancy, by what means you would have the child, where did you hide)
5. How were you caught (when, where, how were you found, what did you do when they tried to take your wife away? How did the family planning office treat you, how did they detain you and beat you, etc.)
6. The situation after the abortion (harm to your body, harm to your mind, etc.)
7.  Why did you come to the U.S. (unable to have any more child in China, want to come to the free country to have more children).

Key points: be clear about the purpose of your statement, do not write useless information, give details about the critical part, such as the complete and detailed process on how you were taken away, how you were beaten and detained, etc.

Special attention: the above is for your reference only. It does not mean to restrict you in any way. Please write your statement based on your own actual situation. Remind you one more time, according to the law, if you make any false statement, it may cause you to be prohibited from receiving any benefits under the immigration law. We refuse to represent any false/fraudulent statement.

Major points to be covered in writing story on family planning claim for married female applicant
1. Family situation (when did you get married, how many children did you have, etc.)
2. The situation after the birth of the first child (not allowed to have more children, was forced to have IUD insertion and gynecological checkup, etc.)
3. Whether you want more children (why did you want more children? What means did you think about in having children secretly, etc.)
4. How did you have children secretly? (how did you find out pregnancy, by what means you would have the child, where did you hide)
5. How were you caught (when, where, how were you found, what did you do? How did the family planning office treat you, how did they take you away)
6. The forced abortion process (where did you have abortion, the detailed process of the abortion)
7. The situation after the abortion (harm to your body, harm to your mind, etc.)

8.  Why did you come to the U.S. (unable to have any more child in China, want to come to the free country to have more children).

Key points: be clear about the purpose of your statement, do not write useless information, give details about the critical part, such as the complete and detailed process on how you were taken away, how you were forced to undergo abortion or induced labor, etc.

Special attention: the above is for your reference only. It does not mean to restrict you in any way. Please write your statement based on your own actual situation. Remind you one more time, according to the law, if you make any false statement, it may cause you to be prohibited from receiving any benefits under the immigration law. We refuse to represent any false/fraudulent statement.

# 宗教故事的大概要点

**1.** 为什么要信教（从小家庭信仰，教友介绍，什么事情感动等）

**2.** 怎么样开始信教的（怎么了解，接触到教会，什么时候去的教会）

**3.** 平时怎么进行教会活动（怎么聚会，做什么，受洗，传福音等）

**4.** 政府是否允许（为什么不参加政府教会）

**5.** 被抓过程（什么时间，地方被抓，被谁抓，怎样被抓，怎样带走，带到哪里）

**6.** 被审问，毒打，关押过程（什么时候审问，谁审，怎么审问，怎么答，怎么打，关在什么地方，能不能吃好睡好，审问几次）

**7.** 被公安放出来的情况（有没有托人送钱，花钱保释，放时有没有条件，例如写保证书，要求报到等）

**8.** 被放出来后的生活（公安严密监视，是否报到，不能再信教。其他教友的情况。）

**9.** 来美国后家里的情况（是否公安到家找人等）

**10.** 美国教会生活（简略写）

--------------------------------------------------------------------------------

<u>要点</u>：清楚陈述的目的，不写无用的信息，详细写关键的部分，如参加教会活动事实、受到迫害的整个经过等。

**特别提醒：** 本文仅供参考之用，并不对您做任何的限制或规定，请您结合自己的实际情况写出自己的陈述。再次提醒您，根据法律规定，如果您做出任何虚假陈述，都将可能导致您终身不得享受《移民法》的任何好处。我们拒绝代理任何虚假陈述。

934.312

说明：
1. 填写该表格的目的是为了让律师楼了解您申请政治庇护的原因。考虑到客人的文字表达能力，如果您认为您有需要让律师楼帮助您整理政治庇护申请的陈述，请您填好此表格并交给帮助您的律师助理。
2. 如果您认为自己有能力可以写下政治庇护申请的陈述，您不需要填写该表格，可以直接将写好的陈述交给帮助您的律师助理。当然，律师会根据法律给予您适当的修改建议，让移民局和法官更直白清楚的了解您申请政治庇护的理由。我们律师楼鼓励您自己根据实际情况写申请陈述。
3. 请务必确保您是根据自己的真实情况填写此表格。如果您提交虚假或者不实的申请，导致的后果是一辈子不能享受任何美国移民法的福利。我们律师楼假定您填写在这份表格上的内容都是真实的，律师楼只根据这些内容帮助您整理陈述。
4. 如果您有任何的问题、补充或者要求，请向帮助您的律师助理提出。律师楼帮您整理好的陈述，将在与您确认后提交至移民局或者移民法官。请务必确保最终陈述的全部内容都是事实。

本表格是针对因为法轮功而提出宗教信仰申请的客人。如果您是因为其他理由提出申请，请向帮助您的律师助理索要相关表格。

1) 您有否宗教信仰？
　　（）有。（）基督教。（）天主教。（）佛教。（）道教。（）其他：
　　　　一开始时间：　　　　年　　　月
　　　　如何接触：（）经人介绍：介绍人：
　　　　　　　　　（）家庭教育。
　　　　　　　　　（）其他途径。
　　　　信仰原因：（）家庭影响。
　　　　　　　　　（）介绍人说服。
　　　　　　　　　（）其他原因。
　　　　有否受洗：（）有。时间：　　　年　　　月　　　日
　　　　　　　　　　　　地点：
　　　　　　　　　　　　施洗人：
　　　　　　　　　（）没有。
　　　　教会性质：（）家庭教会。名称：
　　　　　　　　　（）政府教会。名称：
　　　　教会人数：
　　　　聚会地点：
　　　　聚会频率：
　　　　聚会时的活动：
　　（）没有。

2）您有否参与过其他的宗教活动？
　　　　（）发传单。如何得到传单：（）牧师或教友处
　　　　　　　　　　　　　　　　　　（）自己印制
　　　　　　　　　　　　　　　　　　（）其他：
　　　　　　　　　发传单时间：从　　年　　月开始。
　　　　　　　　　发传单地点：
　　　　　　　　　发传单方式：（）偷偷塞进信箱
　　　　　　　　　　　　　　　　（）发给路人
　　　　　　　　　　　　　　　　（）其他：
　　　　（）抗议游行。时间：　　　年　　　　月　　　　日
　　　　　　　　　地点：
　　　　　　　　　同伴：
　　　　（）其他活动：
　　　　（）没有。

3）您是否因为宗教信仰受到中国政府迫害？
　　　　（）有。时间：　　　年　　月　　　　日
　　　　　　　　　地点：
　　　　　　　　　您当时在做什么：
　　　　　　　　　发生事情的经过：
　　　　（）没有。

4）如果您被逮捕：
　　　　关押地点：
　　　　关押时间：
　　　　有否被审问：（）有。
　　　　　　　　　　（）没有。
　　　　有否被打：（）有。如何被打：
　　　　　　　　　（）没有。
　　　　有否受到其他虐待：（）有。如何被虐待：
　　　　　　　　　　　　　（）没有。
　　　　如何被释放：（）保金。
　　　　　　　　　　（）签保证书。
　　　　　　　　　　（）定期报道。
　　　　　　　　　　（）其他：

5）如果您逃走：
　　　　如何逃走：
　　　　逃到哪去：
　　　　躲了多久：
　　　　期间发生了什么事：

6）如果您被关押后释放出来，还是否与政府有其他接触：

（ ）有： （ ）定期报道。频率：

（ ）警察来家里骚扰。频率：

（ ）其他：

（ ）没有。

7）您离开中国后，家里是否发生其他事？

（ ）有。

（ ）没有。

8）您还有什么要补充在您政治庇护申请陈述中的？

请再次确认您所提供的所有信息都是真实无误的。

请在这里签名，表示您已经确认律师楼帮助您整理的政治庇护申请陈述所有内容都
是真实无误的。    —

_____                     年      月      日

934.315

[Translation] P312
The major points to be covered in writing story on religious claim
1. Why did you decide to believe in religion? (follow family's belief since childhood, through the introduction of church members, being deeply moved by something, etc.)
2. How did you start to believe in religion? (how did you learn and have contact with this religion, when did you start to go to the church)
3. How did you carry out church activities normally? (how did you meet, what did you do, baptism, spreading Gospels, etc.)
4. Whether the government allow your church to exist? (why did you not attend the government church)
5. How did you get caught? (when, where, by whom and how, how were you taken away and where were you taken away)
6. The process of your being interrogated, beaten and detained (when were you interrogated, who interrogated you, how were you interrogated, how did you answer, how did they beat you, where were you detained, could you eat well and sleep well, how many times were you interrogated)
7. How did you get released by police (whether money is spent, bond is paid, whether there is condition for release, for example, write guarantee letter, were required to report, etc.)
8. Your life after being released (police watched you closely, whether you reported to police or not. Unable to practice religion. The situation of other church members)
9. Situation at home after you came to the U.S. (whether the police came to your home to look for you, etc.)
10. Your life in the U.S. church (write briefly)

Key points: be clear about the purpose of your statement, do not write useless information, give details about the critical part, such as the detailed facts about your church activities and the complete and detailed process about your persecution, etc.

Special attention: the above is for your reference only. It does not mean to restrict you in any way. Please write your statement based on your own actual situation. Remind you one more time, according to the law, if you make any false statement, it may cause you to be prohibited from receiving any benefits under the immigration law. We refuse to represent any false/fraudulent statement.

Instructions:
1. The purpose of filling in this form is to let the law office find out why you apply for political asylum. Considering the client's ability to put things in writing, if you think that you need the law office help you prepare the statement for your political asylum application, please fill in this form and then give it to the legal assistant who is helping you.

2. If you think that you are able to write on your own the statement for your political asylum application, you don't need to fill in this form, you can directly hand in the statement you write to the legal assistant who is helping you. Of course,

lawyer will give you advice on how to revise your statement according the requirement of the law, so that the immigration service and the judge can understand the reasons for your political asylum application more directly and clearly. Our law office encourages you to write by yourself the statement for your application according to your actual/truthful situation.

3. You must make sure that you fill in this form according to your own truthful situation. If you provide false or untrue application, the consequence will be that you cannot enjoy any benefit of the immigration law. Our law office assumes that the contents you fill in this form are all true. The law office will only prepare your statement according to the contents in this form.

4. If you have any questions, supplements or requirements, please raise them to the legal assistant who is helping you. The statement prepared by our law office on your behalf will be submitted to the immigration service or the immigration judge after we verify with you. You must make sure the complete content in the finalized statement are true.

This form is for clients who apply for political asylum application based on religion because of Falun Gong. If you apply for political asylum application because of other reasons, please ask the legal assistant who is helping you for the correct form.

1) Do you have religious faith?
   ( ) yes,  ( ) Christianity  ( ) Catholicism  ( ) Buddhism  ( ) Dao religion  ( ) other:
        Stating time:     year     month
        How did you have contact with it?
        ( ) through the introduction of others: the person who introduced you:
        ( ) through family influence
        ( ) through other means
        Whether you were baptized: ( ) yes, when:     year     month     date
                                         ( ) location
                                         ( ) person who baptized you:
                                         ( ) no.
        The nature of your church:  ( ) family house church, name:
                                ( ) government church, name:
          How many people in your church?
          Where did you meet?
          How often you meet?
          Activities when you meted:
        ( ) no.
2) Have you ever participated in other church activities?
   ( )

2) Have you attended other Falun Gong activities?
   ( ) Pass out Falun Gong flyers.
        How did you get the flyers:
        ( ) From pastor or church fellows
        ( ) Printed by myself

(  ) Other means:
   When did you pass out the flyers?  Start from _____ year _____ month
   Where did you pass out the flyers? _____
   How did you pass out the flyers?
   (  ) Secretly put into the mailbox
   (  ) Give to the people on the street
   (  ) Other:
(  ) Demonstration and protest, when: ____year _____month _____ date
                                 where:
                                 church fellows who went with you:
(  ) Other activities:
(  ) No.

3) Did you suffer persecution by the Chinese government because of religious belief?
 (  ) Yes. when:  ____year _____ month _____date
           where:
           What were you doing then?
           How did it happen?
(  ) No.

4) If you were arrested:
   Place where you were detained:
   How long were you detained:
   Whether you were interrogated: (  ) yes
                              (  ) no.
   Whether you were beaten: (  ) yes, how were you beaten?
                        (  ) no.
   Whether you suffered other type of mistreatment/torture:
                          (  ) yes, how were you mistreated/tortured?
                        (  ) no.
   How were you released?  (  ) bailed out
                        (  ) signed guarantee letter
                        (  ) report regularly
                        (  ) other:

5) If you ran away: How did you run away?
                  Where did you run away?
                  How long did you hide?
                  What happened while you were in hiding?

6) If you were released after being detained, did you have any more contact with the government?
 (  ) yes,  (  ) report regularly, how often:
           (  ) police came to my home to harass me, how often:
           (  ) othe
(  ) No.

7) After you left China, anything happened to your family?
  (   ) yes
  (   ) no.

8) Do you have anything else to put to your statement for your political asylum application?

Please make sure one more time that the information you have provided are true and accurate.

Please sign here to indicate that all the contents in the statement prepared by the law office on your behalf for your political asylum application are true and accurate.

_____             year        month       date

FD-302a (Rev. 05-08-10)

281E-NY-302120-302

Continuation of FD-302 of  Proffer of Mengfei YU                          , On  03/02/2012 , Page  3 of 6

Internet and found LI's information to be correct. LI was very
worried that the same thing would also happen to LIU's firm. After
hearing about the Boston incident, "Harry" became very concerned and
said, "I will talk to Fengling LIU." LI advised "Harry" that he
("Harry") must stop doing certain things from now on. In the
meantime, YU and the other two paralegals were all fearful of their
own future: "Victor" (Tianlong YOU) wanted to obtain a permanent
residency ("green card") in the U.S., "Betty" (Beibei XU) wanted to
return to China, and YU wanted LIU to sponsor her a H1B visa.

    YU did not know exactly when LIU changed her firm's name from
"Fengling LIU Attorney At Law" to "Moslemi & Associates." By the
time that YU returned to the office in March 2009 from one month of
leave, the firm had a new name and a new policy for processing
political asylum applications. Under the new policy, the clients
must write their own statements first and then the paralegals would
revise them. The only exception would be if the clients were
illiterate. Both "Harry" and Fengling LIU instructed the paralegals
to give the firm's "writing samples" to clients in order to help
them write their stories. According to YU, "Harry" was the one who
drafted the various "writing samples" and was very proud of his
work.

    LIU trained the paralegals about her firm's new policy procedure
either by oral instructions or in Word Perfect documents. After the
firm's name change, LIU stopped coming to the office on a regular
basis. Her claim was that she wanted to spend more time with her
family. As a result, LIU delegated the "story review" responsibility
to 1)Feng LI, 2)her brother "Harry," and 3) her sister "Lucy," in
that order. LIU also stopped signing all political asylum
applications.

    Even though the firm's name was changed and LIU was no longer
reviewing her clients' persecution stories and signing their
applications, LIU is still the owner of her firm and she does not
like outsiders know about this. YU knew about this fact because Troy
Moslemi, the attorney whose name is being used as LIU's law firm
title, told everyone that he was by no means in charge of the
office. Therefore, he was not the "go-to" person for any
decision-making issues. After his wife stopped coming to the office,
"David" took on the office manager position. YU, however, had seen
"David" call LIU directly for help if he could not answer a
question.

**File Cleaning**

FD-302a (Rev. 05-08-10)

281E-NY-302120-302

Continuation of FD-302 of _Third Proffer of Mengfei YU_____ , On _03/12/2012_ , Page _4_ of _4_

his/her home country to be considered an asylum applicant under
Christian persecution. Even though most of YU's clients were not
baptized Christians from China, Pastor SHE insisted that they must
be all baptized in her church if they would like her to testify as a
witness. Pastor SHE charged several hundred dollars per client for
each Christening. Mi-An Church is the other church that most Fujian
Chinese asylum seekers attend. The church also has several "expert
witnesses" and two different locations.

**Study Guides for Asylum Interviews**

YU briefly went over each asylum interview study guideline from
LIU's firm with the AUSAs and the agents:

• Falun Gong study guide written by Harry LIU (Fengling LIU's
brother) and Feng LI.
• Protestant and Catholic study guides in "Q&A" format created by
FENG LI.
• Chinese Democracy study guide (for those who want to file under
the category of political persecution for joining the Chinese
Democratic Party).
• Instructions to paralegals on how to write a religion persecution
story after the policy change in LIU's firm in early 2009, written
by Harry LIU.
• Instructions to paralegals on how to write a family planning
persecution story, male married and unmarried versions, female
married and unmarried versions. All four versions were written by
Harry LIU.

YU noted that both Victor and Feng LI tried to convince YU's
husband to file a political asylum application with LIU's firm. They
even went to YU's house once to show him one of the study guides.
YU's husband never filed any.

(7)

Retaining Agreement

Falun Gong Study Guide

※ ※ ← Christian & Catholic Questionaire/
Brandon
created
Study Guide.

the
Christian   Chinese Democracy  Study Guide
Study        on how to              religion
Guide.     — Instruction ~~to~~ Write a Christian

(What about   Persecution Story ⟹ this was
the ones      Harry            after the
created by    Brandon         Policy Change
Harry?)                        in 2009.
~~created~~
how to write  — Instruction on how to write
a statement   a Family Planning Persecution
of family
letters.       (male + female versions)
   Harry ⟹ married &   → married & unmarried
              unmarried
              ⟹ Written by Harry.

           — Falun Gong — Harry
           ① ~~Study~~  — ② Brandon
           Sample

           Vic & Brandon talked to Yu's
           husband for filing a political
           asylum case. Once they came
           & showed a review form to the

[UNCLASSIFIED]

File Number:  281E-NY-302120
Tape, CD or Recording Name/Number:  Torque meets Tom Zhang; 8/31/12


CW:          Oh.

Zhang:       It maybe difficult to get seven to eight clients. Each month, seven to eight… in
             one year, over a hundred. Is that right?

CW:          Really?


Zhang:       Two, each day… eh, two clients each week.

[Background Noise]

Zhang:       It is impossible to get too many clients in the beginning… unless, unless, really,
             this is what has to be done,  find a way to do it with the government, immediately,
             immediately it will bring many clients.

CW:          That's right. I just want to do it, as they did… try to get it done in the interviews, I
             don't want to take them to court, or something like that. For going to the court, it
             will take too long for a case… and it is very difficult to control the timetable for
             the court hearings, and the numbers of the judges in New York cannot match the
             increase of the clients…

Zhang:       That is something concerning the future. No one knows what will be like after a
             few years.

CW:          That's right. [UI]… Just say, if Old Liu keeps his promise, surely, there will be a
             great change in this business…  everyone, [UI]… as for me, my knowledge is
             limited to what I learned before going to the law school. Do you understand?

[Background Noise]

CW:          Therefore, I just say, find some like you, who has been in this business… it will
             be better.

[Background Noise]

CW:          Anyway, what I can tell you is, I am someone who is able to do something, more
             than what any other ordinary law firms can do. Once we have it, going to the
             court, going for an appeal… I can show you the *brief* I wrote.

Zhang:       [UI]…


**5**
[UNCLASSIFIED]

**[UNCLASSIFIED]**

File Number: 281E-NY-302120
Tape, CD or Recording Name/Number: Torque meets Tom Zhang; 8/31/12

CW:     Absolutely, it is much better than theirs. As for me, I got *As* in my *writing* in school. And I also am an editor in *Law Review*. My *writing* skill is much higher than those who work in the law firms in Chinatown. Either the appeals to *BIA* or to the federal courts, or something like that. In addition to that, I think, I am able to take some unfinished cases prepared by others and worked on them alone... [UI]...

Zhang:   Well, if it is true, just take those... just take those... that...

CW:     Just want to have a try.

Zhang:   [UI]...

CW:     Just want to have a try. Right now, I am still learning something about the procedure of immigration laws. However, concerning the writing, the forms, the objectives, the debating skills, I believe, very few lawyers in Chinatown are able to beat me because of my solid foundation. If I keep on what I am doing, I will be among the *top fifteen* upon graduation, or as an honorary student, something like that. Right now, I am applying for a position as an assistant of the district federal judge, and I had passed in my interview. This shows the approval of the judge toward me. For my job will be writing the court verdicts.

Zhang:   I see.

CW:     To write the court verdicts for the judges, or something like that. If the judge says *okay*, edit it, and sign it, that's it.

Zhang:   I see.

CW:     For this point of view, if I go into this business, at least, there will be very few people who are able to compete with me in term of writing briefs for appeals. As for the litigation to the court, I don't have enough confidence. Therefore, going to the court...

Zhang:   Nothing to worry about...

CW:     Because, the stories are under your control. Is that right?

Zhang:   Right.

CW:     You wrote those stories, and you make up the details,

Zhang:   Right.

**Part D. Your Signature**

I certify, under penalty of perjury under the laws of the United States of America, that this application and the evidence submitted with it are all true and correct. Title 18, United States Code, Section 1546(a), provides in part: Whoever knowingly makes under oath, or as permitted under penalty of perjury under Section 1746 of Title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document containing any such false statement or which fails to contain any reasonable basis in law or fact - shall be fined in accordance with this title or imprisoned for up to 25 years. I authorize the release of any information from my immigration record that U.S. Citizenship and Immigration Services (USCIS) needs to determine eligibility for the benefit I am seeking.

> Staple your photograph here or the photograph of the family member to be included on the extra copy of the application submitted for that person.

**WARNING:** Applicants who are in the United States illegally are subject to removal if their asylum or withholding claims are not granted by an asylum officer or an immigration judge. Any information provided in completing this application may be used as a basis for the institution of, or as evidence in, removal proceedings even if the application is later withdrawn. Applicants determined to have knowingly made a frivolous application for asylum will be permanently ineligible for any benefits under the Immigration and Nationality Act. You may not avoid a frivolous finding simply because someone advised you to provide false information in your asylum application. If filing with USCIS, unexcused failure to appear for an appointment to provide biometrics (such as fingerprints) and your biographical information within the time allowed may result in an asylum officer dismissing your asylum application or referring it to an immigration judge. Failure without good cause to provide DHS with biometrics or other biographical information while in removal proceedings may result in your application being found abandoned by the immigration judge. See sections 208(d)(5)(A) and 208(d)(6) of the INA and 8 CFR sections 208.10, 1208.10, 208.20, 1003.47(d) and 1208.20.

| Print your complete name. | Write your name in your native alphabet. |
|---|---|
| LIN, Zhen | 林   贞 |

Did your spouse, parent, or child(ren) assist you in completing this application? ☐ No  ☒ Yes *(If "Yes," list the name and relationship.)*

_____    _____    _____    _____
(Name)                          (Relationship)                    (Name)                          (Relationship)

Did someone other than your spouse, parent, or child(ren) prepare this application?

Asylum applicants may be represented by counsel. Have you been provided with a list of persons who may be available to assist you, at little or no cost, with your asylum claim?

☐ No  ☐ Yes *(If "Yes," complete Part E.)*

☐ No  ☐ Yes

Signature of Applicant *(The person in Part A.I.)*

[   *Lin zhen*   ]
Sign your name so it all appears within the brackets

07/08/2013
Date *(mm/dd/yyyy)*

**Part E. Declaration of Person Preparing Form, if Other Than Applicant, Spouse, Parent, or Child**

I declare that I have prepared this application at the request of the person named in Part D, that the responses provided are based on all information of which I have knowledge, or which was provided to me by the applicant, and that the completed application was read to the applicant in his or her native language or a language he or she understands for verification before he or she signed the application in my presence. I am aware that the knowing placement of false information on the Form I-589 may also subject me to civil penalties under 8 U.S.C. 1324c and/or criminal penalties under 18 U.S.C. 1546(a).

| Signature of Preparer | Print Complete Name of Preparer |
|---|---|
|  | Sam Haddad / Kuzmin & Associates |

| Daytime Telephone Number | Address of Preparer: Street Number and Name |
|---|---|
| ( 212 ) 608-1800 | 225 Broadway |

| Apt. Number | City | State | Zip Code |
|---|---|---|---|
| 2108 | New York | NY | 10007 |



Department of Homeland Security
One Cross Island Plaza
Merrick & Brookville Blvd.
Rosedale, NY 11422-0000

**U.S. Citizenship
and Immigration
Services**

## ASSESSMENT TO REFER

ALIEN NUMBER: ▒▒▒▒▒▒               DATE: March 28, 2006

NAME: ▒▒▒▒▒▒                       ASYLUM OFFICER: ZNY070

COUNTRY: China                     REVIEWING SAO: T. Bunce

LOCATION: ZNY

The applicant indicated that she is a 21-year-old female native and citizen of China
who entered the United States at NYC (IA) on July 18, 2005 and was admitted as
an F1 visa holder. Applicant never attended school. Applicant has timely filed her
I-589 application for asylum.

The applicant fears that she will be persecuted by the Chinese Government on
account of her violation of Chinese One Child Policy.

Applicant testified that she came to the United States because she was forced to
have an abortion in January 2005. Applicant testified that while attending
University in China she left her dorm and went to live with her boyfriend.
Applicant testified that she became pregnant, the authorities found out about her
pregnancy and she was forced to have an abortion. Applicant and her boyfriend
(now her husband) graduated University and came to the United States. Applicant
stated that she does not want to return to China because of the forced abortion.

The applicant's testimony was found not credible for the following reasons:
Applicant's testimony was vague and lacking in detail on material aspects of her
claim. Applicant stated that she was pregnant in 2004, and went to the hospital after
missing her periods to confirm her pregnancy. However, the applicant had no
documentation to support that she was in fact ever pregnant. Applicant testified
that she lived with her boyfriend, but could not adequately state when she began
living with her boyfriend. In addition the applicant's husband who was her
boyfriend at the time gave inconsistent testimony. When questioned as to who he
lived with while at school, applicant stated that he lived with his grandmother and in
his dormitory. Applicant testified that she has seen a doctor and there is a written
Psychiatric report in her claim. However, the applicant could not state how many
times she has seen this doctor and could not state why she was being treated and
was not able to state the name of the medication that has been prescribed for her.
Applicant is well educated and it does not seem plausible nor reasonable that the

applicant would not be able to state what is medically wrong with her and what medications she is taking for her illness.   These issues are material to the applicant's claim of past persecution and her well founded fear of future persecution is she were to return to China.

As the applicant's testimony was not credible in material respects, she has failed to meet her burden of establishing that she is a refugee as required by 8 CFR § 208.13. Consequently, she is ineligible for asylum.

| Bandrich: | It was so stressful. You know? |
|---|---|
| Meng Fei Yu: | I know, I know, [SC] |
| Bandrich: | It was so embarrassing. You were like purple, you just want to hide. |
| Meng Fei Yu: | I understand. |
| Bandrich: | So on the day of the hearing, birth certificate, retranslation of this, retranslation of that. And the fax letter from China, that was the worst, you know. |
| Meng Fei Yu: | Oh, I hated that [SC] |
| Bandrich: | Exactly, I just wanted to die. |
| Meng Fei Yu: | Hi, how are you? Thank you. |
| Bandrich: | Thank you.[SC] |
| Meng Fei Yu: | So, Roha [PH] was in good mood today? |
| Bandrich: | It's not that she wasn't in a good mode, she was like you can't prove it.  She has to weigh…you know.  My client was credible for the one year. The one year witness was credible. And they have a report from the [UI], they don't have the guy that wrote it come in.  They don't have, you know.  So she has to weigh it, so that [UI] much smaller weight.  Even if it was [UI] did not get that much weight, that will get them to a smaller weight.  That kind of thing. |
| Meng Fei Yu: | Ok, I understand. |
| Bandrich: | No other judge will do that. Only her, Bain, maybe Murray. |
| Meng Fei Yu: | But sometimes if she is anger about the evidence, she won't … |
| Bandrich: | I know, I know. |
| Meng Fei Yu: | So did Tushi [PH] reserve the appeal? |
| Bandrich: | No. ..Me? The client.  The [UI]To actually believe that?  It |

5

|  | was so embarrassing, you know. |
|  |  |
| Meng Fei Yu: | I totally understand you. |
|  |  |
| Bandrich: | And the judge was like I am not saying that I believe you.  I'm not saying I believe, it's  about the evidence. |
|  |  |
| Meng Fei Yu: | They don't have enough evidence to show… |
|  |  |
| Bandrich: | To show that they answered not [UI] It was awful.  I have a headache that day.  And I knew it, you know.  And I was praying to God all morning, like, please, please, you know.  And they don't even appreciate it. |
|  |  |
| Meng Fei Yu: | The client? |
|  |  |
| Bandrich: | Yeah, the client, they don't even appreciate it.  Sabina stayed with them yesterday until 7:30 |
|  |  |
| Meng Fei Yu: | Oh, my goodness. |
|  |  |
| Bandrich: | Going over everything.  I told them you owe it to Sabina. [UI] So that they would be grateful to Sabina, you know.  Because she really deserves it. |
|  |  |
| Meng Fei Yu: | Does she know that in her case there are so many problems? |
|  |  |
| Bandrich: | Yes. She knows.  I told her.  That's the only reason she stayed in the office all day. On Monday I told her to get here at 9, she got there at 9:30.  You know it doesn't seem like if you are urgent. At 9:30, she strolled in.  I took somebody else because I wasn't going to wait for her.  And then at 10 o'clock, she said like oh, can I leave? [UI] She's like not caring, you know? And then when I talked to her the letters from [UI] have not arrived yet.  Look at all these problems with your case.  You will need a perfect testimony to win, because you need to deal with all these problems. The only way you can get through this is a perfect testimony, and your testimony right now sucks. |
|  |  |
| Meng Fei Yu: | Yeah, yeah. |
|  |  |
| Bandrich: | So, that's why they changed their attitude and stayed there |

6

| | |
|---|---|
| | all day yesterday, that's why until 7:30, like14 hours |
| Meng Fei Yu: | Oh, my god. |
| Bandrich: | It was horrible. |
| Meng Fei Yu: | You know those things happen every day.  Most of the evidence that [UI] |
| Bandrich: | That's what I am saying, how do you win all the times? |
| Meng Fei Yu: | Sorry? |
| Bandrich: | How do you guys win all the times? I'm telling you….My cases, they are not perfect.  But we think about…At least I try to make the office think about things more.   You know what I mean.  They're more careful.  … they are more carefully thought out.  You know what I mean? |
| Meng Fei Yu: | Yeah. |
| Bandrich: | They're more carefully sought out.  And when I get a client, on an easy case, without any real problems. They give me such a hard time, I get questions and questions.  My clients get asked so many questions, especially in front of all these new judges.   [UI]Wrong, from A to Z everything is wrong, and then they get by it. She is so lucky. |
| Meng Fei Yu: | I tell you another story. Last week, Ms. Anna's case, Wenting told me, on her truth letter, the pastor said this guy didn't go to church for a whole year. |
| Bandrich: | Somebody submitted it? |
| Meng Fei Yu: | Submitted it.  And Anna [PH] still granted it. |
| Bandrich: | I can't believe it.  You see what I am saying? |
| Meng Fei Yu: | Yes. Yes, they really don't deserve. I don't think they deserve. They don't pay attention to their cases, show bad attitudes, so many problems, and still granted. |
| Bandrich: | It is wrong |

7

| | | |
|---|---|---|
| LIU: | Mm, mm, mm. | 嗯 嗯 嗯。 |
| YU: | I thought that he meant to move out there in the future, but then he has too many worries there such as housing, the girlfriend, green card. I don't think it would be easy to go back. | 我感觉应该这意思是以后挺想往那边移的，但他在那边又有太多牵挂了，房子啊，女朋友啦，绿卡啊，我觉得没那么轻易的就，就，就回去。 |
| LIU: | Isn't it true that people are saying, mm, mm, that there is not much of a future in China. I mean there is no particularly great development. There is no, no, particularly bright future or what-have-you. It's, it's that environment… | 国内是不是现在就是说，嗯嗯就是说也没有什特别大的发展啊。不是说，不是说有个特别光明的前途啊什么的，是，就是那个环境… |
| YU: | Not necessarily so. Our classmates who finished schooling here and then went back right after they graduated, and then they found a pretty good law firm in which to make an honest living. It has been about four years now, and they are all in upward trajectory. | 那倒也不是，就是我们的那些同学在这边念完，然后回去，就是一毕业就回去，然后踏踏实实的找了一个不错的律所干，干到现在差不多四年左右的样子，都已经起来了。 |
| LIU: | Oh.  Then… | 哦 那… |
| YU: | Mm, it's about the same. Yeah. They are not too bad. But I might be slightly better than them. But he has a problem. He's not young anymore, isn't he going to be thirty soon? Starting from scratch.. | 嗯 都差不多。对 都还不错，但是问题像我可能比他们稍微好一点点，但是像他有一个问题，他年纪也挺大的，他快30了吗不是？头做起。 |
| LIU: | Mm, mm, mm. | 嗯嗯嗯。 |
| YU: | His background is in immigration law in the United States, and he does not stand | 然后他一直的背景就是这个，在美国这种移民法，然后回去的话，根本就没有用 |

| | | |
|---|---|---|
| | a chance to work in this field after he goes back. This thing does not fit in there. | 武之地，这个东西完全就搭不上边。 |
| LIU: | Oh. | 哦。 |
| YU: | And he cannot lie to people. People asked him what his status was having stayed in the US all those years. He told them that he had a green card. However, once the hiring personnel found out that he has a green card, they would begin to think that he would not stay long. | 然后，又不能跟人家撒谎，人家问他，那你呆在美国这么多年是什么身份啊？他就跟人家说："我拿的是绿卡。"但凡这种招聘的人员一听到他拿绿卡就觉得他肯定是呆不长久的。 |
| LIU: | Ah. | 啊。 |
| YU: | In addition, his salary was pretty high over here, so [people] think that his expectations would be high. High salary, coupled with being an American lawyer with a US green card, people would have a difficult time believing that he would be willing to start from scratch at a Chinese law firm. | 再加上在这边给他的工资又挺高的，就觉得他的期待应该会很高，工资又高，然后又，又是美国的律师，然后又拿着美国的绿卡，就不相信他会在国内的一个律所从头做起。 |
| LIU: | Mm, mm, mm. | 嗯 嗯 嗯。 |
| YU: | So, he encountered this fairly sizable problem. It is not that the market in China is not good, one can find a job in the current market. At any rate, much of the feedback that he gave me was along those lines. And then my, my classmates who are of the same age at this point are basically being approached by headhunters for outbound opportunities. | 所以，他遇到的是这个麻烦比较大，倒不是说国内的这个市场没有利，市场现在找工作还是能找着的。反正他给我反馈的很多信息是这样的，然后我的，我的同学，现在同龄的，基本上做到这儿，都是已经开始被猎头往外挖的那种了。 |

23

FD-302a (Rev. 05-08-10)

281E-NY-302120-302

Continuation of FD-302 of  Fourth Proffer of Mengfei YU                    , On  03/21/2012   , Page  3 of 5

for whom they were supposed to testify. The most important
information for each witness to know was his/her last meeting with
the applicant in China, as well as their first meeting in the U.S.

Vanessa Bandrich, an American attorney from Miami, joined LIU's
firm through Troy Moslemi's recommendation in or about late summer
2009. Unlike Moslemi, Bandrich was very thorough and prepared formal
standard questions for each asylum claim. Bandrich even typed the
answers for each question and tried to be as simple as possible so
as not to confuse each client. As time went on, YU, Bandrich and
Feng LI eventually became close friends and would try to have lunch
together on a weekly basis.

After YU got to know Bandrich, she asked Bandrich on several
occasions as to why Bandrich wanted to do this type of job. Bandrich
always said that the Miami job market was dead but working in New
York was also hard for her since her husband was still living in
Miami. YU was also curious to know whether Bandrich realized the
stories had problems. YU's impression was that at the beginning,
Bandrich knew that not all statements were true because some of the
clients did not show the pain they suffered from the persecutions
they described in China. Bandrich noticed there were problems with
certain stories and doubted they were true.

During their lunch gatherings, Bandrich spoke on several
occasions to Feng LI and YU about the problems and loopholes of the
U.S. immigration law. Bandrich commented she could not believe how
attorneys and judges from the U.S. government believed the same
[persecution] story repeatedly. YU often told LI and Bandrich that
she wanted to leave. At one point, YU even suggested to LI that they
could open their own law firm and it did not need to be
asylum-related. Before she left LIU's firm, YU warned them how risky
it was for them to stay.

After YU left LIU's firm and LI obtained his green card, they
wanted to open a legitimate law firm with Bandrich. Bandrich was
interested at first but then changed her mind. YU believed Bandrich
is currently making good money (salary plus bonus) at Harry LIU's
firm, as her husband and newborn baby are both now living with her
in New York. In the past, Bandrich always said that she wanted to
finish her business in New York and then go back to Miami. According
to YU, Bandrich was concerned that her clients would "ruin
everything." In other words, Bandrich was worried that her clients
would say something that either ruins their own cases in court or
her attorney career. Even though Bandrich learned over time that the

| **NAME** | **ENGLISH TRANSLATION** |
|---|---|
| CI: | This is the fine stuff of Italian [food]. |
| VICTOR: | He came to our office, with Lao Liu [U/I]. |
| CI: | Who are you talking about? Wang Gang? |
| VICTOR: | Right. |
| CI: | Anyway, for the documents, on the complete English, all are Wang Gang. At the beginning, I thought he was a lawyer. |
| VICTOR: | Right. |
| CI: | I thought he was Li Feng. |
| VIVIAN: | Also he could [U/I] no status. |
| VICTOR: | Right. Right. |
| CI: | He has no status? |
| VICTOR: | At the beginning, he has the status, then it became invalid. But in Canada… |
| CI: | Lao Liu did not want to apply for him? |
| VIVIAN: | [U/I]. |
| VICTOR: | Then after two years, Yu Meng Fei wants to [U/I] her boyfriend came here to apply for the political asylum. |



H, B 1st, & then Liu Sponsored his green card.

Brandon was paid the same way but didn't know the split.

Betty was paid ___ ? (Not sure) Was sure that most relatives were paid in Cash.

← Profit sharing ⇒ they're all families. Some of their salaries are quite high.

Who share the profit? who would get bonuses?

estimate: Average weekly

Every month, 20–20 new Clients.

@ b-day party relined that

In Feb, 40 new Clients

10–20 Canceled

20–25 granted @ Court

20–20

Schedule

* (by the gov) yes?

Win @

monthly basis

==She worked there== ==Coz She wanted a== ==Status, not for $.== ==She really was living in America & wants== ==to Stay.==

FD-302 (Rev. 5-8-10)

- 1 of 6 -



**FEDERAL BUREAU OF INVESTIGATION**

Date of entry    08/22/2012

On March 7, 2012, Mengfei YU and her attorney, Patrick Joyce, attended the second proffer meeting in the United State Attorney's Office at the Southern District of New York (SDNY). Also in presence were Assistant United States Attorney (AUSA) Adrianna Berg, AUSA Harris M. Fischman, FBI New York Special Agent (SA) Daniel Park, and SA Melody Shen. After signing the proffer agreement, YU provided the following information:

**Administrative Matters**

Prior to the start of meeting, YU advised that her former colleagues, Wen Ting and Winnie, from Moslemi and Associates organized a birthday party for her in the office on March 4, 2012. YU's actual birthday was on March 3. YU did not learn about her birthday party until the evening of March 2 or March 3 when she got a phone call from Wen Ting.

YU also received an e-mail from "Betty," whose Chinese name is Beibei XU. XU was an attorney who used to work for Fengling LIU but returned to China permanently in 2009. XU asked YU to pay for her New York State Bar's renewal fee from the $600 cash fund she gave to YU prior to her departure. YU explained that many Chinese attorneys maintain an active U.S. bar license in order to make themselves more marketable in China.

At her birthday party, YU learned that LIU's firm had 40 new clients in the month of February alone. YU estimated that on a monthly basis, the firm gets about 20 to 30 new clients and wins about 20 to 25 cases on average.

YU also wanted to clarify three issues from the first meeting. First, only less than 20 percent of the political asylum clients actually filled out the "persecution" part in the intake form. The majority of Fengling LIU's clients simply left this portion blank.

| | | |
|---|---|---|
| Investigation on | 03/07/2012 | at New York, New York, United States (In Person) |
| File # | 281E-NY-302120-302 | Date drafted   03/14/2012 |
| by | SHEN MELODY | |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

3507-03

UNCLASSIFIED

| FD-1023 | FEDERAL BUREAU OF INVESTIGATION |
|---|---|
| (07/24/2010) | CHS REPORTING DOCUMENT |

## HEADER

Source ID: **S-00046406**

Date: **08/01/2012**

Case Agent Name: **Shen,Melody**

Field Office/Division: **New York**

Squad: **C6**

Date of Contact: **07/16/2012**

List all present including yourself. (Do not include the CHS.): SA Daniel Park, SA Melody Shen

Type of Contact: **In Person**

Country: **UNITED STATES**

City: **New York**

State: **New York**

Date of Report: **07/18/2012**

Substantive Case File Number: **281E-NY-302120-A**

Source Reporting:

On 7/16/2012, SA Daniel Park and SA Melody Shen debriefed Capstone, a confidential human source who is in a position to testify. Capstone provided information concerning Feng LI, a former coworker at Moslemi and Associates. LI resigned from Moslemi & Associates in 2/2012 and is currently living in China. He returned to New York on or about 7/4/2012 for a two-week visit and is scheduled to return to China on 7/19/2012.

LI went to the office of Bandrich & Associates last week to visit with Vanessa Bandrich and got a chance to speak with Harry LIU. Both Harry and Vanessa told LI that the asylum business has been slow. They are getting 20 to 30 new clients per month, approximately the same as Moslemi & Associates. Vanessa commented that their new clients are all recent immigrants since people who had been in the U.S. for a while had already applied for asylum. LI had told Capstone in the past that prior to 2006, the illegal immigrants were not sure whether applying for asylum was a safe way to get legal status in the U.S. After 2006, the business took off after clients saw that the firm could get them aslyum status. LI stated that the asylum business was very good in 2006 - 2008. (Agent's note: in prior debriefings, Capstone advised that Feng LI went to Seattle in 2006 and bailed out 10 Chinese citizens who arrived illegally from a boat. After that, more people from that boat went to Feng Ling LIU's firm and all of them received asylum status. LIU became famous and her business boomed.)

LI also told Capstone that Moslemi & Associates hired two American attorneys: Natalie and Robert. According to Vanessa, Robert is nervous and has no prior experience in asylum. One time, Vanessa ran into Robert outside the court room and Robert was nervous because he signed some documents for a client, whose application contained many mistakes. Vanessa told Robert that most people in Moslemi & Associates have no legal experience so he should look out for himself and not rely on Lucy (Feng Ling LIU's sister) and Winnie. Vanessa added that Robert really needs this job and works very hard. He even goes to work on Sundays to prepare clients for interviews.

3507–14

Disc 167: Telephone conversation between Wenting Zheng and Mengfei Yu on 12/20/12

0:00
Yu: Where are you? Are you home?
Zheng: I am home now.
Yu: You got out last night? How did you get out?
Zheng: I was released after the bond hearing. No cash bond, only need someone's signature.
Yu: You don't need to pay cash bond? Feng Li and others need 200000 bond.
Zheng: We don't need to pay cash bond. Only one person in our office needs to pay a cash bond. No, two. We only need to have someone sign the bond.
Yu: They may be different from you. They used houses as collateral. They are lawyers and they may have to take more responsibility. Feng Li used his house as a collateral.
Zheng: How could things be like this? Feng Li already resigned.
Yu: Feng Li came to my home last night and asked Xiao Fei (Yu's husband) to sign for his bond.
Zheng: Xiao Fei should be eligible to sign the bond. Please let him sign for Feng Li.
Yu: I need to consult my lawyer. I am afraid that I myself may be implicated. After I consult my lawyer, I will give him an answer.
Zheng: This thing will stop here. Ann and others are all fine.
Yu: Aren't you in the same office? Why does Ann have no trouble?
Zheng: It is said that the investigation against Fengling Liu started in 2010. On or about the middle of last year, they put a snake in. You know the normal procedure. She went to Lilian to set up her case. Then Lilian brought her to me. Then the case went through the whole process. So only my name is there. I did not expect that Feng Li is there. I only found out after I was bonded out. Lilian's son showed me the charging paper and that was how I found out Feng Li is also arrested.

3:40
Yu: Very very scary. We made an appointment to meet to go to Woodbury for shopping. When I was on the way to pick him up, I called him and FBI picked up the phone. I was almost scared to death. In the afternoon when I was back home and watched the news,…

51:50
Meng Fei: I was shocked too.
Zheng: I know you are more easily scared than me.
Meng Fei: Yes, I was thinking if I were there, I should have been arrested together with him.
Zheng: No. They don't have your photo.
Meng Fei: No, I think they already know who I am.
Zheng: Do they?
Meng Fei: Yes. Later I called Feng Li since I was going to pick him up. Then he did not answer the first time. He knew it was me but the phone was already taken by FBI. Then that FBI said to me, calling my name Meng Fei, that Feng Li was already arrested. I am FBI. I was then very very shocked, shocked. I knew the only thing he could possibly be

involved in. I asked him, "Is Feng Li with you?" He answered, "What do you think? I am using his phone."

FD-302a (Rev. 05-08-10)

281E-NY-302120-302

Continuation of FD-302 of __Fourth Proffer of Mengfei YU_____ , On __03/21/2012__ , Page __5__ of __5__

in LIU's firm. YANG was responsible for the translation of
supporting evidence, such as medical records. WANG, on the other
hand, was the translator for clients' stories and witness letters.
For clients' asylum interviews, the office manager, Harry LIU, had a
list of independent translators to contact. These freelancers would
accompany LIU's clients to the Asylum Office and served as their
interpreters.

**Receptionists**

    LIU hired two receptionists for her office: Hui Rong "Winnie"
JIANG and a Chinese male known to YU as "Xiao LI" or Little LI in
English. According to YU, JIANG still works in LIU's firm and her
job is to answer/transfer phone calls. As for Xiao LI, his job was
to contact prospective clients who were arrested at U.S. borders
(such as Los Angeles) and whose relatives called LIU's firm to get
help. He then transferred the cases to New York and adjusted the
case status.

**Office Managers**

    Fengling LIU's husband, Yuchang "David" MIAO, and brother,
"Harry" LIU, were the two managers in the office when YU started
working for LIU in August 2008. Harry, whose Chinese name is unknown
to YU, and David were the only two family members of LIU working
there at the time. (Agent's note: Harry's Chinese given name is
Shuran.)

    According to YU, David would talk to potential clients first to
determine what type of persecution claim would be most suitable for
them. Harry would conduct this initial screening if David was not
available. Harry was responsible for the preparation of each
client's individual court hearings; he was also in charge of money
matters in the office.

    Once David and Harry collected money from clients, they passed
the in-take forms to YU and Victor. YU recalled that Harry kept
clients' contracts in his office; these documents were separate from
the main case files. YU believed that David's sister, Lilian, may be
the one who currently keeps clients' contracts. David's younger
brother, whose name is unknown to YU, is a driver who charges
additional $100-$200 per client for providing door-to-door
transportation to and from the Asylum Office for interviews.
(Agent's note: the younger brother is Yuliang "Larry" MIAO.)

| | | |
|---|---|---|
| Full-MF-CFP-0287 | Signed by me on 04/26/2011 | No memory at all. |
| Full-MF-CFP-1109 | Signed by me on 04/18/2011 | No memory at all. |
| Full-MF-CFP-1406 | Signed by me on 04/01/2011 | No memory at all. |
| Full-MF-CFP-1514 | Signed by me on 04/15/2011 | No memory at all. |
| Full-MF-CFP-1515 | Signed by me on 03/10/2011 | No memory at all. |
| Full-MF-CFP-1653 | Signed by me on 02/07/2011 | No memory at all. |
| Full-MF-CFP-1688 | Signed by me on 09/30/2010 | No memory at all. |
| Full-MF-CFP-1790 | Signed by me on 03/23/2011 | No memory at all. |
| Full-MF-CFP-1692 | Signed by me on 05/05/2011 | No memory at all. |
| Full-MF-CFP-2203 | Signed by me on 09/22/2010 | No memory at all. |
| Full-MF-CFP-2353 | Signed by me on 10/25/2010 | No memory at all. |
| Full-MF-CFP-2386 | Signed by me on 09/30/2010 | No memory at all. |
| Full-MF-CFP-2387 | Signed by me on 09/27/2010 | No memory at all. |
| Full-MF-CFP-2411 | Signed by me on 05/27/2010 | No memory at all. |
| Full-MF-CFP-2918 | Signed by me on 12/14/2010 | No memory at all. |
| Full-MF-CFP-3053 | Signed by me on 10/12/2010 | No memory at all. |
| Full-MF-CFP-3608 | Signed by me on 10/25/2010 | No memory at all. |
| Full-MF-CFP-3613 | Signed by me on 09/14/2010 | No memory at all. |
| Full-MF-CFP-3774 | Signed by William Wu on 01/19/2011 | I was in China for vacation. No memory at all. |
| Full-MF-CFP-3804 | Signed by me on 02/07/2011 | No memory at all. |
| Full-MF-CFP-3868 | Signed by me on 04/08/2011 | No memory at all. |
| Full-MF-CFP-3872 | Signed by me on 03/10/2011 | No memory at all. |
| Full-MF-CFP-4726 | Signed by me on 08/23/2010 | No memory at all. |
| Full-MF-CFP-5351 | Signed by me on 02/22/2011 | No memory at all. |
| Full-MF-CFP-5394 | Signed by me on 04/19/2011 | No memory at all. |
| Full-MF-CFP-5421 | Signed by me on 01/25/2011. I was in China on 01/25/2011. Paralegal usually put the date when they started the I-589. Attorneys just need sign their names. | No memory at all. |
| Full-MF-CFP-5418 | Signed by me on 01/25/2011. I was in China on 01/25/2011. Paralegal usually put the date when they started the I-589. Attorneys just need sign their names. | No memory at all. |
| Full-MF-CFP-6046 | Signed by me on 09/23/2010 | No memory at all. |
| Full-MF-CFP-6856 | Signed by me on 02/21/2011. I was in China on 01/25/2011. Paralegal usually put the date when they started the I-589. Attorneys just need sign their names. | No memory at all. |
| Full-MF-CFP-7041 | Signed by me on 03/28/2011 | No memory at all. |
| Full-MF-CFP-7056 | Signed by me on 03/16/2011 | No memory at all. |
| Full-MF-CFP-7106 | Signed by me on 03/21/2011 | No memory at all. |
| Full-MF-CFP-7181 | Signed by me on 11/16/2011 | No memory at all. |
| Full-MF-CFP-7194 | Signed by me on 10/04/2010 | No memory at all. |
| Full-MF-CFP-8409 | Signed by me on 04/25/2011 | No memory at all. |
| Full-MF-CFP-8768 | Signed by me on 02/24/2011. I was in China on 01/25/2011. Paralegal usually put the date when they started the I-589. Attorneys just need sign their names. | No memory at all. |
| Full-MF-CFP-8769 | Signed by me on 03/04/2011 | No memory at all. |
| Full-MF-CFP-8993 | Signed by me on 03/22/2011 | No memory at all. |
| Full-MF-CFP-9685 | Signed by me on 05/28/2010 | No memory at all. |

I would recognize most of fake applications submitted between August of 2008 and May of 2010, when I was working as paralegal. I would also recognize the fake applications which have individual hearing between May of 2010 to October of 2011. I will review my calendar and keep you updated.

| 2009 | Full-FL-CFP-3012 | Signed by Feng Li on 07/08/2009 | Fake. I wrote this story. Should be Feng Li or Betty who reviewed my draft in 2009. I remember him very clearly. He didn't talk much. Wife's sterilization is true. But he was not arrested, detained and beaten up by family planning officers. I made it up. He never told me he suffered those persecution. Since somebody advised him to pursue family planning claim, he must have suffered such persecution. I also drafted the attesting letters from his wife and other family members based on this story. |
|------|------------------|--------------------------------|------------------|
| | Full-FL-CFP-4070 | Signed by Feng Li on 04/12/2009 | The style of writing seems Victory's. I am not sure. Either Victor or me prepared this application. Feng Li or Beibei Xu reviews our drafts. No particular memory about this application. |
| | Full-FL-CFP-4073 | Signed by Feng Li on 04/02/2009 | Fake. I wrote this story. I made up her romance story pregnancy, and the procedure of persecution and her nightmare. Feng Li or Beibei Xu reviewed the draft. Client didn't tell me any details. She just provided his boyfriend's name. |
| | Full-FL-CFP-0565 | Co-signed by Beibei Xu on 03/09/2009 | Fake. I remember this name. I just drafted the story for her. She didn't provide any details about her persecution. Feng Li or Beibei Xu reviewed the draft. (For those client who really believe Christian, I often talk with them to dig out some details for their story. ) |
| | Full-FL-CFP-3126 | Signed by Feng Li on 05/28/2009 | Fake. I remember his name and face. Should be me who drafted the story. Victor was in China for vacation at that time. Beibei Xu or Feng Li reviewed my draft. The client didn't tell me how he became a christian, where to gather, how he was arrested. I made them up. |
| | Full-FL-CFP-3128 | Signed by Feng Li on 07/06/2009 | Fake. I remember his name and face. I made up the story and attesting letters. He didn't tell me about his grandmother and sisters. Feng Li reviewed my draft. Beibei Xu has left the firm. |
| 2011 | Full-FL-CFP-1877 | Signed by Feng Li on 04/13/2009 | Victor filled the form and drafted the statements. Not sure it's fraud or not. |
| | Full-FL-CFP-3692 | Signed by Feng Li on 07/01/2009 | Fake. Victor prepared the package and drafted the statement. He talked to me about this case. I remember this applicant because his wife's name is special. She is from Inner Mongolia. The applicant did have trouble in China because they violated the family planning policy. But he was not detained for 3 days and beaten up. Victor made up this part. Feng Li reviewed the draft. |
| | Full-FL-CFP-4073 | Signed by Feng Li on 04/02/2009 | Fake. I wrote this story. I made up her romance story pregnancy, and the procedure of persecution and her nightmare. Client didn't tell me any details. She just provided his boyfriend's name. Feng Li or Beibei Xu reviewed the draft. |

| Full-FL-CFP-4173 | Signed by Feng Li on 04/05/2009 | Fake. I prepared the application package, wrote the statement and attesting letters. Client didn't tell me her persecution. I made up the romance story and the persecution. She just provided me a man's name. Then she copied my draft by hand. Feng Li or Beibei Xu reviewed the draft. |
| --- | --- | --- |
| Full-FL-CFP-4418 | Signed by Feng Li on 07/08/2009 | Fake. I prepared this application package, wrote the statement and attesting letters. Client did have two daughters and wear IUD required by Chinese Government. But she did not suffer forced abortion in China. I made it up for her. Feng Li reviewed the draft. |
| Full-FL-CFP-4420 | Signed by Feng Li on 06/16/2009 | Fake story. I wrote. No detain no beat up. Client never told me about his persecution. |
| Full-FL-CFP-7119 | Signed by Feng Li on 07/14/2009 | Fake Story. She didn't tell me the persecution per se. I made it up. She just copied by hand. I remember this statement and this person. Most single female would apply for family planning. Simple and easy. |
| Full-FL-CFP-7121 | Signed by Feng Li on 06/30/2009 | Partial fake story. I prepared this case. Not remember whether her wife did suffer forced abortion. But the applicant was never detained and beaten up by family planning officers. I made it up. Only the applicant suffered persecution per se, he can be granted for asylum. |
| Full-FL-CFP-7142 | Signed by Feng Li on 07/29/2009 | Nice lady. But fake story. I drafted for her. She just copied by hand. She didn't provide any information about her persecution in China. |
| Full-FL-CFP-0564 | Signed by Feng Li on 04/01/2009 | No specific memory about this client. |
| Full-FL-CFP-2161 | Signed by Feng Li on 09/20/2009 | Victor prepared this application and statement. No specific memory. |
| Full-FL-CFP-4358 | Signed by Feng Li on 06/26/2009 | Fake story. I wrote and he copied by hand. Remember this boy very well. Definitely not a devout Christian. He doesn't go to church very often in US and knows few about Christian. Just a kid. |
| Full-FL-CFP-7141 | Signed by Feng Li on 08/032009 | Fake story. I wrote and she copied. When I drafted the story, she could not provide me her church friend's name. No persecution. But she is christian. |
| Full-FL-CFP-7143 | Signed by Feng Li on 06/01/2009 | No specific memory about this client. |
| Full-FL-CFP-7198 | Signed by Feng Li on 07/12/2009 | Nice lady but fake story. She is Christian. But no persecution. She drafted a statement. Later I rewrote the story and she copied it. She could not provide me a church friend's name when I drafted the story. |

| FULL-MF-CFP-0063 | Signed by Mengfei Yu on 09/02/2010 | No memory at all. Not involved in the initial meeting. Paralegal (Ann or Victor or Tony) prepared the package. Another people (Lucy or Lilian or William) reviewed. I just signed it without reviewing. Never met this client. |
|---|---|---|
| FULL-MF-CFP-0180 | Signed by Mengfei Yu on 10/05/2010 | Same |
| FULL-MF-CFP-0283 | Signed by Mengfei Yu on 08/04/2010 | Same |
| FULL-MF-CFP-1133 | Signed by Mengfei Yu on 08/24/2010 | Same |
| FULL-MF-CFP-1219 | Signed by Mengfei Yu on 07/14/2010 | Same |
| FULL-MF-CFP-1221 | Signed by Mengfei Yu on 07/26/2010 | Same |
| FULL-MF-CFP-2289 | Signed by Mengfei Yu on 08/06/2010 | Same |
| FULL-MF-CFP-3599 | Signed by Mengfei Yu on 08/17/2010 | Same |
| FULL-MF-CFP-4515 | Signed by Mengfei Yu on 09/07/2010 | Same |
| FULL-MF-CFP-4731 | Signed by Mengfei Yu on 08/12/2010 | Same |
| FULL-MF-CFP-4947 | Signed by Mengfei Yu on 08/03/2010 | Same |
| FULL-MF-CFP-5734 | Signed by Mengfei Yu on 09/24/2010 | Same |
| FULL-MF-CFP-6145 | Signed by Mengfei Yu on 08/17/2010 | Same |
| FULL-MF-CFP-6209 | Signed by Mengfei Yu on 09/07/2010 | Same |
| FULL-MF-CFP-6210 | Signed by Mengfei Yu on 08/10/2010 | Same |
| FULL-MF-CFP-7541 | Signed by Mengfei Yu on 09/27/2010 | Same |
| FULL-MF-CFP-7620 | Signed by Mengfei Yu on 08/30/2010 | Same |
| FULL-MF-CFP-9082 | Signed by Mengfei Yu on 07/20/2010 | Same |
| FULL-MF-CFP-9486 | Signed by Mengfei Yu on 09/20/2010 | Same |
| FULL-MF-CFP-9316 | Signed by Mengfei Yu on 09/03/2010 | Same |
| FULL-MF-CFP-3597 | Signed by Mengfei Yu on 06/15/2010 | Same |
| FULL-MF-CFP-0076 | Signed by Mengfei Yu on 09/20/2010 | Same |
| FULL-MF-CFP-0718 | Signed by Mengfei Yu on 11/10/2010 | Same |
| FULL-MF-CFP-0063 | Signed by Mengfei Yu on 07/05/2010 | Same |
| FULL-MF-CFP-0282 | Signed by Mengfei Yu on 09/27/2010 | Same |
| FULL-MF-CFP-0348 | Signed by Mengfei Yu on 09/09/2010 | Same |
| FULL-MF-CFP-0443 | Signed by Mengfei Yu on 09/22/2010 | Same |
| FULL-MF-CFP-0444 | Signed by Mengfei Yu on 10/4/2010 | Same |
| FULL-MF-CFP-0481 | Signed by Mengfei Yu on 10/28/2010 | Same |
| FULL-MF-CFP-1205 | Signed by Mengfei Yu on 08/31/2010 | Same |
| FULL-MF-CFP-1218 | Signed by Mengfei Yu on 06/20/2010 | Same |
| FULL-MF-CFP-1220 | Signed by Mengfei Yu on 07/20/2010 | Same |

| FULL-MF-CFP-2290 | Signed by Mengfei Yu on 04/19/2010 | Same |
|---|---|---|
| FULL-MF-CFP-3518 | Signed by Mengfei Yu on 08/16/2010 | Same |
| FULL-MF-CFP-3596 | Signed by Mengfei Yu on 09/21/2010 | Same |
| FULL-MF-CFP-3598 | Signed by Mengfei Yu on 05/12/2010 | Same |
| FULL-MF-CFP-3734 | Signed by Mengfei Yu on 07/22/2010 | Same |
| FULL-MF-CFP-3735 | Signed by Mengfei Yu on 09/15/2010 | Same |
| FULL-MF-CFP-4509 | Signed by Mengfei Yu on 09/16/2010 | Same |
| FULL-MF-CFP-4510 | Signed by Mengfei Yu on 08/09/2010 | Same |
| FULL-MF-CFP-4730 | Signed by Mengfei Yu on 08/30/2010 | Same |
| FULL-MF-CFP-5197 | Signed by Mengfei Yu on 08/23/2010 | Same |
| FULL-MF-CFP-6089 | Signed by Mengfei Yu on 07/20/2010 | Same |
| FULL-MF-CFP-6211 | Signed by Mengfei Yu on 05/04/2010 | Same |
| FULL-MF-CFP-7535 | Signed by Mengfei Yu on 10/12/2010 | Same |
| FULL-MF-CFP-7536 | Signed by Mengfei Yu on 10/15/2010 | Same |
| FULL-MF-CFP-7552 | Signed by Mengfei Yu on 06/16/2010 | Same |
| FULL-MF-CFP-7554 | Signed by Mengfei Yu on 07/15/2010 | Same |
| FULL-MF-CFP-7614 | Signed by Mengfei Yu on 10/25/2010 | Same |
| FULL-MF-CFP-7619 | Signed by Mengfei Yu on 08/31/2010 | Same |
| FULL-MF-CFP-7734 | Signed by Mengfei Yu on 10/06/2010 | Same |
| FULL-MF-CFP-9051 | Signed by Mengfei Yu on 08/16/2010 | Same |
| FULL-MF-CFP-9102 | Signed by Mengfei Yu on 08/02/2010 | Same |
| FULL-MF-CFP-9125 | Signed by Mengfei Yu on 08/02/2010 | Same |
| FULL-MF-CFP-9253 | Signed by Mengfei Yu on 08/09/2010 | Same |
| FULL-MF-CFP-9254 | Signed by Mengfei Yu on 08/18/2010 | Same |
| FULL-MF-CFP-9317 | Signed by Mengfei Yu on 07/22/2010 | Same |
| FULL-MF-CFP-9382 | Signed by Mengfei Yu on 08/08/2010 | Same |
| FULL-MF-CFP-9878 | Signed by Mengfei Yu on 06/28/2010 | Same |
| FULL-MF-CFP-9880 | Signed by Mengfei Yu on 08/27/2010 | Same |
| FULL-MF-CFP-9660 | Signed by Mengfei Yu on 08/22/2010 | Same |

| FULL-BX-REL-3011 | Victor prepared the package. No specific memory. |
| FULL-BX-REL-3096 | Fake. I prepared the package and wrote the story. She didn't tell me any thing about persecution just copied my draft. |

| | | |
|---|---|---|
| FULL-MF-FG-0537 | Signed by MF on 08/02/2010 | No memory at all. Not involved in the initial meeting. Ann or Wenting prepared the package. Another people (Lucy or Lilian or William) reviewed. I just signed it without reviewing. Never met this client. |
| FULL-MF-FG-1407 | Signed by MF on 03/21/2011 | |
| FULL-MF-FG-1590 | Signed by MF on 04/13/2011 | |
| FULL-MF-FG-2570 | Signed by MF on 01/11/2011 | |
| FULL-MF-FG-3518 | Signed by MF on 07/05/2010 | |
| FULL-MF-FG-3863 | Signed by MF on 02/22/2011 | |
| FULL-MF-FG-4091 | Signed by MF on 04/08/2011 | |
| FULL-MF-FG-5356 | Signed by MF on 03/22/2011 | |
| FULL-MF-FG-7531 | Signed by MF on 02/28/2011 | |

| | |
|---|---|
| FULL-MF-REL-0066 | Signed by MF on 09/13/2010 |
| FULL-MF-REL-0106 | Signed by MF on 05/05/2011 |
| FULL-MF-REL-0205 | Signed by MF on 09/13/2010 |
| FULL-MF-REL-0217 | Signed by MF on 05/02/2011 |
| FULL-MF-REL-0284 | Signed by MF on 10/14/2010 |
| FULL-MF-REL-0378 | Signed by MF on 09/07/2010 |
| FULL-MF-REL-0442 | Signed by MF on 08/30/2010 |
| FULL-MF-REL-0480 | Signed by MF on 09/24/2010 |
| FULL-MF-REL-1268 | Signed by MF on 03/28/2011 |
| FULL-MF-REL-1269 | Signed by MF on 01/17/2011 |
| FULL-MF-REL-1308 | Signed by MF on 12/06/2010 |
| FULL-MF-REL-1408 | Signed by MF on 03/25/2011 |
| FULL-MF-REL-1586 | Signed by MF on 03/12/2011 |
| FULL-MF-REL-1599 | Signed by MF on 08/20/2010 |
| FULL-MF-REL-1706 | Signed by MF on 10/25/2010 |
| FULL-MF-REL-2354 | Signed by MF on 10/20/2010 |
| FULL-MF-REL-2384 | Signed by MF on 09/27/2010 |
| FULL-MF-REL-2385 | Signed by MF on 11/08/2010 |
| FULL-MF-REL-2410 | Signed by MF on 10/11/2010 |
| FULL-MF-REL-2412 | Signed by MF on 09/24/2010 |
| FULL-MF-REL-2573 | Signed by MF on 01/18/2011 |
| FULL-MF-REL-2798 | Signed by MF on 01/21/2011 |
| FULL-MF-REL-2808 | Signed by MF on 05/11/2011 |
| FULL-MF-REL-2811 | Signed by MF on 04/07/2011 |
| FULL-MF-REL-2920 | Signed by MF on 03/02/2011 |
| FULL-MF-REL-3519 | Signed by MF on 08/31/2010 |
| FULL-MF-REL-3519 | Signed by MF on 10/05/2010 |
| FULL-MF-REL-3520 | Signed by MF on 09/09/2010 |
| FULL-MF-REL-3537 | Signed by MF on 10/11/2010 |
| FULL-MF-REL-3632 | Signed by MF on 04/22/2011 |
| FULL-MF-REL-3692 | Signed by MF on 10/12/2010 |
| FULL-MF-REL-3733 | Signed by MF on 08/30/2010 |
| FULL-MF-REL-3808 | Signed by MF on 03/08/2011 |
| FULL-MF-REL-3871 | Signed by MF on 01/31/2011 |
| FULL-MF-REL-3920 | Signed by MF on 01/04/2011 |
| FULL-MF-REL-4092 | Signed by MF on 03/24/2011 |
| FULL-MF-REL-4112 | Signed by MF on 11/01/2010 |
| FULL-MF-REL-4121 | Signed by MF on 10/25/2010 |
| FULL-MF-REL-4500 | Signed by MF on 09/02/2010 |
| FULL-MF-REL-4628 | Signed by MF on 07/14/2010 |
| FULL-MF-REL-4722 | Signed by MF on 08/02/2010 |
| FULL-MF-REL-5318 | Signed by MF on 04/08/2011 |
| FULL-MF-REL-5355 | Signed by MF on 02/08/2011 |

No memory at all. Not involved in the initial meeting. Paralegal (Ann or Victor or Tony or Wenting) prepared the package. Other people (Lucy or Lilian or William) reviewed. I just signed it without reviewing. Never met this client.

| | |
|---|---|
| FULL-MF-REL-5395 | Signed by MF on 03/14/2011 |
| FULL-MF-REL-5422 | Signed by MF on 02/28/2011 |
| FULL-MF-REL-5427 | Signed by MF on 04/11/2011 |
| FULL-MF-REL-5471 | Signed by MF on 03/10/2011 |
| FULL-MF-REL-5473 | Signed by MF on 01/31/2011 |
| FULL-MF-REL-6115 | Signed by MF on 04/18/2011 |
| FULL-MF-REL-6144 | Signed by MF on 09/29/2010 |
| FULL-MF-REL-6857 | Signed by MF on 04/18/2011 |
| FULL-MF-REL-6862 | Signed by MF on 05/10/2011 |
| FULL-MF-REL-7042 | Signed by MF on 03/02/2011 |
| FULL-MF-REL-7049 | Signed by MF on 11/24/2010 |
| FULL-MF-REL-7182 | Signed by MF on 12/20/2010 |
| FULL-MF-REL-7190 | Signed by MF on 11/03/2010 |
| FULL-MF-REL-7776 | Signed by MF on 03/21/2011 |
| FULL-MF-REL-7863 | Signed by MF on 12/07/2010 |
| FULL-MF-REL-8014 | Signed by MF on 11/15/2010 |
| FULL-MF-REL-8162 | Signed by MF on 10/14/2010 |
| FULL-MF-REL-8222 | Signed by MF on 12/13/2010 |
| FULL-MF-REL-8284 | Signed by MF on 04/08/2011 |
| FULL-MF-REL-8410 | Signed by MF on 03/18/2011 |
| FULL-MF-REL-8723 | Signed by MF on 04/20/2011 |
| FULL-MF-REL-8989 | Signed by MF on 02/14/2011 |
| FULL-MF-REL-9096 | Signed by MF on 10/12/2010 |
| FULL-MF-REL-9102 | Signed by MF on 09/30/2010 |
| FULL-MF-REL-9123 | Signed by MF on 10/04/2010 |
| FULL-MF-REL-9127 | Signed by MF on 02/14/2011 |
| FULL-MF-REL-9473 | Signed by MF on 12/14/2010 |
| FULL-MF-REL-9813 | Signed by MF on 03/08/2011 |

I left the firm in October of 2011. Most cases in #7, 8 and 9 are dated after October of 2011. I roughly reviewed them and had no memories about this cases.

(7)

Feng Li read the news & told the 3
Boston firm               paralegals
                          about the

filed ← Boston firm that failed the
false    asylum application.
asylum   & gave some of our clients
applications  some info. So Li was worried
         that the same thing would
         happen to their own firm,
                              too.

She later Googled it &
found Li's intel was correct.

Fengling Liu & Assocs Attorney.

Early 2009, the name changed
to Muscilini & Assoc.

Confirm as  Her feeling is that Troy
            didn't have any control over
            the firm. The name change
?           happened prior to Boston
                              the
            case. She remembered it
            well in early 2009.
            Liu & came to her house

FD-302a (Rev. 05-08-10)

281E-NY-302120-302

Continuation of FD-302 of  Proffer of Mengfei YU                              , On  03/02/2012 , Page  4 of 6

     Prior to the policy change, YU would write up a client's story in Chinese characters on the computer and then print it out the final version for the client to read. After reading the story, the client would hand copy it word for word in Chinese. The hand copy statement was then attached to the client's asylum application and the firm's translations department would translate the story into English. After the completion of translation, the translator was required to delete all the Chinese versions of the story in the computer file that was drafted by YU. In summary, a client's file would only contain the following items: the client's hand copy story in Chinese characters, the English translation of the client's hand written story, the asylum application, and the evidence that supports the client's claim.

     The firm keeps clients' files in the office up to five years. Any case file that is beyond the five-year time frame is stored in a warehouse. When YU first started the paralegal job at LIU's firm, LIU checked on YU's case files very often. She would tell YU what to put in a client's file. YU learned that she should never keep any "bad" or "unhelpful" evidence that would contradict a client's story in the case file. Shortly after the policy change, LIU ordered "David"'s sister, "Ann," to clean all case files, making sure that there was no "bad" evidence in each file. "Ann," who was already a story writer, complained about this heavy double-duty work load to YU. It took "Ann" two months to complete the file cleaning task. YU did not have to ask "Ann" why LIU assigned this project to her. YU understood fully that if the U.S. Government ever discovered the client's hand written statement was different from the paralegal's computer drafts in the file, the firm would be in trouble.

## Legality of the Firm

     YU started questioning the legality of LIU's firm soon after LIU repeatedly making drastic changes of YU's writing without consulting the facts in the client's file. LIU is a very aggressive woman, and YU was not in a position to confront her boss. At first, YU trusted her clients and did not like to ask them whether the information they gave her was true or false. After a while, YU knew in her heart that the clients were not all telling her the truth. YU knew that there was simply no way so many similar stories could come from the same village in China in such a short period of time.

     After LIU had corrected her writing a few times, YU eventually figured out what she should write to pass LIU's review. YU learned that the most important part of the writeup was the persecution

FD-302a (Rev. 05-08-10)

281E-NY-302120-302

Continuation of FD-302 of  Meeting with Mengfei YU _____ , On  10/24/2012 , Page  6 of 6

etc. Based on her recent conversations with Wenting, YU knew that this database is still being used and stored in the office computer's S drive. As for the clients' stories, only the English version is kept in the S drive. YU explained the office's protocol requires the paralegals to print out the stories (which are drafted in Chinese) in hard copies and hand deliver them to the reviewer for editing and correction. Once the story is finalized, the document translator translates the story from Chinese to English. Upon the completion of translation, the translator is required to delete the Chinese version of the story from the computer.

FD-302a (Rev. 05-08-10)

281E-NY-302120-302

Continuation of FD-302 of  Proffer of Mengfei YU                        , On  03/02/2012 , Page  5 of 6

portion. For example, YU would describe in detail how a client was
beaten by the Chinese government for a religious persecution claim.
YU stated that most of her clients' stories were okay but some of
them were simply "unreasonable." Therefore, her task was to make the
story more "reasonable" in order to pass the Asylum Office's
approval. YU acknowledged that she had to "make up" some stories for
her clients.

In addition, YU remembered a fraudulent religious persecution
case that LIU's firm successfully filed on behalf of a female
client. In this case, YU learned during the interview that the
client actually had a forced abortion in China but the incident
happened a long time ago that would not have qualified her for an
asylum. YU later found out the client got her case approved under
Christian persecution claim even though the client had told YU that
she was not a Christian.

**YU As An Attorney**

After YU was fully admitted as an attorney to the New York State
Bar in January 2009, LIU finally filed an H1B visa application for
YU as a paralegal in March 2009. The Immigration Office returned the
application to LIU, citing that there was no need for LIU to hire a
paralegal with a Master's Degree. LIU re-submitted the application
under the attorney category and it was approved this time.

In May 2010, YU became an attorney in LIU's firm after LIU fired
Feng LI. As an attorney, YU never helped clients prepare for their
asylum interviews. It was done by LIU's brother, "Harry," or YU's
former paralegal colleague "Victor." "Harry" even wrote up two
different "Q&A" study guides to help clients prepare for Christian
or Falun Gong persecution claims. Later, a "Mr. Wu" and "William"
did the preparation.

YU's training sessions as an attorney were with Troy Moslemi and
Vanessa Bandrich. According to YU, Moslemi and Bandrich are both
from Miami and have known each other for a while. Although Bandrich
is the attorney of "Bandrich & Associates," LIU's brother, "Harry,"
is the actual owner. YU explained that "Harry" was a receptionist at
LIU's firm but left his sister's company to form his own. At the
beginning, LIU would send many cases to "Harry's" firm because many
clients trusted "Harry" while "Harry" was the receptionist at
Moslemi and Associates. Later, the two firms were completely separate
since LIU had to pay Bandrich extra money when she asked Bandrich to
help with her firm's cases.

(18)

Troy would just tell Client, " I
only care about whats said in
your statement."
Troy would tell Yu to tell the
Client just say whats in the
statement. He would get very
angry if Client gave a diff.
answer from the statement.
Vanessa & Troy both come from
Miami. They're mutual
friends down there. are
Muslemi & Bandwich firms
2 diff. firms. Fenglin sent
a lot of cases to Harry's
firm, Bandwich. Coz many
Clients trusted Harry when
H was the receptionist @
Fenglin. Harry also secretly
stole some of Fenglin's Clients.
They're completely separate now.

Fenglin has
to pay
Bandwich
extra $ if
Ban. does
work/help for him

718-8780229 Tina Sheng.  She was a paralegal working at Fengling Liu, but she went with Harry (known to the FBI as Shuran Liu) when he started the Vanessa Bandrich firm.

Signed by:

Click here to sign this section

**Signed by DPARK2**   View details
on Thursday, August 02, 2012 7:22 PM (Eastern Standard Time)

| **FD-1023** (07/24/2010) | FEDERAL BUREAU OF INVESTIGATION |
|---|---|

FD-302 (Rev. 5-8-10)                   - 1 of 5 -

 OFFICIAL RECORD

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry    09/26/2012

On March 21, 2012, Mengfei YU met with FBI New York Special Agent
(SA) Daniel Park, SA Melody Shen, and SA Christopher DeGraff for a
debriefing. After being advised of the identities of the
interviewing agents and the nature of the interview, YU provided the
following information:

**Personnel at LIU's Firm**

As stated in prior meetings, YU joined Fengling LIU's law firm in
August 2008. At the time, there were four attorneys, three
paralegals, two in-house translators, two receptionists, and two
office managers.

**Attorneys**

-In August 2008, the attorneys at LIU's firm were Fengling LIU,
Feng "Brandon" LI, Beibei "Betty" XU, and a female American attorney
known to YU as "Denise." Later, Troy Moslemi and Vanessa Bandrich
joined LIU's firm in mid-2009 time frame. YU did not know Denise's
last name. At the time that YU started working as a paralegal,
Fengling LIU did not go to court for hearings. From what YU could
observe, LIU only reviewed each client's asylum application and
statement (USCIS G-28 and I-589 forms, respectively).

Feng "Brandon" LI received his law degree in China and started
out as a paralegal at LIU's firm. He eventually became a lawyer
after he passed the New York State Bar Exam. LI obtained his green
card through LIU's sponsorship and left LIU's firm permanently in
February 2012. In 2006, LI went to Seattle and bailed out 10 Chinese
citizens from a Chinese boat after the boat was rafted. After that,
the words got out and more people from that boat went to LIU's firm
and all of them received asylum status. LIU became famous and her
business boomed. It was also at this time that LIU moved her office
from 401 Broadway to the current location at 2 East Broadway in
Manhattan's Chinatown.

Investigation on  03/21/2012  at  New York, New York, United States (In Person)

File #  281E-NY-302120-302                              Date drafted  03/28/2012

by  SHEN MELODY

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

3507-08

When Capstone first joined Feng Ling LIU's firm in 8/2008 as a paralegal, Feng LI was already handling all the court hearings while LIU would still come into the office two or three times per week to edit stories. Feng LI came to the U.S. from China to study for his LLM degree in California. LI then moved to New York and found a paralegal job at Feng Ling LIU's firm. After LI passed New York State Bar Exam, he got promoted to an attorney. Capstone believed that LI probably started working for LIU in 2005/2006 time frame. Feng LI's parents work for the People's Liberation Army (PLA) in China and have a lot of local government connections. Feng LI's mother has a good relationship with Feng Ling LIU, who used to work for the Chinese government as well. (Agent's note: According to LinkedIn, the online professional network, Feng Ling LIU was a translator for PLA Air Force when she was in China.)

When Capstone was working as a paralegal and LI an attorney, LI would often brag to Capstone that as a paralegal, he could easily handle six application packages per day, including writing six stories, drafting three or more witness letters, and even providing translation support when needed. LI was very proud of his work when he told Capstone about this. Basically, LI would do anything LIU asked him to do. LIU even told Capstone several times that LI made many great contributions to her firm. LI was the first legal professional that LIU hired and truly trusted.

Feng LI took over Feng Ling LIU's editing job after she changed her firm's name to Moslemi & Associates sometime in early 2009. It took Capstone a while to adjust to LI's style. Instead of making the changes and writing out the sentences the way LIU did, Feng LI simply told Capstone to rewrite the entire paragraph. LI focused on the big picture of a story and often told Capstone, "If you write it like this, the judge won't believe it." When Capstone returned to work in 3/2009, Feng LI was already signing all the G-28 forms. LI continued to perform this task until he was fired in 5/2010.

LI also trained Capstone how to prepare for clients' asylum interviews after Capstone became a lawyer in LIU's firm. Because most of the clients were lazy and uneducated, they simply wanted the attorney to give them the answers. Since the client's personal story was actually written by the law office, LI wanted the client to memorize it before the preparation sessions. LI instructed Capstone not to give out the answers to clients; instead, Capstone should point out where in the story they could find the right answers. On average, LI usually prepared each client about three times before the asylum interview.

LI told LIU's brother, Harry, in front of Capstone (still a paralegal at the time), Victor, and Betty (a Chinese attorney)in early 2009 that a Boston law firm's employees were arrested for filing false political asylum applications. LI was very worried and told them to be very careful. At the same time, LIU's relatives also told her that the FBI might be wiretapping the firm's phones. LI complained to the group that David (LIU's husband) and Harry were careless and would accept any client's case. LI was concerned that David was not cautious with his words, whereas Harry would often give clients the wrong advice. Harry passed this information on to LIU. Capstone was worried all the time after he/she heard about this incident.

By the time that Capstone returned to work in 3/2009 from one month of leave, LIU changed her firm's name and issued a new policy for processing political asylum applications. Uner the new policy, each client must write up the story first and then the assigned paralegal would help edit the client's draft. The new policy, however, did not work well since most clients were uneducated who were either bad writers or did not know what to write. Capstone recalled one particular bad case the firm had because Capstone, now as an attorney, signed the G-28 form. The client was a pregnant Chinese female who came to the U.S. previously. During the applicant's interview, an asylum officer discovered evidence that was inconsistent with her story. The client eventually admitted to the officer that LIU's firm made up the story. After learning about this, LIU found the client's relative to convince the client to write a letter to the firm, stating that she lied to the office from the beginning about her previous stay/visit in the U.S. and she was the one who made up the story. The firm was very worried about this case.

One story as to how Feng LI was fired in 5/2010 was that Lucy, LIU's sister, reported LI's laziness to LIU. Feng LI became arrogant after a while and did not work as hard as he used to. He would spend a lot of time chatting with other coworkers in the office and his work products showed that he overlooked many details. LI told Capstone that when LIU

# 客人信息登记表

姓名： [illegible] 1/24/70

联系电话： 347-642-2763

介绍人名字： [illegible]

介绍人电话：

您同介绍人的关系： ~~[illegible]~~ 朋友

---

如果您要申请政治庇护，请确信具备以下两个条件：

1. 来美不超过一年（特殊情况除外）
2. 因为宗教，法轮功，计划生育，或其他原因受到中国政府的迫害，害怕回去继续受到迫害。

---

按照法律，您不可以递交虚假的政治庇护申请，律师也不可以帮你准备虚假的政治庇护申请。所以，请您如实填写下面的问题：

1. 我是中国公民： 是（ ✓ ） 不是（ ）
2. 我来美国不超过一年： 是（ ✓ ） 不是（ ）
3. 我被中国政府迫害： 是（ ✓ ） 不是（ ）
4. 我因为宗教信仰（ ✓ ），计划生育政策（ ✓ ），法轮功（ ），或其他原因（ ）在中国受到迫害。

签名： [illegible]

日期： [illegible]

1/8/10 B2来美，从NY入境

结婚(2004.1月)，两个小孩(6岁5岁)

福州市居民户，本次是从Bahama签证来，第一次是过境，第二次是visit停一个多月(2008年)第三次是2009年6月停一个月左右。

第二个小孩是在Bahama出生，在Bahama是工作签证，共居住8年左右。现全家在美，都是B2。最后一次回中国是2005.9(本人)，2006年初(太太)(一个半月)

太太在生小孩前已去Bahama，怀孕后回中国生小孩，因在国外没人照顾。

现因失去工作，在Bahama已失去签证，无法继续居住下去。

并接到限期离境通知 [illegible]

在Bahama有去教会，期间有向中国传福音，2009年10月母亲写信给本人告知有教友被抓，劝其不要回来

现在去Flushing一教会

Client Intake Form

Name: Biao Cao 1/24/70

Contact Phone: 347-642-3763

Name of Referrer: Ming Chun Li

Phone No. of Referrer: _____

Relationship Between you and referrer: Friends

_____

If you would like to apply for political asylum, please make sure you are qualified for the following
   requirements:

1. came to the US in the past one year(except for special circumstances)

2. persecute by the Chinese government because of religion, Falun Gong, family planning, and fear to be
   persecuted again if going back to China.

_____

According to law, you are prohibited to submit false political asylum application; your attorney is
   prohibited from helping you prepare false political asylum application. So please answer the
   following questions truthfully:

1. I am Chinese citizen:  Yes( tick mark)      No (     )

2. It has been less than one year since I came to the US:   Yes (tick mark)    No (  )

3. I was persecuted by Chinese government:  Yes (tick mark)      No(     )

4. I was persecuted because of religion(tick mark), family planning policy( tick mark) , Falun Gong(     ), or
   other reason(      ).


Signature: Biao Cao

Date:  Illegible


(Notes to the Form)


Arriving in the US with B2 visa on January 8, 2010; port of entry: New York; married with two
children(January 2004, 6 years old, 5 years old); resident of Fuzhou City. Came this time from
Bahama with a visa. First time was  transit; second time was visit, stayed for over one
month(2008);  third time was June 2009, stayed about one month.  Second child was born in
Bahama. Lived in Bahama  with a work visa for about 8 years. The whole family members are
now in the US, all with B2. Last time went back to China in September 2005(five months,
applicant), beginning of 2006(wife)(one and half month). Wife went to Bahama before giving
birth, came back to China after pregnancy because nobody took care of her overseas. No valid

visa to Bahama because of having lost job, could not stay anymore. And has received notice of leaving within a limited time. Wife went to church in Bahama and spread gospels to China. Mother wrote a letter to applicant in October2009 telling him some church fellows were arrested and persuaded him not to come back. Currently going to a Flushing church.

| NAME | ENGLISH TRANSLATION |
|------|---------------------|
| CI: | Then the immigration officer asked him/her that you worked in New Jersey, you sleep at night… do you come back to sleep in New York every day? |
| VICTOR: | Hmm, hmm. |
| CI: | He/she said it was like this. He/she said I… I lived in the store when I was working. |
| VICTOR: | Hmm. Come back on the weekends. [Laughs] |
| CI: | Came back on the weekends. |
| VICTOR: | [V/O] Hmm. Then… |
| CI: | Then that immigration office said so you lived in New Jersey five days a week. [V/O] So that means you lived in New Jersey. |
| VICTOR: | [V/O] [Laughs] |
| CI: | You should go to New Jersey for the interview. That was re-schedule like that. It made me very angry. Would be interviewed again next time. And didn't make any money. |
| VICTOR: | Something similar happened to us but was not being… you were not being… re-scheduled… |
| CI: | Ah. |
| VICTOR: | I just… I met by chance last time that little Indian [ph]. The one called Mathew [ph]. |
| CI: | Ah. I met him by chance yesterday. |

| **NAME** | **ENGLISH TRANSLATION** |
|---|---|
| VICTOR: | Just that client asking that...[U/I] asked where the client lived. The client said he/she lived in Philadelphia. [U/I]. |
| CI: | What about afterwards? What could be done? |
| VICTOR: | Then just asked him/her how he/she usually went to Philadelphia and how to go to church when arriving in Philadelphia and so on. |
| CI: | No. this is not [U/I]. Why didn't you go to New Jersey to apply for [U/I]. (The one) in Philadelphia should apply in New Jersey, correct? |
| VICTOR: | He/she didn't ask this question. |
| CI: | Oh. |
| VICTOR: | He/she just asked… then he/she continued to ask… he/she can… he/she should see [U/I]. He/she… he/she just continued to ask. |
| CI: | Oh. |
| VICTOR: | Such as… such as the vehicle to take, taking what vehicle, how long does it take by vehicle, who picks up when arriving here, where to pick up, right? |
| CI: | Ah. Ah. |
| VICTOR: | You know that Mathew… he is not getting angry no matter what you say. |
| CI: | Is it so? Have [U/I]. |
| VICTOR: | Hmm. Unlike that… [U/I]. |

# Affidavit

State of New York )
                  ) ss.
County of New York)

I, Sai Hua Wu, duly sworn, do hereby state and depose under penalty of perjury that:

1. Before starting to prepare my asylum application, my attorney's office has given me the following warnings regarding frivolous asylum application:

2. If you knowingly file a frivolous application for asylum, **YOU WILL BE BARRED    FOREVER** from receiving any benefits under the Immigration and Nationality Act. A frivolous application for asylum is one which contains statements or responses to questions that are deliberately fabricated. Not being granted asylum does not mean that your application is frivolous.

3. I fully understand the above warning and the consequences of filing a frivolous asylum application.

4. Next, my attorney's office has prepared my asylum application form based on the information I provided to the office and the asylum application has been read back to me in the language I understand and it is true and accurate. The written statement attached to my asylum application form is written by myself according to my attorney's legal advice and has been reviewed and revised by my attorney. After my attorney's review and revision, my attorney has gone over with me sentence by sentence. I swear that the written statement is a true, accurate and complete statement of what have happened to me and my family in my country. There is no false information in my application or the attached statement. I am warned by my attorney that I must be very truthful to the U.S. government and must not provide any false information or fake document. The documents I have submitted to my attorney's office are all genuine. I further promise that all documents I will submit in the future will all be genuine.

[TRANSLATION]

<div align="center">宣誓书</div>

1. 在开始帮我准备我的政治庇护申请之前，我的律师楼对我做出了如下警告，告诉我如果故意递交虚假申请的后果：



GOVERNMENT
EXHIBIT
921
S2 12 Cr. 934 (RA)

FD-302a (Rev. 05-08-10)

281E-NY-302120-302

Continuation of FD-302 of <u>Proffer of Mengfei YU</u> , On <u>03/02/2012</u> , Page <u>3 of 6</u>

Internet and found LI's information to be correct. LI was very
worried that the same thing would also happen to LIU's firm. After
hearing about the Boston incident, "Harry" became very concerned and
said, "I will talk to Fengling LIU." LI advised "Harry" that he
("Harry") must stop doing certain things from now on. In the
meantime, YU and the other two paralegals were all fearful of their
own future: "Victor" (Tianlong YOU) wanted to obtain a permanent
residency ("green card") in the U.S., "Betty" (Beibei XU) wanted to
return to China, and YU wanted LIU to sponsor her a H1B visa.

YU did not know exactly when LIU changed her firm's name from
"Fengling LIU Attorney At Law" to "Moslemi & Associates." By the
time that YU returned to the office in March 2009 from one month of
leave, the firm had a new name and a new policy for processing
political asylum applications. Under the new policy, the clients
must write their own statements first and then the paralegals would
revise them. The only exception would be if the clients were
illiterate. Both "Harry" and Fengling LIU instructed the paralegals
to give the firm's "writing samples" to clients in order to help
them write their stories. According to YU, "Harry" was the one who
drafted the various "writing samples" and was very proud of his
work.

LIU trained the paralegals about her firm's new policy procedure
either by oral instructions or in Word Perfect documents. After the
firm's name change, LIU stopped coming to the office on a regular
basis. Her claim was that she wanted to spend more time with her
family. As a result, LIU delegated the "story review" responsibility
to 1)Feng LI, 2)her brother "Harry," and 3) her sister "Lucy," in
that order. LIU also stopped signing all political asylum
applications.

Even though the firm's name was changed and LIU was no longer
reviewing her clients' persecution stories and signing their
applications, LIU is still the owner of her firm and she does not
like outsiders know about this. YU knew about this fact because Troy
Moslemi, the attorney whose name is being used as LIU's law firm
title, told everyone that he was by no means in charge of the
office. Therefore, he was not the "go-to" person for any
decision-making issues. After his wife stopped coming to the office,
"David" took on the office manager position. YU, however, had seen
"David" call LIU directly for help if he could not answer a
question.

**File Cleaning**

(4)

a better story would work better?

1) Fenglin Liu. — She would review
   them in 2008.

   2009 - not much time in the
   office. Gave it to Feng Li.

   3) Hatty then  4) Lucy

~~Did~~ Every time she gave the story
to Liu. She would ~~write~~
everything Yu wrote. She
noticed it's not what the client
had told her.

Liu would just make changes
of her ~~writing~~ W/O consulting
the facts w/ Yu or verifying
the clients file:

In
take       Name, age, parents,
form
was        Passport info, u.s. / PRC
1 page.    address. Contact info.
           Religion, Persecution.

FD-302 (Rev. 5-8-10)

- 1 of 6 -

 OFFICIAL RECORD

## FEDERAL BUREAU OF INVESTIGATION

Date of entry    10/24/2012

On October 24, 2012, Mengfei YU and her attorney, Patrick Joyce, attended a meeting in the United State Attorney's Office at the Southern District of New York (SDNY). Also in presence were Assistant United States Attorney (AUSA) Harris M. Fischman, AUSA Robert Boone, FBI New York Special Agent (SA) Melody Shen, and SA Christopher J. DeGraff. YU was asked to identify the subject in each photo from a photo book and provide any knowledge she may have concerning the identified targets. YU provided the following information:

Photo #1: YU did not know the person.

Photo #2: YU did not know the person.

Photo #3: YU did not know the person.

Photo #4: **Feng LI**. LI started working at Fengling LIU's firm in 2006 first as a paralegal. After passing New York State's Bar Examination, LI became an attorney in LIU's office later in 2006. LIU fired Feng LI in May 2010 while LI was in China for vacation but brought him back in April 2011 when she needed help. YU knew that Feng LI wrote many fake stories while he was a paralegal because he would often brag how efficient he was and asked how many stories YU and Victor (the other paralegal) did. During the early 2009 to about May 2010 timeframe, LI reviewed all the stories written by YU and Victor. If a story needed revision, LI would return the hard copy to YU and told her how he wanted her to re-write. LI also reviewed translation work done by the translators in the office and went to U.S. Immigration Court for hearings if other attorneys were too busy. LI resigned from LIU's firm in early 2012.

Photo #5: YU identified the man in the photo as **David MIAO's brother**. This target and his wife are both drivers. They mainly drive Fengling LIU's and Harry LIU's clients to the Asylum Office for interviews. YU's former coworker, Victor, had seen the target coach clients as to how they should answer questions at the Asylum Office. YU had seen the target in LIU's office before.

---

| | | |
|---|---|---|
| Investigation on | 10/24/2012 at | New York, New York, United States (In Person) |
| File # | 281E-NY-302120-302 | Date drafted   10/24/2012 |
| by | SHEN MELODY, Christopher J. DeGraff | |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

(10)

Berg:

e.g. Sterilization example.
Women were forced to abort their
babies, how they met, & how they
were persecuted.

==Tu would ask Clients questions
to fill out the details .==

Most of the Stories were ok.
but some of were just simply
"Unreasonable". So, she would
make the stories more "reasonable"
in order to pass the asylum
case / approved. So, she "made up"
some of the Stories. ⇒
              Harrison.
She started questioning
the legality of the firm
when the supervisors changed
her writing 1st, she trusted
her clients. & After she wrote
them up, Lin would tear it
up & make drastic changes of

FD-302a (Rev. 05-08-10)

281E-NY-302120-302

Continuation of FD-302 of  Meeting with Mengfei YU                    , On  10/24/2012 , Page  5 of 6

Fengling LIU's firm. YU translated a few times for Moslemi. Whenever
Moslemi's clients made a mistake during the interview preparation
session, he would say, "You're telling me something different from
your story. What happened to your story?"

Photo #35: YU did not know the person.

Photo #36: YU identified the person as **Harry LIU**, Fengling LIU's
younger brother. While working at his sister's firm, Harry would
sometimes greet new clients in the same fashion that David MIAO did.
Harry also reviewed clients' stories and made changes to them inside
Fengling LIU's office. Harry opened his own firm in 2011.

Photo #37: YU identified the person as **Wenting**, who has been working
as a paralegal in Fengling LIU's firm since 2010. Wenting wrote
stories for YU's cases while YU was an attorney. Wenting still
writes stories at LIU's firm.

Photo #38: YU did not know the person.

Photo #39: YU did not know the person.

Photo #40: YU did not know the person.

Photo #41: YU did not know the person.

Photo #42: YU identified the person as **"Lillian,"** David MIAO's
sister who works in Fengling LIU's office. Lillian started as a
receptionist in late 2009-early 2010 timeframe and was promoted to
her current position as a manager after Feng LI left the firm in
summer 2010. Lillian greets new clients and reviews stories written
by Wenting. She also serves as the general office manager when David
MIAO is absent.

Photo #43: YU did not know the person.

Photo #44: YU identified the person as **Tom WANG**. WANG worked in
Fengling LIU's firm for many years as a document translator. He
never wrote stories for clients.

When YU left Fengling LIU's office in October 2011, YU knew the
office kept its case files from 2007 to present. All case files that
were dated prior to 2007 were stored in a warehouse in Queens, New
York. David MIAO also used Microsoft Office Excel to create a master
database that contained all of the firm's client information, such
as the type of claim, the court date, the assigned story writer,

(11)

the writing. Fenglin is a very
aggressive Woman; Yu wasn't in
a position to confront her boss.
The firm never helped clients
prepare documents / certificates
evidence
They would tell clients which
branch of the Chinese Gov't they
could get the regid documents.
They would never change the
statements to accommodate
the data / evidence the clients
produced. The firm aware
she is not
the firm would direct clients
to Where to get false
evidence
for the application.

1 Case She knew: a girl who
got abortion in real life Was forced
by Fenglin to do Christianity
later. Yu knew the girl
was not a Christian during the intake

| | |
|---|---|
| Vanessa Bandrich: | To sign it. OK, Because, Lucy [PH] brings everything to them, for them to sign. And they are telling me that lot of the time they don't have time to review it and they have seen a bunch of mistakes and the individuals have to deal with those mistakes. Now they cannot say that hey Brendan you did that I have no idea.  Now they are the ones that are signing for it, so they are freaking out of it.  You know what I mean? They are freaking out so much that the other day I saw Robert standing outside of Patrician's [PH] courtroom. I am like hey what's up. He's like oh Natalie is doing that case but I am so nervous because I signed some documents and they are wrong.  So he is scared for himself.  He was standing there. I wouldn't even show up, he is there! Like he was so nervous, he didn't know what to do! You know what I mean? |
| Meng Fei Yu: | What type of documents? Evidence? |
| Vanessa Bandrich: | Pamphlets [PH] Tom is preparing it and nobody is really looking at them. They file taxes [PH] in one file and 18:00 - [UI] for different file, like stupid stuff like that.  Oh, they don't look at the church letters, the church letters are totally wrong. Then when you tell Lucy about it she'll tell Natalie that oh well go to court then blame on Robert for it because he is the one that signed for it, like that!  That's not fair!  You are getting a stack like that, you know.  So they know that, them two themselves know that. So they are like… Natalie can stand up for herself. But Robert seems like he needs the job, he can't... That's the worst attitude to have in that office. To show that you need the job. |
| Meng Fei Yu: | Yeah. |
| Vanessa Bandrich: | So 2 Sundays ago he came into the office to prepare his client, I was like why are you coming on Sundays? |
| Meng Fei Yu: | Every Sunday. |
| Vanessa Bandrich: | Not every Sunday, when he doesn't have time during the week to prepare everybody, he will come on Sunday just to prepare one client. |
| Feng Li: | [UI]. Is he getting paid |
| Vanessa Bandrich: | I have no idea but I told him that don't do that. And then later |

15

UNCLASSIFIED

| FD-1023 | FEDERAL BUREAU OF INVESTIGATION |
|---|---|
| (07/24/2010) | CHS REPORTING DOCUMENT |

**HEADER**

Source ID: **S-00046406**
Date: **08/01/2012**
Case Agent Name: **Shen,Melody**
Field Office/Division: **New York**
Squad: **C6**

Date of Contact: **07/16/2012**
List all present including yourself. (Do not include the CHS.): SA Daniel Park, SA Melody Shen
Type of Contact: **In Person**

Country: **UNITED STATES**
City: **New York**
State: **New York**
Date of Report: **07/18/2012**

Substantive Case File Number: **281E-NY-302120-A**

Source Reporting:      On 7/16/2012, SA Daniel Park and SA Melody Shen debriefed Capstone, a confidential human source who is in a position to testify.  Capstone provided information concerning Feng LI, a former coworker at Moslemi and Associates.  LI resigned from Moslemi & Associates in 2/2012 and is currently living in China.  He returned to New York on or about 7/4/2012 for a two-week visit and is scheduled to return to China on 7/19/2012.

     LI went to the office of Bandrich & Associates last week to visit with Vanessa Bandrich and got a chance to speak with Harry LIU.  Both Harry and Vanessa told LI that the asylum business has been slow.  They are getting 20 to 30 new clients per month, approximately the same as Moslemi & Associates.  Vanessa commented that their new clients are all recent immigrants since people who had been in the U.S. for a while had already applied for asylum.  LI had told Capstone in the past that prior to 2006, the illegal immigrants were not sure whether applying for asylum was a safe way to get legal status in the U.S. After 2006, the business took off after clients saw that the firm could get them aslyum status.  LI stated that the asylum business was very good in 2006 - 2008.  (Agent's note: in prior debriefings, Capstone advised that Feng LI went to Seattle in 2006 and bailed out 10 Chinese citizens who arrived illegally from a boat.  After that, more people from that boat went to Feng Ling LIU's firm and all of them received asylum status.  LIU became famous and her business boomed.)

     LI also told Capstone that Moslemi & Associates hired two American attorneys: Natalie and Robert.  According to Vanessa, Robert is nervous and has no prior experience in asylum.  One time, Vanessa ran into Robert outside the court room and Robert was nervous because he signed some documents for a client, whose application contained many mistakes.  Vanessa told Robert that most people in Moslemi & Associates have no legal experience so he should look out for himself and not rely on Lucy (Feng Ling LIU's sister) and Winnie.  Vanessa added that Robert really needs this job and works very hard.  He even goes to work on Sundays to prepare clients for interviews.

3507-14

FD-302a (Rev. 05-08-10)

281E-NY-302120-302

Continuation of FD-302 of __Third Proffer of Mengfei YU__ , On __03/12/2012__ , Page __4 of 4__

his/her home country to be considered an asylum applicant under
Christian persecution. Even though most of YU's clients were not
baptized Christians from China, Pastor SHE insisted that they must
be all baptized in her church if they would like her to testify as a
witness. Pastor SHE charged several hundred dollars per client for
each Christening. Mi-An Church is the other church that most Fujian
Chinese asylum seekers attend. The church also has several "expert
witnesses" and two different locations.

## Study Guides for Asylum Interviews

     YU briefly went over each asylum interview study guideline from
LIU's firm with the AUSAs and the agents:

• Falun Gong study guide written by Harry LIU (Fengling LIU's
brother) and Feng LI.
• Protestant and Catholic study guides in "Q&A" format created by
FENG LI.
• Chinese Democracy study guide (for those who want to file under
the category of political persecution for joining the Chinese
Democratic Party).
• Instructions to paralegals on how to write a religion persecution
story after the policy change in LIU's firm in early 2009, written
by Harry LIU.
• Instructions to paralegals on how to write a family planning
persecution story, male married and unmarried versions, female
married and unmarried versions. All four versions were written by
Harry LIU.

     YU noted that both Victor and Feng LI tried to convince YU's
husband to file a political asylum application with LIU's firm. They
even went to YU's house once to show him one of the study guides.
YU's husband never filed any.

FD-302a (Rev. 05-08-10)

281E-NY-302120-302

Continuation of FD-302 of __Second Proffer of Mengfei YU__ , On __03/07/2012__ , Page __3__ of __6__

status in the state that one resides. YU remembered that when she
first joined LIU's firm, her fellow paralegal coworker, Victor, told
her that it is easier to win such cases in New York because "the
immigration judges here are very good."

**YU's Concerns**

After learning about LIU's fraudulent business activities, YU was
very concerned and asked her coworkers, "Aren't you guys scared?"
Victor tried to allay YU's fear by saying that all the immigration
law firms in Chinatown are doing the same thing so there's no need
to worry. He also said that the firm implemented certain procedures
to protect its employees. For example, all clients must sign a
statement as part of their contract, which states that the firm
provides its services strictly based on the information provided by
the clients.

YU learned that Victor started working at LIU's firm about a
month or two earlier than YU; however, Victor worked in another
immigration law firm for six months prior to joining LIU's legal
team. YU knew that Victor obtained his green card through his own
political asylum status. Although Victor was a paralegal/ story
writer like YU, LIU had sent Victor to the U.S. Asylum Office and
the U.S. Immigration Court in Lower Manhattan to do interpretations
for her clients. LIU also tasked Victor to observe which asylum
officers were the most lenient to pass applicants' interviews and
which judges were the easiest to grant approval. Victor also helped
prepare clients on how to answer asylum interview questions.

After YU became an attorney in LIU's firm, LIU often forced YU to
sign political asylum applications that belonged to Troy Moslemi's
clients. YU explained that Moslemi "disappeared" from the office on
a regular basis and was no where to be found. Moreover, LIU truly
disliked Moslemi; as a result, YU was frequently put in a very
difficult situation. YU was extremely reluctant to sign those
applications since she knew nothing about Moslemi's cases.

When LIU learned that YU was very worried after hearing the
Boston law firm incident and the rumor of a possible FBI wiretap,
LIU came to talk to her and attorney Feng LI privately. LIU told YU
that she should not be concerned because the FBI would only want to
talk to her (LIU) and David (LIU's husband) if anything happened.
Therefore, LIU would like YU and LI to stop spreading the rumor in
the office.

YU did not believe LIU and as soon as YU's husband got his H1B