April 10, 2014

Re: 12cr934 by Fengling Liu

Dear Judge,

I write this letter to request the Honorable Court to give my lawyer the opportunity to address some additional issues my lawyer did not cover. If the Honorable Court cannot grant my request, I respectfully request the Honorable Court to accept the documents along with the emails I sent to my lawyer and put them under seal for the purpose of appeal.

I emailed my lawyer the issues and arguments I wanted him to cover in his closing on Monday night. Last Tuesday even before the government made their closing argument, I realized through communication with my lawyer that the lots of issues I requested him to cover my lawyer did not plan to cover at all and then in a desperate move I brought this issue to Your Honor's attention and we had a side bar on record. My lawyer agreed to listen to me if he could not finish his closing on that day. It turned out that he only had fifteen minutes to do his closing argument on that day. In those fifteen minutes my lawyer did cover some issues I raised to him, such as the blank document issue, the bad case, the lack of evidence and tape 154. After the hearing was over, we met at the downstairs conference room for about one hour. I went over with them the major issues I requested my lawyer to cover in his closing. He agreed. On Tuesday evening, I sent my lawyer an email with an attached document addressing the issues we discussed and some

other issues we had not discussed at the meeting and I made my suggested response to rebut government's closing argument. On Wednesday morning I requested to meet my lawyer at his office but he declined and agreed to meet me at 1:30 at the court room to have a discussion. I arrived at the court house around 1:35 on Wednesday but my lawyer did not appear until around 2pm. We did not have time to discuss anything. Then we had most of the afternoon examining the jurors at Your Honor's chamber and then we were dismissed a little earlier than usual. I requested to meet my lawyer again to discuss the closing argument. My lawyer again denied my request and refused to meet me. Before we left the court house, my lawyer and his team assured me that my suggestions were all considered and a lot of them were incorporated in my lawyer's closing argument, but in a slightly different way than the way I presented. On Wednesday night, I sent my lawyer another email with a brief document listing the few crucial issues for him to cover in his closing. Later I received a message telling me he was reading my documents. On Thursday morning, before the trial started, I tried to talk to my lawyer again about the few very crucial issues and I wanted to make sure he would cover in his closing. My lawyer straight forwardly denied my request.

    My lawyer's closing is very good, but only to the part he chose to cover. My lawyer left too much and too many issues never covered either in the cross of the witness or in the closing. Actually, even if my lawyer failed to cover a large portion of the witness' testimony during crossing, he could cover them up at closing. It cannot fix the problem completely but it can remedy the matter to some extent. But my lawyer refused to do it. My lawyer failed to address most of the issues raised in the government closing argument. All the issues argued by the government lawyer in his rebut were the issues I

had requested my lawyer to cover but he refused to cover. I had very strong arguments on those issues but my lawyer never presented those arguments. If I get acquitted, that is my good luck. If I am convicted, that is caused by my lawyer's failure to cover those issues.

In light of the severe inadequate representation I got from my lawyer, if I lose I will have a very strong case on appeal for ineffective assistance of counsel. That will cause a new trial. Lots of court resource will be wasted. Also, lots of the materials I requested to put under seal here are questions I intended to cover at cross and issues and arguments I intended to cover at closing and lots of concerns and discussions regarding my overall and detailed defense strategy. If all these materials are all disclosed when I file an appeal based on ineffective assistance of counsel, it is not a comfort even if I win the appeal because the government will know everything about my defense and I will be completely exposed to the government and it will be extremely hard for me to defend myself in the new trial.

For all these reasons, I sincerely request Your Honor to give me another opportunity to give my lawyer 10 minutes to cover all the crucial issues he should have covered. The date the documents were created will show they were created way before the government's rebut and I am not requesting a second chance to rebut the government's rebut, that I should never be entitled to.

Attached are some of the issues and arguments I raised to my lawyer before his closing and never covered by my lawyer during his closing. I feel they are extremely crucial to my defense and therefore sincerely request Your Honor to allow my lawyer to cover it. I know this is extremely difficult, amounting to something impossible, but for

saving court precious resource and not exposing all my defense strategy, I sincerely request Your Honor to grant my request.

If the Your Honor cannot grant my request, I sincerely request Your Honor to accept my attached documents which I emailed to my lawyer before his closing and put them under seal for the purpose of future appeal.

One more request: I sincerely request Your Honor to allow me to discuss this matter with Your Honor alone without my lawyer's presence. If that cannot be granted, at least talked to me first before calling my lawyer in.

Sincerely Yours,

Fengling Liu

Attached are six documents created by me. The first one is my suggested brief argument to be presented to the jury by my lawyer before the jury charge. The rest of them are the documents I emailed to my lawyer for his closing arguments.

Brief Argument On A Few Issues

1. Overhearing Issue

Regarding the overhearing issue, Lin Chen testified that the office was very noisy and crowded and the door was closed when she had the talk with David in room I. Therefore, it was impossible for Victor or Meng Fei to overhear anything especially they were busy talking with their own clients. Second, if one reads the transcripts carefully, one will find that Victor and Meng Fei were actually talking about their own experience, not what they overheard David or Karen. They used a lot of "we"; and what they were talking about involved what was going on in someone's head, either their own or David's or Karen's, such as the reason we advised them to pursue family planning claim is so and so, and the reason we advised them to pursue Christian religion is so and so. Victor even talked about due to the change of case law a whole group of people no longer eligible to pursue a certain type of claim.

2. Victor and Meng Fei Yu's testimony regarding Karen's involvement in fraud

Victor testified that Karen changed the date of event from Pentacost to Christmas or Easter and changed 30 days detention to a couple of days. He failed to give a name of the applicant where Karen made the changes. Moreover, if one reads the transcripts very carefully, one will see Victor gave a lot of explanations for the change and he was clearly talking about his own experience because he was giving the reasons why such changes should be made and he did not say Karen told me why she made this change. Meng Fei Yu's testimony is vague and general in nature and failed to give a single client's name. She testified Karen changed the logic and language of her stories. When asked how? She answered that Karen changed something to make the persecution more severe. She did not explain how that related to the logic or language.

Victor testified Karen rewrote Xin Miao's story. The government failed to produce anything to corroborate Victor's testimony. They did not even prove there is such an application, let alone Karen's involvement in that application. As you can see the government did produce 10 asylum applications prepared by the Moslemi firm, which shows they have the ability to locate and produce the asylum applications. Their failure to produce this application should raise a big question mark to you.

Meng Fei Yu's testimony that Karen changed the claim from family planning to Christian: First, she failed to give the client's name in that case. She should have remembered if it really stood out in her memory as she claimed it was. Second, it contradicted her testimony in the following way: She said Karen never kept it about her participation in the making of false asylum applications. Meng Fei testified that I explained to her my changes would make the story better and more credible. If that is the case, why Karen took the file away from her and assigned to another paralegal to prepare an asylum application based on a different claim? Karen had no need to hide the fraud from her.

3. Family member issue:

Meng Fei Yu testified when she started to work here, David and Harry were the only two family members working for the Law Office of Fengling Liu. David is a computer expert and office needed him to maintain computer and to take care office supply and payroll and banking matters. Harry has two Master Degree from Britain and one LLM from an American law school and he was overqualified for the paralegal position. All the other family members never worked for the Law Office of Fengling Liu. It was David's idea and David's decision to let them work for Moslemi firm against Karen's strong advice and objection.

4. Karen's Involvement in Moslemi Firm
Tape 154 only shows Karen is doing the hiring and Karen knows the employees in the office and the office workflow. It does not show Karen meets any clients, or Karen worked on any applications or reviewed any paralegal's work. It also shows Karen is not physically in the office. Government failed to produce any email or telephone record to show Karen is using remote control to get more closely than what the recorded telephone conversation shows. Lin Chen's recordings and lots of the testimony show that Karen was not in the office or involved closely in the office operation other than hiring.

5. Money Issues
Karen was not an owner of Moslemi. No evidence was produced to show Karen is an owner or financially benefited from its operation. No evidence was produced to show how much income Karen made from the operation of the Law Office of Fengling Liu. Any of the government's argument on the money issue is only their attempt to distract jury from the real issue of this case.

6. The firm's name change and opening of Bandrich office
The evidence on the firm's name change and the opening of Bandrich office is meager and not reliable and even speculative. Please pay special attention to the reliability of the evidence on this issue.

7. Lack of corroboration
Both Victor and Meng Fei Yu failed to produce a single piece of evidence to back up their testimony. This is especially telling in light of the their testimony that they started to take various documents from the office in 2009 until the time they left the firm with the sole purpose of protecting themselves in case of an FBI investigation. They especially testified that they gave all these materials to FBI after they started cooperation. Where are they? Not a single piece of such documents has ever been produced.

8. Harry's writing samples
Both Victor and Meng Fei Yu testified in the earlier stage of their story writing, they used Harry's writing samples. But Harry's writing sample was created sometime in 2009, after Karen left the office. Therefore, when they testified they were working with Karen to make fraudulent asylum applications they were clearly lying and talking about filing asylum applications after I left and when Feng Li was reviewing their stories.

9. Fake documents
Meng Fei Yu testified both in direct and cross that the firm never helped clients get fake documents during the period when she worked in the office, that is 8/2009 to 10/2011.

Brief Argument On A Few Issues

1. Overhearing Issue

Regarding the overhearing issue, Lin Chen testified that the office was very noisy and crowded and the door was closed when she had the talk with David in room I. Therefore, it was impossible for Victor or Meng Fei to overhear anything especially they were busy talking with their own clients. Second, if one reads the transcripts carefully, one will find that Victor and Meng Fei were actually talking about their own experience, not what they overheard David or Karen. They used a lot of "we"; and what they were talking about involved what was going on in someone's head, either their own or David's or Karen's, such as the reason we advised them to pursue family planning claim is so and so, and the reason we advised them to pursue

1

Christian religion is so and so. Victor even talked about due to the change of case law a whole group of people no longer eligible to pursue a certain type of claim.

2. Victor and Meng Fei Yu's testimony regarding Karen's involvement in fraud

Victor testified that Karen changed the date of event from Pentacost to Christmas or Easter and changed 30 days detention to a couple of days. He failed to give a name of the applicant where Karen made the changes. Moreover, if one reads the transcripts very carefully, one will see Victor gave a lot of explanations for the change and he was clearly talking about his own experience because he was giving the reasons why such changes should be made and he did not say Karen told me why she made this change. Meng Fei Yu's testimony is vague and general in nature and failed to

2

give a single client's name. She testified Karen changed the logic and language of her stories. When asked how? She answered that Karen changed something to make the persecution more severe. She did not explain how that related to the logic or language.

Victor testified Karen rewrote Xin Miao's story. The government failed to produce anything to corroborate Victor's testimony. They did not even prove there is such an application, let alone Karen's involvement in that application. As you can see the government did produce 10 asylum applications prepared by the Moslemi firm, which shows they have the ability to locate and produce the asylum applications. Their failure to produce this application should raise a big question mark to you.

3

Meng Fei Yu's testimony that Karen changed the claim from family planning to Christian:

First, she failed to give the client's name in that case. She should have remembered if it really stood out in her memory as she claimed it was. Second, it contradicted her testimony in the following way: She said Karen never kept it about her participation in the making of false asylum applications. Meng Fei testified that I explained to her my changes would make the story better and more credible. If that is the case, why Karen took the file away from her and assigned to another paralegal to prepare an asylum application based on a different claim? Karen had no need to hide the fraud from her.

3. Family member issue:

4

Meng Fei Yu testified when she started to work here, David and Harry were the only two family members working for the Law Office of Fengling Liu. David is a computer expert and office needed him to maintain computer and to take care office supply and payroll and banking matters. Harry has two Master Degree from Britain and one LLM from an American law school and he was overqualified for the paralegal position. All the other family members never worked for the Law Office of Fengling Liu. It was David's idea and David's decision to let them work for Moslemi firm against Karen's strong advice and objection.

4. Karen's Involvement in Moslemi Firm

Tape 154 only shows Karen is doing the hiring and Karen knows the employees in the office and the office workflow. It does not show Karen meets any clients, or Karen worked

5

on any applications or reviewed any paralegal's work. It also shows Karen is not physically in the office. Government failed to produce any email or telephone record to show Karen is using remote control to get more closely than what the recorded telephone conversation shows. Lin Chen's recordings and lots of the testimony show that Karen was not in the office or involved closely in the office operation other than hiring.

5. Money Issues

Karen was not an owner of Moslemi. No evidence was produced to show Karen is an owner or financially benefited from its operation. No evidence was produced to show how much income Karen made from the operation of the Law Office of Fengling Liu. Any of the government's

6

argument on the money issue is only their attempt to distract jury from the real issue of this case.

6. The firm's name change and opening of Bandrich office

The evidence on the firm's name change and the opening of Bandrich office is meager and not reliable and even speculative. Please pay special attention to the reliability of the evidence on this issue.

7. Lack of corroboration

Both Victor and Meng Fei Yu failed to produce a single piece of evidence to back up their testimony. This is especially telling in light of the their testimony that they started to take various documents from the office in 2009 until the time they left the firm with the sole purpose of protecting themselves in case of an FBI investigation. They

7

especially testified that they gave all these materials to FBI after they started cooperation. Where are they? Not a single piece of such documents has ever been produced.

8. Harry's writing samples

Both Victor and Meng Fei Yu testified in the earlier stage of their story writing, they used Harry's writing samples. But Harry's writing sample was created sometime in 2009, after Karen left the office. Therefore, when they testified they were working with Karen to make fraudulent asylum applications they were clearly lying and talking about filing asylum applications after I left and when Feng Li was reviewing their stories.

9. Fake documents

Meng Fei Yu testified both in direct and cross that the firm never helped clients get fake documents during the period when she worked in the office, that is 8/2009 to 10/2011.

9