

# Revised version of the supplementary issues to cover

**Karen Liu** <kliu275@gmail.com>      Wed, Apr 9, 2014 at 7:04 PM
To: Ron Fischetti <rpfischetti@gmail.com>, Erin Flynn <eflynn@efranzlaw.com>, Colleen Faherty <cfaherty@gmail.com>, Phyllis Malgieri <phyllis.malgieri@gmail.com>

Dear Mr. Fischetti,
    Attached is a regular three page documents listing 4 issues I would like you to cover in your closing. Forget the earlier version of supplementary issues and use this one instead. Basically, I raised four issues: Family member issue, Money issue, my involvement in the Moslemi firm, and argument about the credibility of Meng Fei Yu's testimony. The first three were all raised by the government in their closing. The last one is my own concern. Regarding the family member issue, and money issue, you can simply deny government argument, a few sentences will be fine. I just don't want to keep silent when the government made a big deal of it through out the trial. Your denial could be something like this: Karen never put the family members in the firm and they never worked for Fengling Liu Law Office. They started to work for Moslemi Firm after Karen left the office. I do not want the jury think that I am not professional at all and run a law firm like a family workshop. David put them in and it is his idea and I cannot control him. Regarding the money, I did not make $18M. I was not the owner of Moslemi, and I did not make money at all from the operation of Moslemi. Regarding my involvement with Moslemi firm, government produced no evidence to show I was there physically most of the time, or I was in some kind of remote control through telephone or internet. They failed to show I worked with clients or worked on any cases. All I did is hiring. Knowing who are the employees and the general work flow of the office is different form participating in fraud. Regarding Meng Fei Yu's testimony, I just feel we did not shake her that much during her cross and jury might believe her. My analysis simply shows she is very likely talking about her work at a later stage after I left, not the initial stage when she worked with me. That is all. It is short. Please consider. All these four issues, if covered very briefly, five to ten minutes will be enough. I do not want jury to think I really make that much money. It is not true and it will affect their attitude to me and to the decision. Please consider these four points and cover them briefly.
    I know it is mainly my problem. I see with my own eyes that you are experienced on many issues and the judge highly respected your opinion. I should have confidence in you. I promise you this is the last email I send to you for this trial and I will stop all work on my case now.
    Thank you.

 **Supplementary closing issues for fischetti to cover.doc**
35K

---

**Phyllis Malgieri** <phyllis.malgieri@gmail.com>      Wed, Apr 9, 2014 at 7:23 PM
To: Karen Liu <kliu275@gmail.com>

Hi Karen:

Ron has your document in his hands and is reading it now. See you tomorrow.

Love, Phyllis
[Quoted text hidden]
--
Phyllis A. Malgieri, Esq.
Fischetti & Malgieri LLP
747 Third Avenue
20th floor

New York, New York 10017
212-593-7100
212-758-2809 fax
www.fischettilaw.com

---

**Karen Liu** <kliu275@gmail.com>  Wed, Apr 9, 2014 at 7:29 PM
To: Phyllis Malgieri <phyllis.malgieri@gmail.com>

Thank you Phyllis. That is the last email about my case. This one just to thank you all for tolerating me so much. Sometimes even my husband and daughter cannot tolerate me. Thank you again.

[Quoted text hidden]

1. Family Members Working For the Firm

The government made it a big deal about family members working for the firm throughout the trial and in their closing argument. First Karen has a big family of 45 family members of parents, siblings, nephews and nieces on her side and on her husband's side. The few working for the law firm are only a very small portion of them. Moreover, only Harry and David worked for the Law Office of Fengling Liu. Both are highly qualified for the position. Meng Fei Yu testified that they were the only family members working for Law Office of Fengling Liu. David is a computer expert and he was in charge of all the computers in the office including networking, database and all daily maintenance and technical support. Harry has Bachelor degree in China, two Master degree from Britain and one LLM from an American law school. He is over

1

qualified for the position of paralegal. All the other family members never worked for the Law Office of Fengling Liu. They started to work for Moslemi firm after Karen left the office and it was all David's idea and it was against Karen's strong advice.

2. Regarding clients living out of state and filing asylum applications in New York, no evidence that Karen is involved in this. Clients told Victor and Meng Fei and they just told clients to provide a New York address. What would happen if asylum office or court found out client living out of state? Just change the venue, would not deny the case on the ground of fraud simply because the applicant did not live in this jurisdiction? Asylum Officer Ashley Merrilo testified that even if applicant lied, not every lie will disqualify them from getting asylum, and lies include harmful lies and harmless lies. This is the harmless lies.

2

3. Karen's Level of Involvement In Moslemi Firm

Since early 2009, Karen transferred the firm to Moslemi and left the firm. Her only involvement after that was hiring of new employees.

Transcripts support this argument:

P601 for Victor: Both Victor and Meng Fei Yu testified that in early 2009, Feng Li brought us the Houston firm arrest according to Victor and Boston firm arrest according to Meng Fei Yu and they both said that Karen was not present. Meng Fei further testified that Feng Li asked Harry to tell Karen about the incident. Meng Fei Yu earlier testified that Karen worked there everyday at the Law Office of Fengling Liu. Clearly, in early 2009, Karen left the office.

3

Meng Fei further testified that after the firm's name change, Feng Li took over Karen's job and reviewed all her stories and Victor's stories.

P1253: Meng Fei Yu further testified that in May 2010 when Feng Li left the office, Karen called her and told her over the phone to sign all asylum applications. She further testified that since Karen rarely came to the office and the communication was mainly by telephone.

Moreover, the government failed to produce any telephone record or office emails to show Karen had any extensive contact with the office employees after she left the firm in early 2009.

Lin Chen provided further and stronger evidence to show Karen rarely went to the office and did not meet clients. Lin Chen visited the Moslemi office for 13 times and made many phone calls during a 13 months from from May 2011

4

to June 2012 and never met Karen even once. This is more telling especially in light of the her repeated request to see Karen. She made the request on her first visit and she repeated the request on her second visit and she strongly requested to see before her last visit and requested to make an appointment with me. But Karen still refused to see her. On Karen's day of arrest, Karen was on her way to work in the New York Life office carrying a bag full of life insurance materials and had nothing related to the Moslemi law firm.

In July 2012 Meng Fei Yu visited Moslemi office before she called Karen and again she failed to see Karen in the office.

In Tape 154, Karen clearly told Meng Fei that she spent the whole summer in Long Island and did not go to the office at all.

5

The only evidence argued by the government is Tape 154. In the recorded telephone conversation, Karen did show a certain level of knowledge about the Moslemi firm. She knew who were the employees there and who was doing what. She knew the general work flow of the office. The telephone conversation did not show Karen worked with individual clients, or worked on any cases, or supervised any employee's work. Physical absence plus this level of involvement cannot show Karen participated in the fraud in Moslemi firm or even aware of it.

4. Meng Fei Yu's Testimony

Throughout her testimony Meng Fei Yu failed to identify a single client she worked on and how she worked on that case. The government showed her hundreds of applications prepared by her or signed by her, she identified only a few.

6

Her overall testimony is very vague and general and many times not responded to questions asked.

Regarding her overhearing David or Karen talking to new clients:

The office environment was usually noisy and crowded. She was also busy with helping her own clients at the same time. When she testified regarding Karen and David's meeting with new clients, she used the word "we" and she testified we advised single male clients to choose Christian claim because so and so. She was explaining the reason. She was clearly talking about her own experience of giving clients such advice. Clearly she was not talking about the things she overheard from others. See P1207, P1225 and P1228.

Regarding her writing stories for clients, she testified: In the beginning I asked clients to tell me their persecution

7

and they did tell me. **Later on many people** could not tell their persecution, so I knew they did not have persecution. See P1234. Pay special attention to "later on many people". She only worked with Karen for a little over three months and did not deal with many clients due to her being new and the short period of time involved. So the "later on many people" is very likely after Karen left the firm. Moreover, she said, she used samples created by Harry. See P1234. Those samples were created after the firm's name change and after I left the firm. Meng Fei Yu herself testified that after the name change, Karen left the office and Feng Li took over Karen's job. "He reviewed my stories and Victor's stories". See P1242.

Regarding Karen's review of her stories, Meng Fei Yu testified that I reviewed the "logic and language". See P1243. When asked how? Meng Fei Yu answered Karen

8

made changes to make the persecution more severe. No details were given and no explanations were given as to how the change of details had anything to do with the review of logic and language. When asked why Karen made the change? Meng Fei Yu answered: Karen said to make the story look better and more credible. Based on this testimony, Meng Fei Yu was clearly saying that it was common knowledge that we worked together to file false asylum applications. But Meng Fei Yu then testified that sometimes, Karen changed the claim completely. She gave an example. Meng Fei Yu said she helped a client prepared a family planning claim and Karen did not like it and held the file. A few months later she met the client again and learnt that another paralegal prepared a Christian claim for this client. See P1244. If it is open knowledge that Karen and she were all involved in filing false asylum

9

applications, as she just testified, why did Karen even bother to hide this matter from her and re-assign this case to another paralegal to do a different claim?

Regarding the letters from the applicant's family and friends, Meng Fei Yu said she just made them up. She had great difficulty to remember to testify that attorney reviewed the letters because it is a lie. On P1242, Meng Fei Yu was asked: What would you do with it? She answered: "I would print them out, hand them to our clients. Then they will send those letters back to China and ask their families and friends to copy the drafts by hand, then mail back." She needed government attorney to remind her to bring to attorney for review before giving to client. Then she remembered the script and said, "yes, yes". Earlier when she said Feng Li took over the job and reviewed all her stories and Victor's stories, she forgot to say the letters.

10

In the recording with Vanessa, she said paralegals were careless and made mistakes in the letters stating the days of detention differently from the stories. Again, she forgot to say lawyers were also careless and they did not discover the mistake in their review. Lawyers never review the letters.