

# Arguments Suggested by Karen

**Karen Liu** <kliu275@gmail.com>      Wed, Apr 9, 2014 at 1:02 AM
To: Ron Fischetti <rpfischetti@gmail.com>, Phyllis Malgieri <phyllis.malgieri@gmail.com>, Colleen Faherty <cfaherty@gmail.com>, efranzlaw@yahoo.com, Erin Flynn <eflynn@efranzlaw.com>

Dear Mr. Fischetti,
    I know you are still very mad with me. I thank you from the bottom of my heart for working so hard on my case and present such a wonderful closing, even if you just started and i can see it.
    Attached is the things we discussed today and a few other issues I added. Please review and incorporate into your closing as much as you can.
    I am willing to do whatever for you if you can do it.
    I know my request is not very rational but stepping into my shoes you will see how desperate i am now. Please try to understand me.
    At least, what I am suggesting will do no harm. I know it will go against your strategy. But I don't think it is a matter of principle. Please consider my position.
    Thank you.
    Karen Liu

📎 **Closing argument prepared by karen for Fischetti.doc**
61K

Before you start to look at the evidence against Ms. Liu, I would like you to face one thing: that is Ms. Liu is irresponsible when Ms. Liu decided to leave the office while allowing the office continue to operate. Because of that irresponsible decision, all these things happened and Ms. Liu was brought here for trial and a number of people's lives were affected and the impact will last for a long time. Second, even after Ms. Liu left the firm, she was still financially benefited because David got the money and he is Ms. Liu's husband and he provided for the family. As blamable as Ms. Liu was, this irresponsibility does not by itself make Ms. Liu criminally liable. Please separate these two things. Emotionally it is a hard decision to make not to convict Ms. Liu because employees only make little money from the job and they were convicted and Ms. Liu is still the boss to some extent and financially benefited, and should be spared if you follow the law strictly. It just does not feel right. Please do not let this feeling affect your decision or your evaluation of the evidence against Ms. Liu. That is the requirement of the law as the judge will tell you.

Before you start to examine the evidence presented during the trial, Ms. Liu would like to bring to your attention one important feature of Ms. Liu's trial: the lack of evidence, government's failure to produce evidence in many aspects. The investigation started in early 2009 and the government continued to investigate Ms. Liu after her arrest. Five years of investigation and a thorough search of the office from ceiling to floor, even trash bin and a seizure of everything they think that may be helpful to their case of prosecution. They seized fifteen boxes of

1

materials from the office and those materials cover cases as back as 2005. They seized all the computer materials, including all the hard drives, the network, the recording in the printer and copy machine. They also took the surveillance camera from the office. It covers every room, every corner of the office. It was detailed to the point of seeing the computer screen of each employee. Let's see from this voluminous evidence they searched and seized from the office, what they produced for this trial: one small package of mainly blank documents in the express mail envelope with a individual name. Easy to find out where these document come from, why it left in the office, who own it? Government just ignores it. Just don't want to find out. So they can use it to blame Ms. Liu.

The government has subpoenaed the office phone record from 2006. They did not produce any to show Ms. Liu's involvement by phone after Ms. Liu left the office. Similarly they have the office emails and they did not produce a single email to show Ms Liu contacted clients or the employees through emails.

They arrested Ms. Liu and searched Ms. Liu's bags and body associated with the arrest. Ms. Liu carried this backpack for years and a lot of the things had been there for several years. They found many materials but all related to the New York Life Insurance business: life insurance applications and training or information pamphlet for customers, related to the new career Ms. Liu started. They also seized Ms. Liu's iphone and have not returned to Ms. Liu even up to today. They can directly have access to Ms. Liu's emails for a number of years

2

from Ms. Liu's iphone. It has all the text message Ms. Liu sent and received to and from various people Ms. Liu associated with for more than a year. Ms. Liu also used Ms. Liu's note pad in Ms. Liu's iphone very often and had many notes made in the past few years. They did not produce a single piece of evidence from that search to show Ms. Liu was involved in filing false asylum applications because there was none. Not a single piece of evidence was obtained from that search to show Ms. Liu was even involved in the operation of the office.

The government failed to produce a single individual to testify that the firm helped them to file a false asylum application. They were the central players in this whole asylum process. They are the ones who were interviewed by the asylum officer with no attorney present. They are the ones swearing and signing the applications before the asylum officers and the immigration judges. They are the ones giving testimony in immigration court about what had happened to them and why they should get asylum. Basically the government accused Ms. Liu of committing fraud together with these people but they failed to produce a single one of them. This failure becomes more salient in light of the government's ability to call such witness in other cases, and the government's ability to enter non-prosecution agreement with them for them to come here to testify. The government has their address and knows where they live and where they work and knows how to contact them. Let Ms. Liu give you one example to illustrate why this missing piece in the puzzle is important.
If this if murder case, where is the gun, who PULLED THE TRIGGER.

3

Suppose Mr. Egan was charged with fraud for making up a script for Meng Fei Yu's testimony and for coaching Meng Fei Yu to lie in court. In his trial, the government only called his colleagues to testify against him saying they worked together with him in committing this fraud but failed to call Meng Fei Yu to testify when they clearly have the ability to produce Meng Fei Yu. What would you think about this? The situation with Ms. Liu's case is exactly the same here. Another example: Accountant was charged for engaging in a conspiracy to commit a tax fraud with his clients to evade tax. He was put on trial and the government only produce his colleagues to testify against him and failed to produce a single client of his to testify how the defendant/accountant helped them evade tax, even if the government can readily produce these clients as witness. They charged Ms. Liu with committing fraud for helping clients file false asylum applications but they only produced Ms. Liu's colleagues to testify against Ms. Liu and failed to call even a single client to testify when they are the central player in this whole thing. This points to their great failure in meeting their burden of proof. They have the obligation to produce all the evidence to prove their case especially when that evidence is crucial to the case and is readily available. In immigration court, if individual failed to produce such type of evidence, i.e. it is crucial to their case and it is readily available, the judge can draw negative inference from that failure as a matter of law and can deny the case based on that failure.

4

## In evaluating the evidence

First, you have to decide whether Moslemi firm and Bandrich firm are one or two separate firms based on the evidence presented during trial. Only if you decide that they are one firm, you can consider the evidence in that firm against Ms. Liu. Otherwise, you cannot.

Second, you have to make a two stage analysis: Was Ms. Liu involved in filing false asylum applications before Ms. Liu left the firm? If your answer is yes, you can convict Ms. Liu. If your answer is no, you have to consider Ms. Liu's involvement in the Moslemi firm and make a finding on whether there is enough evidence to convince you beyond reasonable doubt that Ms. Liu was involved in the filing of false asylum applications of the Moslemi firm. If your answer was a yes, you can convict Ms. Liu. If your answer is no, you cannot convict Ms. Liu.

In evaluating the specific evidence presented during trial in order to determine whether the government has introduced sufficient evidence to convince you Ms. Liu was involved in the fraud of filing false asylum applications, you have to consider the circumstantial evidence very carefully. The government wants you to draw the inference that Ms. Liu showed a guilty conscience when Ms. Liu changed the firm name and Ms. Liu showed it again when the Bandrich office was opened. It is not as simple as that. A very typical circumstantial evidence example is: you are in a closed room with no windows and you see people come in with umbrella dripping with water and their clothes are also wet. You can

5

safely infer it is raining outside. Therefore, with circumstantial evidence, you need to examine very closely and have to make sure you can draw the inference with a high degree of certainty. It's not like: Ms. Liu's daughter did not call Ms. Liu last week the whole week, she must be very busy with her exams. There may be many other reasons for her failure to call Ms. Liu. She could have been playing the whole week and was carried away with all the fun and forgot to call her mom. At least it is equally likely. Inference cannot be drawn loosely because it could easily become speculations. Therefore, you need to evaluate the evidence very carefully to see what reliable evidence you can draw from those circumstantial evidence to answer the question: whether the change of the firm name and the opening of the Bandrich firm prove a guilty mind on Ms. Liu's part

You also need to pay special attention to the hearsay evidence. Hearsay is what the witness heard from others, not something he himself has first hand experience. Usually hearsay evidence is not admissible in a criminal trial but because this is a conspiracy charge, hearsay evidence of co-conspirators is admissible. But you have to examine it very closely because by its very nature, hearsay evidence is not reliable. The witness may mishear, misunderstand the saying or the person the witness heard may be lying.

Also, you need to pay special attention to the witnesses' motive to lie when they testify pursuant to a cooperation agreement with the government. They all say they are required to tell the truth but they all admit that the government is the

6

sole judge of whether they are telling the truth or not. Only when the government thinks they are telling the truth, will they get the deal promised by the government. When they are so frightened to go to jail, they are desperate to do anything to get off the hook. Considering they have committed a crime of fraud, they are weak with moral principles and their desperate condition can easily lead to another lie at the witness stand.

Therefore, when you examine the witness' testimony, you have to use extra caution and you have to examine closely. You have to see whether the testimony is detailed, specific, or general and vague. You have to see whether the witness is responding to the question or not. You have to compare the witness' demeanor in answering questions by his own counsel and by the defense counsel. You have to examine the reliability of the witness' memory. If the witness cannot remember things that happened in the near past but can remember things in the far past, you have reason to doubt that memory.

Now let Ms. Liu examine the evidence to see if the change of name and opening of Bandrich office prove that Ms. Liu have committed a fraud.
P601: Victor testified that the name change was caused by the Houston firm arrest. He said in the end of 2008 or the beginning of 2009, one day Feng Li came to our office and talked in some details about the Houston case. Clearly Ms Liu was not there and was not present when this happened. And Ms. Liu was there every day before the name change. So it happened after the name change.

7

Victor failed to produce the case to prove that because there was no such case happened in early 2009. He said the name change happened in early 2009. The Houston firm arrest happened in 2007 and convicted in April 2010. When asked why is the name change? He answered "we figured out the name change is for safety issue". It is clearly his own speculation. Page 603.

Yu said Feng Li or Victor told her that Ms. Liu doesn't want to attract the government's attention because the firm is so big, they have so many cases. "so many cases, not so many fraud cases".

P605: Victor said Harry and Yolanda opened the new office and took some cases away.

When asked for the reason for opening the Bandrich firm, Victor just speculated and gave two reasons: that for safety and Moslemi had too many cases to handle. He never said it is his own guessing or he learned from anyone.

P1347: Regarding Yu's testimony on the opening of Bandrich firm, again Yu heard from FL said we had too many cases, attract lot of attention of the government. She never learned anything from Liu directly. Mr. Egan asked Yu the opening of the second office, Yu did not understand and asked: You mean Vaness's office?

Let's examine the evidence to see if Ms. Liu was involved in a fraud of filing false asylum applications when Ms. Liu worked in the Fengling Liu Law Office. The evidence is Victor and Meng Fei's testimony. Before you evaluate their testimony, Ms. Liu would like to bring to your attention the fact that they are not

8

just ordinary people. Their job is to prepare people how to testify convincingly, even how to lie and fool people with that lie. One is an experienced litigation lawyer and the other had a formal law school education. In examining their testimony, look to see whether they are detailed, specific, whether there is inconsistency, and whether they have produced any documents to back up their testimony. First, you already see they lied many times and they are generally bad people in the moral sense. And they have a strong motive to lie here when they testified. And nothing can stop them from lying. In light of their past history of lying and current strong motive for lying, details and specific events are extremely important to see whether they are lying or they are telling the truth. In this case, there is one more complication. They did help clients filed fraudulent asylum applications. That is why they were charged and convicted. But what they were asked to testify is the preparing of false asylum applications with Ms. Liu. They can truthfully testify about helping clients filing false asylum applications with other people and then claimed that experience happened with Ms. Liu. So when you hear they testified fluently about how they made a false asylum application, that does not necessarily involved Ms. Liu. You have to pay special attention to the portion associating with Ms. Liu in that fraud. It is like a person who was charged of having committed stealing. It is already known that he had stolen things many times from that supermarket. No problem he can testify fluently about that stealing process. But now he is called to testify not about his stealing in general, but about his stealing with this defendant. You have to listen carefully to see not his stealing in general but his stealing process with

this defendant at trial. If his testimony only shows his stealing in general and failed to present any specific evidence to show the involvement of the defendant you should not credit his testimony in the finding against the defendant. Keeping that in mind, you will see they testified a lot about how they helped clients file false asylum application and it is credible testimony. But you will see little evidence that would connect their fraudulent activity with Ms. Liu. What is missing is specific evidence connecting Ms. Liu in the fraud. Here, their evidence has no details and completely stayed at general level. They are nothing but general allegations and assertions. No details or specific evidence was ever offered.

Corroboration is extremely important in finding whether the witnesses are credible or not in this case. Corroboration is a legal term meaning some objective evidence to back up what one says to prove what one says is true. It is usually documents. It could be witness. When you face a witness who showed a history of lying and who has strong motive to lie, you have to be extremely careful and it is prudent to ask for corroboration especially where it is reasonable expected to be available, before you decide to give any credit to the witness' testimony. Here in this case, have the witness produced any corroboration to back up their words? None. Are those corroboration reasonable available? Yes. Throughout Ms. Liu's cross you will see how many times they could provide corroboration but they failed to do so. Why? They don't have those corroborations because they are lying. For example, the Boston firm arrest as testified by Meng Fei Yu and the

10

Houston firm arrest as testified by Victor You. They can easily provide the corroboration if they are telling the truth, but they did not because they were lying and there is no such case at that time as they testified. The most telling lack of corroboration is that they both testified that they two had a discussion and started to take documents from the office from time to time to protect themselves in case there is a FBI investigation. Victor said he started to do this after the Houston Firm arrest. Meng Fei Yu said it was sometime before she left the firm. They two also discussed that they would cooperate with FBI if they were ever approached by FBI. They testified that they took many documents away from the firm for a long period of time with the sole purpose of protecting themselves in case of a FBI investigation. And they handed in all the materials they took from the office to FBI in assisting this investigation. Did they produce a single piece of such documents to prove Ms. Liu's guilt? None.

Both Victor and Meng Fei Yu were involved in making false asylum applications and that is why they were convicted and cooperate with government. They engaged in making false asylum applications not from the date when they first came to the office and worked under Ms. Liu's supervision. They started to do it at a later date. It is not clear when that date was. Now in order to get the deal with the government, they had to point their fingers at Ms. Liu and falsely claim that they started to make false asylum applications together with Ms. Liu. Otherwise they would have no deal with the government. So when you review their testimony, you have to be very careful and examine closely whether they

11

were talking about their making of false applications at a later date or with Ms. Liu, paying specially attention to the connection with Ms. Liu in making false asylum applications.

If you look at the transcript closely Page 542-547, you will see that Victor is talking about his own experience of giving clients' consultation, not what he overheard Ms. Liu or David giving client's consultation. He kept used "we" and what he testified here involved the "reason" for such advice and "case law" change, why what type of person fit into what type of claim. They were thinking going on in one's mind, either his own mind, or he was reading Ms. Liu or David's mind. Mr. Egan kept trying to pull his testimony back from his own experience to Ms. Liu or David but failed. At page 550, he confirmed our analysis by his own testimony: the initial meeting is very brief and is usually only about money matters. So it is clear that all the talking about consultation and advising a claim is his own experience. On page 550-551 he continued to talk about his own experience about the typical claims of applications.

Regarding clients living out of state, he did not say he would report to Ms. Liu, instead he said he told client to provide a reliable New York address. And Asylum Office Ashley Merillo said that this is harmless mistake and will not cause a denial. They find out and they will transfer the case to the proper jurisdiction.

Page 567-568: When he talked about writing stories for clients and religious holidays pentacost should not be used and instead we should use Christmas or Easter, he again was talking about his own experience, because he gave detailed reason for why it should be this way. Remember, he also said he usually would not write the client practice religion since childhood when he wrote fake stories. He tried to make it simple and easy for clients to remember and tell and not causing them extra work. That is always his primary consideration when he wrote a fake story. That is why he said detention should not be too long otherwise it is hard to describe. Please take notice that he focused on the reason for the change not the change itself. Again, he was talking about his own experience.

Page 568: He said Ms. Liu added some details to make the persecution more severe. Then he spent a lot time explaining why using all "we" again. He was talking about his own experience.

Page 569: He said Ms. Liu rewrote Xin Miao's story completely. The government never produced the asylum application to show Ms. Liu was ever involved in any way in the application. They did produce a few other clients' applications. They certainly can do so but did not. They government did not produce Xin Miao who is here. The government knows where he lives and knows where to get him. They did produce one client for the Bandrich firm. If this case is so important and the evidence is so clear that Ms. Liu was engaged in

13

filing false asylum applications, why not do it? This case alone will be sufficient to prove the prosecutor's case.

P565: Victor testified that both story and letters were drafted and made changes in the computer and then printed out for clients to copy. Government took all the computers away in the search and they failed to produce a single piece of evidence to prove it. High tech made it possible to recover things deleted from the computer. Would it be very good evidence to prove Ms. Liu's guilt?

P571: Victor said Ms. Liu made changes while the client was usually not present. Attorney making changes to story is not illegal by itself. In fact, they were hired to do so and had a legal duty to present the client's claim in the best way they can. Otherwise, they would face malpractice law suit. At least the client would file complaint to the attorney disciplinary committee. What made it illegal is not to get the facts from clients but make up on their own. Here, there is no evidence to show that Ms. Liu did not have personal knowledge of client's persecution experience through the initial interview, through telephone calls and through in person meetings with clients. Victor had his own job to do. He would be not watching Ms. Liu all the time especially he did not know he will one day come here to testify about this.

Page 590-595: Victor talked in great detail about his activities in asylum office and writing various preparation materials. Again, he was talking about his own

14

experience. He failed to mention Ms. Liu at all until Mr. Egan asked him with a leading question: Did anyone ever instruct you to prepare different material for the asylum interview? P595. Then he answered Feng Ling Liu. Then he continued to talk about his own experience on Page 596 and 597, using "~~Ms. Liu~~ I" all the time.

Page 557: He said Feng Li and Tom complained to him that his story was too long. If Ms. Liu was involved in making the false story, why Feng Li and Tom not come to Ms. Liu to complain but go to him? If Ms. Liu reviewed and revised his story as he claimed, Ms. Liu was the one having the final say on this matter. They should come to Ms. Liu, not him. Clearly he was talking about things he was doing with them, not with Ms. Liu's clients. He also said Meng Fei Yu or Betty, the junior attorneys decided when to mail out the asylum applications. Why not Ms. Liu? It is a very important step of the process. Again he forgot to put Ms. Liu into the picture.

Page 559: He said after the complaint, he started to use samples. He said: ~~Ms. Liu~~ I can remember with at least ~~Ms. Liu's~~ my clients who has similar story with this client and ~~Ms. Liu~~ I will reference these old clients' story. Clearly he was talking about his later experience of writing stories, otherwise there were no old clients already in existence. Remember he came in July 2008 and Ms. Liu left in early 2009, only half a year working together.

Page 561-562: He talked about drafting letters for the clients. See how much he spent on talking about how he did it and how little he said on Ms. Liu's

15

involvement in it. He needed Mr. Egan's constant pulling to connect his doing to Ms. Liu.

Page 555: He mentioned some clients refused to sign disclaimer because they were filing a fake application. He failed to give the names of the clients. He never said: ~~Ms. Liu~~ I report this to ~~Ms. Liu~~ my's boss and ask her what ~~Ms. Liu~~ I should do. Instead, he said he talked clients into signing it.

Please pay attention to a little detail: Feng Li called a meeting to discuss the Houston firm arrest, clearly Ms. Liu was not in the office at that time. Ms. Liu stopped going to the office regularly only after the firm's name change. Therefore, it happened after the firm's name change.

Meng Fei Yu also testified that Ms. Liu called her and told her over the phone that Ms. Liu asked her to sign asylum applications in May 2010 after Feng Li left the firm. She said Ms. Liu mainly communicated with her over the phone because Ms. Liu rarely went to the office.
She also said that after the name change, Feng Li took over the work to review the stories prepared by her and Victor. Ms. Liu stopped to go to office regularly.

Bad case: why did not the government provide the bad case for this trial? After all they managed to produce a number of cases for this trial. If the client admitted to the asylum office that the office made the fake application for her, why not the asylum office not to give to

16

can have Ms. Liu's day in court and have the luxury of being judged by the 12 of you as Ms. Liu's peers. Ms. Liu herself have served as a juror once in a drug case and the trial only lasted for one week. It is a noble duty to serve as a juror and it carries huge responsibility. The only other duty close to jury duty is the duty to vote. Both give you the sense of pride and solemn and even holy feelings. On both occasions you are contributing your share in the management of this country. I believe all of you have watched the classic movie by Henry Fonda - The Twelve Angry Men. The whole movie describes what happened during the jury deliberation. There is only one setting in that movie, i.e. the jury room. But the movie is fascinating and solemn. I am confident that you will be as responsible as those jurors if not more during your deliberation of Ms. Liu's case Serving as juror, each one of you has the heavy responsibility to protect the integrity of the law which includes evaluating the evidence carefully with great diligence to make sure the guilty ones are punished so as to maintain the deterrence of the law and not to send the innocent ones to jail.